## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY (VICINAGE OF NEWARK)

Kenneth J. Ashman
Daniel T. Novellano
ASHMAN LAW OFFICES, LLC
55 West Monroe Street, Suite 2650
Chicago, Illinois  60603
(312) 596-1700

Jay R. McDaniel
MCDANIEL CHUSID, LLP
Park 80 West, Plaza 1
Saddle Brook New Jersey 07663
(201) 845-3232

*Attorneys for Defendants Attwater Blue*
*Corporation, Ben Raue, and Jeff Hooper*

---------------------------------------------------------x

CHRISTOPHER H. KNIERIM and JACK P.   :
ZACCARIA,   :
  :
Plaintiffs,   :
  :   Docket No.:  06-4935 (JCL)
v.   :
  :   Honorable John C. Lifland
SIEMENS CORPORATION, SIEMENS   :
BUILDING TECHNOLOGIES, INC.,   :
ATTWATER BLUE CORPORATION, BEN   :   **NOTICE OF MOTION**
RAUE, JEFF HOOPER, GINA ALLADIN and   :
MICHAEL BOLINGER,   :
  :
Defendants.   :

---------------------------------------------------------x

TO:   Kenneth Rosellini, Esq.
        Hallock & Cammarota,LLP
        600 Valley Road, Suite 101
        Wayne, New Jersey 07470

        **PLEASE TAKE NOTICE** that on February 27, 2007 at 9:00 a.m., or as soon thereafter as counsel can be heard, Defendants Attwater Blue Corporation ("Attwater"), Ben Raue ("Raue"), and Jeff Hooper ("Hooper") (collectively, "Defendants"), through their attorneys, ASHMAN LAW OFFICES, LLC and MCDANIEL CHUSID, LLP, shall move before the Honorable John C. Lifland,

United States District Judge, at the United States Post Office and Courthouse, Newark, New Jersey 07101-0999, for an Order:

1.  dismissing with prejudice the entirety of the Amended Complaint (the "Amended Complaint") brought both by Plaintiffs Christopher H. Knierim ("Knierim") and Jack P. Zaccaria ("Zaccaria") against Raue and Hooper for want of personal jurisdiction, pursuant to Fed. R. Civ. Pro 12(b)(2);

2.  dismissing with prejudice for failure to state a claim the First and Fourth Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria against Attwater and, in the alternative to No. 1 above, against Raue and Hooper, pursuant to Fed. R. Civ. Pro. 12(b)(6);

3.  dismissing with prejudice the Second and Third Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria against Attwater and, in the alternative to No. 1 above, against Raue and Hooper for want of subject-matter jurisdiction, pursuant to Fed. R. Civ. Pro. 12(b)(1);

4.  dismissing with prejudice for failure to state a claim the Second and Third Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria against Raue and Hooper, in the alternative to Nos. 1 and 3 above, pursuant to Fed. R. Civ. Pro. 12(b)(6);

5.  dismissing the Second and Third Causes of Action of the Amended Complaint brought by Knierim against Attwater, Raue and Hooper, in the alternative to Nos. 1, 3 and 4, on the basis of improper venue pursuant to Fed. R. Civ. Pro. 12(b)(3);

6.  dismissing with prejudice the Third Cause of Action of the Amended Complaint brought both by Knierim and Zacarria against Attwater, Raue and Hooper, in the alternative to Nos. 1, 3 and 4, for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6);

7.  transferring any remaining claims of the Amended Complaint brought by Zaccaria against Attwater and, in the alternative to Nos. 1, 3 and 4, against Raue and Hooper to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1404(a); and/or

8.  providing such other and further relief as this Court may deem just and proper.

In support of this motion, Defendants will rely on the accompanying Memorandum of Law in support of the motion, the respective Declarations of Raue and Hooper, executed on January 25, 2007, the exhibit thereto, and the arguments of counsel in open Court.

**PLEASE TAKE FURTHER NOTICE** that oral argument is hereby requested on this motion.

Dated:  January 25, 2007

McDaniel Chusid, LLP
Park 80 West, Plaza 1
Saddle Brook New Jersey 07663
(201) 845-3232

By:  /s/ Jay R. McDaniel
      Jay R. McDaniel

Kenneth J. Ashman
Daniel T. Novellano
Ashman Law Offices, LLC
55 West Monroe Street, Suite 2650
Chicago, Illinois  60603
(312) 596-1700

*Attorneys for Defendants Attwater Blue*
*Corporation, Ben Raue, and Jeff Hooper*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)**

---------------------------------------------------------- x

CHRISTOPHER H. KNIERIM and JACK P.  :
ZACCARIA,                                                     :
                                                                    :
        Plaintiffs,                                     :
                                                                    :   Docket No.:  06-4935 (JCL)
          v.                                              :
                                                                    :   Honorable John C. Lifland
SIEMENS CORPORATION, SIEMENS                :
BUILDING TECHNOLOGIES, INC.,                   :
ATTWATER BLUE CORPORATION, BEN         :   **ORAL ARGUMENT REQUESTED**
RAUE, JEFF HOOPER, GINA ALLADIN and  :
MICHAEL BOLINGER,                                      :
                                                                    :
        Defendants.                                  :

---------------------------------------------------------- x

### MEMORANDUM OF LAW OF DEFENDANTS ATTWATER BLUE CORPORATION, BEN RAUE, AND JEFF HOOPER IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR TRANSFER

Of Counsel and
on the Brief:

Kenneth J. Ashman          ASHMAN LAW OFFICES, LLC
Daniel T. Novellano         55 West Monroe Street, Suite 2650
                              Chicago, Illinois  60603
                              (312) 596-1700

Jay R. McDaniel           MCDANIEL CHUSID, LLP
                              Park 80 West, Plaza 1
                              Saddle Brook New Jersey 07663
                              (201) 845-3232

                              *Attorneys for Defendants Attwater Blue
                              Corporation, Ben Raue, and Jeff Hooper*

Dated:  January 25, 2007

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Zaccaria's Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Knierim's Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     THE AMENDED COMPLAINT MUST BE DISMISSED AS AGAINST
      RAUE AND HOOPER FOR WANT OF PERSONAL JURISDICTION. . . . . . . . . . . . 7

II.    THE DEFAMATION-BASED COUNTS FAIL TO STATE A CLAIM. . . . . . . . . . . . . 9

    A.    Plaintiffs' Slander Claim Fails Because The Purportedly Defamatory
         "Statements" are too Vague, Non-Specific and Conclusory to be Actionable. . . . 9

    B.    Plaintiffs' Slander Claim Fails Because The Purported Defamatory
         "Statements" Constitute Non-Actionable Opinions.. . . . . . . . . . . . . . . . . . . . . . . 12

    C.    Plaintiffs' Slander Claim Fails Because The Purported Defamatory
         "Statements" Constitute Privileged Communications. . . . . . . . . . . . . . . . . . . . . 16

    D.    Plaintiffs' Claim for Tortious Interference with Prospective Economic
         Advantage Fails for the Same Reasons the Slander Claim Fails. . . . . . . . . . . . . 19

III.   PLAINTIFF'S CONTRACT-BASED CLAIMS FAIL TO SATISFY
      THE MINIMUM AMOUNT NECESSARY TO INVOKE THIS COURT'S
      SUBJECT-MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   PLAINTIFFS' CONTRACT-BASED CLAIMS SHOULD BE DISMISSED
      AS AGAINST RAUE AND HOOPER, SINCE THEY ARE NON-PARTIES
      TO THE CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    KNIERIM'S CONTRACT-BASED CLAIMS MUST BE DISMISSED ON
      THE BASIS OF IMPROPER VENUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.   PLAINTIFFS' FAILS TO STATE A CLAIM FOR BREACH OF
      THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. . . . . . . . . . 22

VII.  ANY REMAINING CLAIMS SHOULD BE TRANSFERRED TO THE
      NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a). . . . . . 23

A.     Venue is Proper in the Northern District of Illinois.. . . . . . . . . . . . . . . . . . . . . 24

B.     The Private Interest Factors Dictate that Transfer is Appropriate. . . . . . . . . . . 24

C.     The Public Interest Factors Dictate that Transfer is Appropriate.. . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## **TABLE OF AUTHORITIES**

### **Federal Cases**

**Case**                                                                          **Page(s)**

*Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 22

*Buying for the Home, LLC v. Humble Abode, LLC*, 2006 WL 3000459
        (D.N.J. Oct. 20, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Delloma v. Consolidated Coal Co.*, 996 F.2d 168 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 18

*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp.2d 518 (D.N.J. 1998). . . . . . . . . . 11, 12

*Farber v. City of Paterson*, 2006 WL 3485919 (D.N.J. Nov. 29, 2006). . . . . . . . . . . . . . . . 13, 15

*Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp.2d 650 (N.D. Ill. 2005). . . . . . . . . . . . . . . . . . . . . . 21

*Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850  (3rd Cir. 1994). . . . . . . . . . . . . . . . . . . 9, 12

*Flammer v. County of Morris*, 2006 WL 1307679  (D.N.J. May 10, 2006). . . . . . . . . . . . . . . 12

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grand Ent. Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir.1993). . . . . . . . . . . . . 7

*Greenbelt Coop. Pub. Ass'n v. Bresler*, 398 U.S. 6 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Halsell v. Kimberly -Clark Corp.*, 683 F.2d 285 (8th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hoffer v. Infospace.com*, 102 F. Supp.2d 556 (D.N.J. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hoth v. American States Ins. Co.*, 753 F. Supp. 703 (N.D. Ill. 1990). . . . . . . . . . . . . . . . . . . . . 16

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3rd Cir. 1997). . . . . . . . . . . . . . . . . 21

*Karykous v. Sbarro, Inc.*, 2006  WL 2690287  (D.N.J. Sept. 19, 2006). . . . . . . . . . . . . . . . . . . . 3

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.2d 451 (6th  Cir. 2004). . . . . . . . . . . . . . . . . . 16, 18

*LaScola v. US Sprint Communications*, 739 F. Supp. 431 (N.D. Ill. 1990). . . . . . . . . . . . . . 17, 18

*LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F. Supp.2d 574 (D.N.J. 2001). . . . 24-26

*Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . 17

*Monroe v. Host Marriot Servs. Corp.*, 999 F. Supp. 599 (D.N.J. 1998). . . . . . . . . . . . . . . . . . . 16

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96 (3rd Cir. 1988),
          *cert. denied*, 489 U.S. 1078 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 15, 19

*National Bowl-O-Mat Corp. v. Brunswick Corp.*, 264 F. Supp. 221 (D.N.J. 1967). . . . . . . . 11, 12

*Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*, 847 F. Supp. 1244 (D.N.J.1994). . . . . 25

*Nicholas v. Saul Stone & Co.*, 224 F.3d 179 (3rd Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nida v. Echols*, 31 F. Supp.2d 1358 (N.D. Ga. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*O'Neill v. United States*, 281 F. Supp. 359 (D.C. Ohio 1968),
          *aff'd*, 410 F.2d 888 (6th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*,
          970 F.2d 273 (7th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Payne v. McDonald's Corp.*, 957 F. Supp. 749 (D. Md. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*SPX Corp.v. Doe*, 253 F. Supp.2d 974 (N.D. Ohio 2003). . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

*Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29 (1988). . . . . . . . . . . . . . . . . . 23

*Sullivan v. Conway*, 959 F. Supp. 877 (N.D. Ill. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sunbelt Corp. v. Noble Denton & Assoc. Inc.*, 5 F.3d 28 (3d Cir. 1993).. . . . . . . . . . . . . . . . . . . 7

*Taylor v. National Group of Cos., Inc.*, 729 F. Supp. 575 (N.D. Ohio 1989). . . . . . . . . . . . . . . . 16

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3rd Cir. 1984). . . . . . . . . . . . 7

## State Cases

*Avdel Corp. v. Mecure*, 277 A.2d 207 (N.J. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bainhauer v. Manoukian*, 520 A.2d 1154 (N.J. App. Div. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bevelheimer v. Gierach*, 339 N.E.2d 299 (Ill. App. Ct. 1975).. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475 (N.J. App. Div. 2006). . . . . . . . . . . . . . . . . . 20

*DeAngelis v. Hill*, 180 N.J. 1 (N.J. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hopewell v. Vitullo*, 701 N.E.2d 99 (Ill. App. Ct. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015 (Ill. 1994). . . . . . . . . . . . . . . . . . . 20

*Kotlikoff v. The Community News*, 444 A.2d 1086 (N.J. 1982). . . . . . . . . . . . . . . . . . . . . 12, 15

*Krasinski v. UPS, Inc.*, 124 Ill.2d 483, 530 N.E.2d 468 (Ill. 1988). . . . . . . . . . . . . . . . 9, 16, 18

*Lutz v. Royal Ins. Co. of America*, 586 A.2d 278 (N.J. App. Div. 1991). . . . . . . . . . . . . . . . . 16

*Mittelman v. Witous*, 552 N.E.2d 973 (Ill. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Paradise Enterprises, Ltd. v. Sapir*, 811 A.2d 516, 521 (N.J. App. Div. 2002). . . . . . . . . . . . 21

*Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225 (Ill. App. Ct. 1995). . . . . . . . . . . . . . 13, 15

*Suzzi, Inc. v. Atlantic Dept. Stores*, 359 N.E.2d 721 (Ohio App. Ct. 1976). . . . . . . . . . . . . . . 20

*Vail v. Plain Dealer Pub. Co.*, 649 N.E.2d 182 (Ohio 1995),
    *cert. denied*, 516 U.S. 1043 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wampler v. Higgins*, 752 N.E.2d 962 (Ohio 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669 (Ill. App. Ct. 2000). . . . . . . . . . . . . . . . 15

*Zoneraich v. Overlook Hosp.*, 514 A.2d 53 (N.J. App. Div. 1986). . . . . . . . . . . . . . . . . . . . . . . 9

## Federal Statutes and Rules

Fed. R. Civ. Pro.  4(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. Pro. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

Fed. R. Civ. Pro. 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

Fed. R. Civ. Pro. 12(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

Fed. R. Civ. Pro. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1391.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. §1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23

## **State Statutes**

N.J. Ct. R. 4:4 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## **Miscellaneous Sources**

Federal District Court Management Statistics (2005)
        http://www.uscourts.gov/cgi bin/cmsd2005.pl. . . . . . . . . . . . . . . . . . . . . . . . . . 26

Restatement (Second) of Torts § 558 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Defendants Attwater Blue Corporation ("Attwater"), Ben Raue ("Raue") and Jeff Hooper ("Hooper") (collectively, "Defendants"), through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss and/or Transfer claims asserted in the Amended Complaint of Plaintiffs Christopher H. Knierim ("Knierim") and Jack P. Zaccaria ("Zaccaria") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint not only fails to state a claim, it does so spectacularly. On every level, in every jurisdiction, under every theory, for each claim, with respect to each element, the claims are deficient. The difficulty facing this Court is not whether to grant Defendants' motion, but rather on which ground to do so. Each of Plaintiffs' four asserted claims fail.[1]

As an initial matter, Plaintiffs plead claims against Raue and Hooper individually; yet, the Amended Complaint contains no allegation whatsoever of any personal connection they may have to the State of New Jersey. The absence of such allegations is with good reason, for, as detailed in their accompanying Declarations, Raue and Hooper have none. As a result, the claims against them fail for want of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rule 12(b)(2)"). *See infra* Point I.

Even if this Court had personal jurisdiction over Raue and Hooper, Plaintiffs' claims against them and Attwater for defamation would nonetheless fail under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). The Amended Complaint simply fails to meet the bare pleading requirement of identifying any purportedly defaming statement, and, even speculating on what Plaintiffs might have meant, leaves one with the conclusion that the statement would constitute

---

[1] Plaintiffs assert the following claims, in the order presented in the Amended Complaint: (1) Slander; (2) Breach of Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; and (4) Tortious Interference with Prospective Economic Advantage.

a non-actionable opinion or a communication subject to privilege.  With the defamation claim gone, the claim for tortious interference with prospective economic, based on the same purportedly defaming statements, must also fail under Rule 12(b)(6).  *See infra* Point II.

With the defamation and tortious interference claims dismissed, Plaintiffs' breach of contract claims and those sounding in a breach of the implied covenant of good faith and fair dealing fail for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)").  These claims fall far below the greater than $75,000 minimum threshold for establishing diversity jurisdiction.  *See infra* Point III.

The breach of contract claims and those sounding in a breach of the implied covenant of good faith and fair dealing fail against Raue and Hooper under Rule 12(b)(6) for the additional reason that the Amended Complaint alleges that the contract at issue was with Attwater, the corporate entity of which Raue and Hooper are allegedly officers.  As such, they have no personal liability.  *See infra* Point IV.

In any event, the written contract upon which Knierim sues contains a forum selection clause, mandating venue in "the state or federal court sitting in Cook County, Illinois."  As such, his contract claim and the claim for breach of the implied covenant of good faith and fair dealing are subject to dismissal under Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Rule 12(b)(3)").  *See infra* Point V.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails for the additional reason that the covenant does not serve to turn an "at-will" arrangement into one "for cause," and, even if it did, the Amended Complaint adequately alleges such "cause."  As such, the claim is subject to dismissal under Rule 12(b)(6).  *See infa* Point VI.

Finally, in the event that any claim could survive, such as the remaining breach of contract claim and the claim for breach of the implied covenant of good faith and fair dealing asserted by Zaccaria, it should be transferred pursuant to 28 U.S.C. §1404(a) to the United States District Court for the Northern District of Illinois. This is the same venue mandated by Knierim's contract, the location of most of the witnesses and documents, and the situs of where the purported wrongdoing occurred. *See infra* Point VII.

## FACTS[2]

Plaintiffs allege that they each served as independent contractors of Attwater, an entity engaged in providing recruitment and staffing services for the Siemens Building Technologies, Inc. ("SBT") division of Seimens Corporation ("Seimens"). Amended Complaint ("Am. Compl.") ¶¶ 11, 15, 27, 28, 42, 46. Zaccaria served as a recruiter, and Knierim served as a "name generation specialist," each initially hired in December of 2004. *Id.* ¶ 26. Defendants Gina Alladin ("Alladin") and Michael Bolinger ("Bolinger") allegedly work in the Human Resources Department of SBT and are in charge of the Attwater vendor contract. *Id.* ¶¶ 16, 17, 29.

## A.  Zaccaria's Allegations

With respect to Zaccaria, Attwater terminated him in January 2006, allegedly as a result of failed negotiations to become a "partner" of Attwater and its Director of Recruiting. *Id.* ¶¶ 32, 33, 35. The Amended Complaint alleges, however, that "Attwater . . . alleged to employees and independent contractors at Attwater, and to SBT, that the termination was a result of Zaccaria's poor

---

[2]　For purposes of adjudicating Defendants' arguments based on Rule 12(b)(6), the Court must accept as true the well-pled allegations of the complaint, but it "need not credit a plaintiff's 'bald assertions' or 'legal conclusions.'" *Karykous v. Sbarro, Inc.*, 2006 WL 2690287 at *1 (D.N.J. Sept. 19, 2006) (Thompson, J.) (citations omitted). For purposes of adjudicating Defendants' arguments on other grounds, the relevant factual averments will be identified in the argument itself, with appropriate citation in support.

performance and not the fact that it was a result of failed negotiations." *Id.* ¶ 36.  In May 2006, Attwater re-hired Zaccaria as an independent contractor, allegedly because he was better equipped than Hooper to perform the functions of Director of Recruiting, a role that Hooper had assumed but wanted to relinquish, and Zaccaria was allegedly desired to work in a new pilot program for Attwater.  *Id.* ¶¶ 43-47.  Despite the re-hire, Zaccaria and Attwater could not come to terms on language of a written agreement.  *Id.* ¶ 63.

In August 2006, while still serving as an independent contractor for Attwater, Zaccaria contacted Terry Terhark ("Terhark"), the President of The Right Thing, Inc. ("TRT"), seeking employment.  *Id.* ¶ 63.  The Amended Complaint alleges that, in June 2006, TRT outbid Attwater for the vendor contract with SBT, becoming its "master vendor" and reducing Attwater's status to that of an "associate vendor."  *Id.* ¶¶ 49, 51, 52.  "As the master vendor, one of [TRT's] responsibilities [was] to determine how many requisitions Attwater [would] receive on a monthly basis and to also pay Attwater directly for any services rendered."  *Id.* ¶ 52.  Terhark referred Zaccaria to Michael Gruber ("Gruber"), a Vice-President of TRT, and the chief person in charge of the SBT contract.  *Id.* ¶ 64.

After Zaccaria had telephone interviews with Gruber and Terhark in August 2006, Gruber contacted Alladin at SBT on September 7, 2006, informing her of the interviews.  *Id.* ¶ 66-68.  That same day, Alladin and/or Bolinger, in turn, told Attwater of Zaccaria's undisclosed interviews with Attwater's master vendor.  *Id.* ¶ 69.  Later same day, Hooper terminated Zaccaria, effective immediately, but without disclosing the reasons therefor.  *Id.* ¶ 70.  The Amended Complaint alleges that Mark Dillon, a purported Attwater "partner," informed Zaccaria that the termination was a result of the interviews, stating that Zaccaria had done a good job.  *Id.* ¶ 71-73.  Zaccaria has alleged he submitted a final invoice to Attwater in the amount of $11,450.00 for

services purportedly rendered in July, August and September, 2006, which allegedly remains unpaid. *Id.* ¶ 75.

On September 11, 2006, Gruber again contacted Alladin, purportedly seeking a reference for Zaccaria. *Id.* ¶ 79. Despite having told Attwater of Zaccaria's apparent disloyalty, she now purportedly gave Zaccaria "a positive" reference. *Id.* The same day, Gruber contacted Zaccaria, informing him that TRT was "very interested" in him, and stating further that Terhark was going to contact Hooper as a courtesy of "one vendor to another" to inform him of TRT's continued pursuit of Zaccaria. *Id.* On September 12, 2006, Terhark telephoned Hooper, who apparently "bashed Zaccaria's reputation and advised Terhark to not pursue him further." *Id.* ¶ 80.

Despite the "bashing," on September 12 and 13, 2006, "Gruber continue[d] to be in discussions with Zaccaria and [began] to get specific on the different ways [TRT] could engage his services." *Id.* ¶ 81. After September 13, however, no further communications occurred between TRT and Zaccaria, with his phone messages left unreturned. *Id.* ¶ 82.

**B.    Knierim's Allegations**

With respect to Knierim, in December 2005, a year after hire, Hooper allegedly made "several negative comments to employees of Attwater and to Alladin and Bolinger, and then email[ed] Raue and Knierim saying that Knierim and his 'name generation lists are a fucking waste of time and useless.'" *Id.* ¶ 31. Knierim nevertheless continued to work for Attwater, and, in February 2006, he entered into a new, written independent contractor agreement with Attwater. *Id.* ¶ 42.

In August 2006, after learning of Zaccaria's contact with TRT, Knierim also contacted TRT to inquire about a position, despite continuing to work as an Attwater independent

contractor subject to a written agreement. *Id.* ¶ 65.[3]  On September 8, 2006, Terhark's secretary contacted Knierim to schedule an interview for September 14, 2006, to which Knierim agreed, and on September 9, 2006, Knierim emailed Terhark to keep secret his pursuit of a position with TRT and the interview because of what had happened to Zaccaria. *Id.* ¶¶ 76-78.  On September 13, 2006, Knierim received a call from Raue and Hooper, who accurately accused him of interviewing with TRT and Terhark, stating that the learned the details from Alladin and Bolinger. *Id.* ¶ 83.  Hooper warned Knierim that his written agreement obligated Knierim to inform Attwater of contact by a competitive company, including contact from TRT, but Knierim did not heed the warning. *Id.* ¶ 84-85.  Raue and Hooper also warned Knierim that they were considering terminating him. *Id.* ¶ 86.

Despite the warning, Knierim interviewed with Terhark on September 14, 2006. *Id.* ¶ 88.  Terhark told Knierim that TRT was still considering hiring him and would give an answer the next day.  Two days later, however, on September 16, 2006, Terhark emailed Knierim inquiring whether he was subject to a non-compete from Attwater, and Knierim responded that he was not. *Id.* ¶ 92.  Terhark responded by saying an answer on the hiring decision would come on September 18, 2006, but Knierim has never heard back from TRT. *Id.* ¶ 93-94.  On September 21, 2006, Attwater terminated Knierim.  Id. ¶ 96.  Knierim alleges he has sent a final invoice to Attwater in the amount of $16,704.86, which allegedly is unpaid. *Id.* ¶ 97.

On October 6, 2006, Hooper allegedly told Knierim, in response to a Knierim telephone call, that he (Hooper) was going to speak to Tanya (an Attwater employee and a former co-worker with Knierim at Quintegra, a prior place of employment) to ensure that Knierim would not be re-employed by Quintegra. *Id.* ¶ 99.  Also, the Amended Complaint charges that "Hooper has

---

[3]    At the appropriate time and in the appropriate forum, Defendants intend on asserting numerous claims against Knierim for breach of the written agreement.

gloated to employees and/or independent contractors of Attwater and to SBT employees that his bashing of Plaintiffs' reputations and his threats to Terhark mean that Knierim and Zaccaria are now a couple of 'train wrecks.'" *Id.* ¶ 100.

## ARGUMENT

### I. THE AMENDED COMPLAINT MUST BE DISMISSED AS AGAINST RAUE AND HOOPER FOR WANT OF PERSONAL JURISDICTION

"Under Rule 4(e) of the Federal Rules of Civil Procedure, district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits." *Sunbelt Corp. v. Noble Denton & Assoc. Inc.*, 5 F.3d 28, 31 (3d Cir. 1993), *citing Grand Ent. Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir.1993). Under New Jersey law, its jurisdictional reach parallels the "outermost limits permitted by the United States Constitution," making it co-extensive with the Due Process Clause of the Fourteenth Amendment. *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971); *see also* N.J. Ct. R. 4:4-4. Critically, in all cases where a challenge to personal jurisdiction exists, "the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court *in personam* jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3rd Cir. 1984).

Here, Plaintiffs allege not a single fact concerning Raue's or Hooper's individual contacts with the State of New Jersey; yet, they seek to pin *personal* liability on them. In fact, the only jurisdictional allegations concerning Raue and Hooper simply indicate that they are both residents of the State of Illinois – otherwise, the Amended Complaint is silent on the matter. Am. Compl. ¶¶ 7-8. To the extent that Plaintiffs might argue that this Court has personal jurisdiction over Raue and Hooper due to their positions as employees of Attwater, the position must be rejected by no less authority than the United States Supreme Court. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Court held that "jurisdiction over an employee does not automatically follow

from jurisdiction over the corporation which employs him . . . . Each defendant's contacts with the forum state must be assessed individually." *Id.* at 781.

Plaintiffs cannot meet their burden. Setting aside the lack of germane allegations, the facts that are pled undermine the notion that there are sufficient contacts. The independent contractor agreements are specifically alleged to have been entered into with Attwater, not Raue or Hooper personally. *See* Am. Compl. ¶¶ 27, 28, 42, 46. *See also infra* Point IV (seeking dismissal of the contract-based claims against Raue and Hooper on this alternate ground). Moreover, insofar as the defamation-based claims are concerned, there exists no allegations whatsoever involving Raue and, to the extent any statements are attributable to Hooper, they were purportedly made to persons located outside of New Jersey, such as in Illinois or Ohio, where TRT is located. Am. Compl. ¶ 49.

Buttressing these facts are perhaps the most important ones that both Raue and Hooper have attested in their accompanying Declarations that they have no personal or business contacts in New Jersey, own no property there, and have not even visited there socially in as many as five years or more. *See* Declarations of Ben Raue and Jeff Hooper, sworn to on January 24, 2007. Under these circumstances, there can exist no question that this Court lacks personal jurisdiction over Raue and Hooper, requiring dismissal under Rule 12(b)(2). *See, e.g., Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 183-84 (3rd Cir. 2000) (emphasis added):

> In the instant case, plaintiffs have not alleged any contact defendants . . . had with the forum New Jersey. *Defendants . . . do not reside in New Jersey, did not visit here, did not own property here or even have any personal contact with the forum state.* This Court cannot, therefore, find that defendants have systematic and continuous contacts with New Jersey. Further, defendants . . . never communicated with plaintiffs in New Jersey and never spoke or corresponded with anyone purporting to represent the Sigma entities. Therefore, this court cannot find that defendants . . . took any action by which they purposefully availed themselves of the privilege of conducing activities within the forum state or that would justify haling them into Court in this state. *Considering the lack of any*

*allegation that defendants had the requisite minimum contacts in their individual capacities, this Court cannot find that either specific or general jurisdiction exists over them.*

## II.    THE DEFAMATION-BASED COUNTS FAIL TO STATE A CLAIM[4]

### A.    Plaintiffs' Slander Claim Fails Because The Purportedly Defamatory "Statements" are too Vague, Non-Specific and Conclusory to be Actionable

Under New Jersey law, "[t]o succeed on a claim of defamation, a plaintiff must show (1) that Defendant made a defamatory statement of fact; (2) concerning the Plaintiff; (3) which was false; (4) which was communicated to persons other than the Plaintiff; and (5) fault." *Buying for the Home, LLC v. Humble Abode, LLC*, 2006 WL 3000459, at *10 (D.N.J. Oct. 20, 2006) (Pisano, J.) (citations and internal quotation marks omitted).[5] To satisfy the federal pleading standard for a state law defamation claim, the Third Circuit requires a plaintiff to "identify the alleged defamatory statements or the source of the defamatory statements with sufficient particularity." *Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 875 (3rd Cir. 1994); *see also Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 109 (3rd Cir. 1988) ("[A] plaintiff must be required to set forth actionable statements with particularity."), *cert. denied*, 489 U.S. 1078 (1989).[6]

---

[4]    The Amended Complaint is devoid of any hint at the state law applicable to this case. Nonetheless, Plaintiffs' deficiencies are so deep and fundamental that they fail under the common law of every jurisdiction. To be sure, Defendants cite herein to law of New Jersey (where Plaintiffs are located), Illinois (where Defendants are located) and Ohio (where TRT is located), each substantiating dismissal.

[5]    *See also Krasinski v. UPS, Inc.*, 124 Ill.2d 483, 530 N.E.2d 468, 471 (Ill. 1988) (Under Illinois law, "[t]o make out a claim for defamation, the plaintiff must set out sufficient facts to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff.") (citing the Restatement (Second) of Torts § 558 (1977)); *SPX Corp. v. Doe*, 253 F.Supp.2d 974, 978 (N.D. Ohio 2003) (Under Ohio law, "[t]he elements of defamation are (1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) a requisite amount of fault on the part of the publisher, and (4) actionability or special harm caused by the statement.") (citations omitted).

[6]    *See also Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. App. Div. 1986) ("In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the

Here, Plaintiffs come no where close to meeting this standard. Even being overly generous, one can only distill no more than five potentially defamatory statements attributable to Defendants, two concerning Knierim, two concerning Zaccaria, and one concerning the two of them. They are:

1.  *Knierim:* In December 2005, Hooper allegedly made "several negative comments to employees of Attwater and to Alladin and Bolinger, and then email[ed] Raue and Knierim saying that Knierim and his 'name generation lists are a fucking waste of time and useless.'" Am. Compl. ¶ 31.

2.  *Knierim:* On October 6, 2006, Hooper allegedly told Knierim, in response to a Knierim telephone call, that he (Hooper) was going to speak to Tanya (an Attwater employee and a former co-worker with Knierim at Quintegra, a prior place of employment) to ensure that Knierim would not be re-employed by Quintegra. Am. Compl. ¶ 99.

3.  *Zaccaria:* In January 2006, "Attwater . . . alleged to employees and independent contractors at Attwater, and to SBT, that the termination was a result of Zaccaria's poor performance and not the fact that it was a result of failed negotiations." Am. Compl. ¶ 36.

4.  *Zaccaria:* On September 12, 2006, Hooper purportedly "bashed Zaccaria's reputation [to Terhark] and advised Terhark to not pursue him further." Am. Compl. ¶ 80.

5.  *Both:* "Hooper has gloated to employees and/or independent contractors of Attwater and to SBT employees that his bashing of Plaintiffs' reputations and his threats to Terhark mean that Knierim and Zaccaria are now a couple of 'train wrecks.'" Am. Compl. ¶ 100.

As an initial matter, one can readily see that no even colorable claim can be made against Raue individually on any defamation claim – for Plaintiffs do not even allege that he made any statements at all. On this basis alone, he should be dismissed from the defamation-based claims, *i.e.*, the claim for slander and the one for tortious interference with prospective economic advantage, which is based on the same purportedly defamatory remarks. Indeed, Plaintiffs should concede to

---

defamatory words, their utterer and the fact of their publication.").

this ruling rather than keep him as a defendant in claims that never should have been brought in the first place.

As to Hooper and Attwater, the alleged defamatory remarks suffer from the same deficiency found in a number of decisions, including *National Bowl-O-Mat Corp. v. Brunswick Corp.*, 264 F. Supp. 221 (D.N.J. 1967), where the Court explained why it could not fulfill its initial duty to determine whether a statement was defamatory:

> *The alleged defamatory statement or statements are not alleged with sufficient particularity to enable the court to determine whether or not such statement or statements are in fact defamatory*. In a defamation action, there is always a preliminary question for the trial judge to consider: Are the words reasonably capable of a defamatory meaning? If the alleged defamatory words are unambiguous and open only to a single interpretation – *i.e.*, defamatory or non-defamatory – the Court makes a determination as a matter of law. If the alleged defamatory words are vague or ambiguous or reasonably susceptible of legally innocent as well as defamatory significance, then it is for the jury to determine as a question of fact, in the light of the circumstances disclosed by the evidence and entire context of the alleged defamation, whether such alleged defamation was understood to be defamatory by those to whom the publication was made. *The initial duty of the trial judge to consider the above-stated question cannot be fulfilled in this case because the alleged defamatory words have not been set forth with sufficient particularity*.

*Id.* at 226 (emphasis added). *See also Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp.2d 518, 538 (D.N.J. 1998) ("Without an specific allegations as to what was allegedly said about any specific plaintiff and by whom at what time, plaintiffs have failed to meet the requirements for setting forth a cause of action for defamation.").

Here, Plaintiffs' allegation that Hooper made "several negative comments" about Knierim – without saying what or to whom – is precisely the type of vague, non-specific and conclusory allegation found insufficient in the case law. Likewise, Plaintiffs' allegation that Hooper "was going to speak to Tanya" can hardly constitute defamation unless he actually did speak with

-11-

her and communicated a false statement of fact about Knierim – allegations missing from the Amended Complaint.  Moreover, Plaintiffs' allegation that some unnamed person at Attwater commented to some unnamed employees, unnamed independent contractors and unnamed person or persons at SBT about Zaccaria's "poor performance," without stating what was actually said, fails on every level.  Finally, allegations that Hooper "bashed" Zaccaria, or that he and Knierim are "train wrecks," are vague hyperbole, hardly the type sufficient to satisfy the specificity standards enunciated in *Humble Abode*, *Bathgate*, *Nanavati*, *National Bowl-O-Mat* and *Doug Grant*, especially when coupled with its purported publication to unnamed employees, unnamed independent contractors and unnamed persons at SBT.  *See also Flammer v. County of Morris*, 2006 WL 1307679, at *5 (D.N.J. May 10, 2006) (Martini, J.) ("[R]egarding the written warnings and performance reviews, [Plaintiff] fails to allege, with any specificity, [Defendant's] defamatory statements in those reviews and warnings.  Merely alleging that such reviews and warnings constituted defamation is insufficient.").

In short, all of the potentially defaming statements are too vague, non-specific and conclusory to support a claim except for the sole allegation that Hooper told Raue that "Knierim and his 'name generation lists are a fucking waste of time and useless.'"  Am. Compl. ¶ 31.  But, as to this allegation, it suffers from the deficiency of being a non-actionable statement of opinion or otherwise constituting a privileged communication, as discussed below.  In the meantime, all other purportedly defamatory allegations should be dismissed for failure to state a claim under Rule 12(b)(6).

### B. Plaintiffs' Slander Claim Fails Because The Purported Defamatory "Statements" Constitute Non-Actionable Opinions

"[S]tatements of opinion are entitled to constitutional protection no matter how extreme, vituperous, or vigorously expressed they may be." *Kotlikoff v. The Community News*, 444

A.2d 1086, 1091 (N.J. 1982).  Stated differently, "[u]nder the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."  *Gertz v. Robert Welch, Inc*. 418 U.S. 323, 339 (1974).

In determining whether a statement constitutes a non-actionable expression of opinion or an actionable statement of fact, both New Jersey and Illinois have utilized the Restatement (Second) of Torts to aid in the analysis, with Illinois supplementing the test to consider certain additional factors.  *See DeAngelis v. Hill*, 180 N.J. 1, 12 (N.J. 2004); *Mittelman v. Witous*, 552 N.E.2d 973 (Ill. 1989).[7]  While utilizing similar substantive factors, Ohio has held that its state constitution affords even more protection for expressions of opinion than the U.S. Constitution, since identical statements were at once found to be non-actionable expressions of opinion under Ohio law but actionable statements of fact under federal law.  *See Vail v. Plain Dealer Pub. Co.*, 649 N.E.2d 182 (Ohio 1995), *cert. denied*, 516 U.S. 1043 (1996); *Wampler v. Higgins*, 752 N.E.2d 962 (Ohio

---

[7]        Under the Restatement approach, the Court must determine "whether a communication is defamatory, assuming it is susceptible of only one meaning. . . .  In making this determination, the Court must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement."  *Farber v. City of Paterson*, 2006 WL 3485919, at \*4 (D.N.J. Nov. 29, 2006) (Debevoise, J.).  To these, Illinois adds:  "(1)whether the statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous; (2) whether the statement is verifiable, *i.e.,* capable of being objectively characterized as true or false; (3) whether the literary context of the statement would influence the average reader's readiness to infer that a particular statement has factual content; and (4) whether the broader social context or setting in which the statement appears signals a usage as either fact or opinion."  *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1230 (Ill. App. Ct. 1995).

2001).[8]  In truth, all of these tests really measure the same thing, with some jurisdictions simply using expanded language to say what another jurisdiction articulated succinctly.

By any measure, Hooper's purported statement to Raue that Knierim's name generation list was a "waste of time and useless" is an expression of opinion, such an obvious conclusion that walking through the analysis would prove more an academic exercise than any revelation as to the statement's nature.[9]  Indeed, it bears mentioning that this statement was purportedly made in December 2005, some nine months before Knierim even started interviewing at TRT, thereby removing any taint that it was manufactured for ulterior reasons.

If one nevertheless examines the specific language purportedly used by Hooper in light of its common and ordinary meaning, one would conclude that the language at issue lacks precise meaning and is only "loose and figurative speech," which smacks of an opinion.  Also, the statement is not verifiable, for it is impossible to prove or disprove whether Hooper's views are or are not correct that Knierim's work product was a waste of time or useless.  The context of the statement also dictates that it is an expression of an opinion, for it was made via email addressed to Knierim himself and to Raue, the President of Attwater.  In this regard, it is important to consider Hooper's tenor in making the statement, for it is filled with "subjective hyperbole," including an expletive deleted.  Finally, the larger social context dictates that one officer of a company should be able to speak freely to another officer about the work product of an employee, especially where the

---

[8]    Under Ohio law, "the Court must decide, under the totality of the circumstances, whether the statements at issue express facts or opinions using the following four factors:  (1) the specific language used; (2) whether the statement is verifiable; (3) the written context of the statement; and (4) the broader social context in which the statement was made." *SPX Corp. v. Doe*, 253 F. Supp.2d 974, 980 (N.D. Ohio 2003).

[9]    While Plaintiffs assert only a slander claim, it is interesting to note that the only statement of arguable precision was contained in an email.

employee is copied on the email. (Indeed, as noted below, the jurisdictions under consideration all hold that such communications are privileged.)

Courts have regularly held similar statements to constitute non-actionable opinions. For example, in *Hopewell v. Vitullo*, 701 N.E.2d 99, 102, 104 (Ill. App. Ct. 1998), the court concluded that the phrase "fired because of incompetence" constituted a non-actionable opinion, and in *SPX Corp.*, 253 F. Supp.2d at 980-83, the court held that statements posted on Yahoo! that a public company was subject to a "massive SEC and FBI investigation" and "Accounting Fraud!!!!!!" were non-actionable opinions. Likewise, publicizing that an attorney "is a very poor lawyer" constitutes a non-actionable expression of opinion, *see Sullivan v. Conway*, 959 F. Supp. 877, 880 (N.D. Ill. 1997), as does telling third parties that another is "cocky," a "con artist" and full of "bullshit." *Quinn*, 658 N.E.2d at 1231. *See also Kotlikoff*, 444 A.2d at 1091 (holding that statements of a "huge coverup" and "conspiracy" were non-actionable opinions); *Greenbelt Coop. Pub. Ass'n v. Bresler*, 398 U.S. 6 (1970) (holding that publication that a real estate developer was "blackmailing" the city in connection with certain zoning variances not actionable); *Nanavati*, 857 F.2d at 107-09; *Farber*, 2006 WL 3485919, at *4-6; *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 676 (Ill. App. Ct. 2000)

Even those statements identified in Point II. A. above as being too vague, non-specific and conclusory to state a claim would nevertheless be subject to challenge as non-actionable opinions if specified. Hooper's purported communication of "negative comments" smacks of an opinion, as does statements that Zaccaria's termination was due to "poor performance," much like the "fired because of incompetence" allegation found non-actionable in *Hopewell*. The same opinion analysis holds true for statements of "bashing" one's reputation or that Plaintiffs are "train wrecks"

– all the voice of a protected expression of opinion.  As a result, the defamation claim fails in its entirety.

### C. Plaintiffs' Slander Claim Fails Because The Purported Defamatory "Statements" Constitute Privileged Communications

The laws of New Jersey, Illinois and Ohio all recognize a qualified privilege for statements made for a common interest shared between the publisher and recipient, such as statements made among co-workers or even to those outside the work place where a common interest in the information exists.  In *Monroe v. Host Marriot Servs. Corp.*, 999 F. Supp. 599, 604-05 (D.N.J. 1998), for example, the Court held, under New Jersey law, that an internal memorandum containing critical information about one employee but distributed to others was protected by a qualified privilege.  Likewise, in *Hoth v. American States Ins. Co.*, 753 F. Supp. 703, 711-12 (N.D. Ill. 1990), the Court held that, under Illinois law, an internal memorandum written pursuant to an investigation of claims of an employee's wrongdoing was privileged when sent to supervisors and remained privileged when the contents were disclosed to other employees. *See also Krasinski,* 530 N.E.2d at 471 ("If the defamation claim arises out of an employer-employee relationship, the plaintiff may be confronted with a qualified privilege.").  In *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.2d 451, 460-61 (6th Cir. 2004), the Court, interpreting Ohio law, held that an internal memorandum "writing up" an employee for insubordination constituted a privilege communication, stating that "a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege."[10]

---

[10]    *See also Lutz v. Royal Ins. Co. of America*, 586 A.2d 278 (N.J. App. Div. 1991) (holding that publication to a supervisor of purportedly defaming letter concerning employee was protected by qualified privilege); *Taylor v. National Group of Cos., Inc.*, 729 F. Supp. 575, 578 (N.D. Ohio 1989) (Under Ohio law, "statements made in good faith in a matter of common interest

Here, the potentially defaming statements are all protected by the qualified privilege. The only one made with any degree of specificity, where Hooper allegedly emailed Raue (and Knierim himself) to convey that Knierim's "name generation lists are a . . . waste of time and useless," can only be interpreted as a legitimate communication of a common interest about a worker from the Vice President of Attwater (Hooper) to its President (Raue). *See* Am. Compl. ¶¶ 7-8. As such, it constitutes protected speech.

Even the non-specific statements are alleged to have been communicated either to unnamed Attwater employees, unnamed Attwater independent contractors or unnamed SBT employees; to Alladin or Bolinger of SBT; or to Terhark of TRT. Yet, in each instance, there existed a common interest in the communication, regardless of whether Plaintiffs view them as being "negative comments." In *LaScola v. US Sprint Communications*, 739 F. Supp. 431 (N.D. Ill. 1990), for example, the court held that communication to a customer of the termination of an account manager servicing its account and the reasons for the termination were privileged communications, as both the company and the customer had a common interest in the information, stating:

> As defendants correctly note, SCN [the customer] had an interest in knowing not only that a personnel change was to be made on their account, but also the express reason for that change – that Mr. LaScola [the plaintiff] had disclosed what was considered to be confidential information.

---

between an employer and an employee or between two employees regarding a third employee are subject to a qualified privilege."); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir. 1982) ("[C]ommunications between officers of a corporation or between different branches of the same corporation, in the course of corporate business, do not constitute publications to third persons."); *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306 (10th Cir. 1990) ("[S]tatements made by one corporate employee during the performance of his duties within the hearing only of other corporate employees does not constitute publication."); *Nida v. Echols*, 31 F. Supp.2d 1358 (N.D. Ga. 1998) ("[S]tatements made by one corporate agent to another corporate agent, when the recipient of the information has a reason to receive the information, are deemed to have not been published.")

*Id.* at 438.  Likewise, representatives of SBT, such as Alladin and Bolinger, as the client of Attwater, had a common interest in knowing that Zaccaria and/or Knierim were no longer associated with Attwater and would no longer be serving SBT's account – including the reasons for such terminations (assuming the Amended Complaint actually alleged that this was what was conveyed).

The same holds true for communications to TRT, for it too had a common interest with Attwater as part of its "master vendor/associate vendor" relationship to know whether Zaccaria and/or Knierim remained associated with Attwater.  Moreover, it is important to note that the Amended Complaint alleges that Terhark (of TRT) called Hooper to make inquiry about Zaccaria, and not the other way around.  Am. Compl. ¶¶ 79-80.  As such, "an employer may invoke a conditional privilege to respond to direct inquiries by prospective employers."  *Delloma v. Consolidated Coal Co.*, 996 F.2d 168, 171-72 (7th Cir. 1993).  For all of these reasons, the purported communications made by Hooper – even if they were neither too vague nor constituted non-actionable opinion – are protected from attack by a qualified privilege.

To overcome the privilege, a plaintiff must prove that the defendant acted with actual malice.  *Knox*, 375 F.3d at 460-61; *LaScola*, 739 F. Supp. at 438; *Krasinski,* 530 N.E.2d at 471.  "To prove actual or express malice, [plaintiff] must establish that [defendant] did not believe in the truth of the defamatory matter, or had no reasonable grounds for believing it to be true."  *LaScola*, 739 F. Supp. at 438  (citations and internal quotation marks omitted).  Here, Plaintiffs have failed to and cannot legitimately allege that Hooper did not believe that Knierim's name generation lists were a waste of time and useless, that he felt negatively about Knierim or Zaccaria, or that he believed that Zaccaria's performance was poor.  This is especially true for any alleged statements that pre-date the disclosure that Zaccaria and Knierim were secretly interviewing with Attwater's client relationship.

*            *            *

Plaintiffs' slander claim fails on every front, for the purported defamatory statements, save one, are too vague, non-specific and conclusory to constitute actionable claims; they nevertheless constitute non-actionable opinion even if they were specific enough; and they fall within the protections of privileged communications. For these reasons, the defamation claim must be dismissed pursuant to Rule 12(b)(6).

### D. Plaintiffs' Claim for Tortious Interference with Prospective Economic Advantage Fails for the Same Reasons the Slander Claim Fails

Plaintiffs' claim for tortious interference with prospective economic advantage is predicated on the exact same statements that they allege are defamatory. Indeed, the count even incorporates by reference the slander claim in its entirety. Am. Compl. ¶ 122. As such, since those purported statements are not defamatory, they cannot support the instant claim. *See Nanavati*, 857 F.2d at 109-110 ("We conclude that [plaintiff] limited his tortious interference claim to the same statement he set out in his defamation claim. . . . Our rejection of liability for those statements therefore applies also to the tortious interference claims."); *see also Bainhauer v. Manoukian*, 520 A.2d 1154, 1175 (N.J. App. Div. 1987) ("[T]he malicious interference count . . . is expressly predicated on precisely the same facts as are alleged in the defamation count. Proof or failure of proof of the operative facts of the defamation count would, therefore, completely comprehend the malicious interference cause."). As such, the tortious interference claim must be dismissed.

### III. PLAINTIFF'S CONTRACT-BASED CLAIMS FAIL TO SATISFY THE MINIMUM AMOUNT NECESSARY TO INVOKE THIS COURT'S SUBJECT-MATTER JURISDICTION

Plaintiffs' contract-based claims fail to satisfy the greater than $75,000 threshold for invoking this Court's diversity subject-matter jurisdiction. Zaccaria alleges a loss of $11,450.00, and Knierim alleges a loss of $16,740.86 – so even collectively they fail to meet the damage minimum. With the failure to state a legitimate claim for defamation, this Court should decline to exercise its

supplemental jurisdiction over these small claims.  As such, the claims for breach of contract and for breach of the implied covenant of good faith and fair dealing should be dismissed pursuant to Rule 12(b)(1).

## IV.    PLAINTIFFS' CONTRACT-BASED CLAIMS SHOULD BE DISMISSED AS AGAINST RAUE AND HOOPER, SINCE THEY ARE NON-PARTIES TO THE CONTRACT

The Amended Complaint alleges that both Zaccaria and Knierim contracted with Attwater as independent contractors.  Am. Compl. ¶¶ 27, 28, 42, 46.  As a non-party to the contract, Raue and Hooper cannot be held liable for any purported breach.  This holds true even if Raue and Hooper are officers and shareholders of Attwater.  *See, e.g., In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015, 1017 (Ill. 1994); *Bevelheimer v. Gierach*, 339 N.E.2d 299, 303 (Ill. App. Ct. 1975) ("[E]ven if all the stock of a corporation is owned by one person, the corporation is an entity different from that of the stockholder."); *Suzzi, Inc. v. Atlantic Dept. Stores*, 359 N.E.2d 721, 724-25 n.1 (Ohio App. Ct. 1976); *O'Neill v. United States*, 281 F. Supp. 359 (D.C. Ohio 1968), *aff'd*, 410 F.2d 888 (6th Cir. 1969); *Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 497 (N.J. App. Div. 2006) ("It is well established that a corporation is a separate entity from its shareholders and a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.") (citations and internal quotation marks omitted).  As such, the breach of contract claim and the claim for breach of the implied covenant of good faith and fair dealing must be dismissed as against Raue and Hooper.

## V.    KNIERIM'S CONTRACT-BASED CLAIMS MUST BE DISMISSED ON THE BASIS OF IMPROPER VENUE

Plaintiffs allege that Knierim entered into a written Independent Contractor Agreement (the "Agreement") as of or about February 2006.  Am. Compl. ¶ 42.  In Section 17 of the Agreement, the parties provided as follows:  "This Agreement shall be subject to and governed by

the laws of the State of Illinois and any and all actions must be brought in the state or federal court sitting in Cook County, Illinois." *See* Exhibit A to Raue Declaration.[11]  Both Illinois and New Jersey recognize the enforceability of forum selection clauses.  *See Faur v. Sirius Int'l Ins. Corp.,* 391 F. Supp.2d 650, 657 (N.D. Ill. 2005); *Paradise Enterprises, Ltd. v. Sapir*, 811 A.2d 516, 521 (N.J. App. Div. 2002).

"When a defendant challenges venue under Rule 12(b)(3), it is the plaintiff's burden to establish that venue is proper. . . .  The parties have agreed, through a forum selection clause, that contractual disputes will be resolved in [Cook County, Illinois]. . . .  In such a case, a forum selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" *Faur,* 391 F. Supp.2d at 657 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)) (other citations omitted).  Exceptions to this rule are "narrowly construed," with a finding that they are "unreasonable under the circumstances" only if:

> (1) they were agreed to as a result of fraud, undue influence or unequal bargaining power; (2) the selected forum is so "gravely difficult and inconvenient as to deprive the complaining party of "its day in court;" or (3) enforcement of the clause would "contravene a strong public policy of the forum in which the suit is brought."

*Id.* (citations omitted).

---

[11]      Although Defendants are moving to dismiss pursuant to Rule 12(b)(3) for improper venue, the Court's consideration of the Agreement would nonetheless be proper even on a Rule 12(b)(6) motion to dismiss, even though it is not appended to the Amended Complaint, since it is expressly referenced therein and relied thereupon. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to a pleading.  An exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the  motion to dismiss into one for summary judgment.") (citations and internal marks omitted).

Here, despite the known existence of the clause in the Agreement, Knierim has chosen to breach it by bring suit in New Jersey. The Amended Complaint addresses none of the exceptions to enforcement of the agreed-upon forum selection clause, in no small measure because none apply. For these reasons, the Court should dismiss Knierim's claims for breach of contract and breach of the implied covenant of good faith and fair dealing on the basis of improper venue, pursuant to Rule 12(b)(3).

## VI.    PLAINTIFFS' FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing seeks to turn the parties' contractual relationship from one at-will into one "for cause." *See* Am. Compl. ¶ 119, 121. Thus, Plaintiffs complain that their termination constitutes a breach of contract. Plaintiffs are wrong.

According to Judge Posner, "[c]ontract law does not require the parties to behave altruistically towards each other; it does not proceed on the philosophy that I am my brother's keeper. That philosophy may animate the law of fiduciary obligations but parties to a contract are not each other's fiduciaries." *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273 (7th Cir. 1992) (Posner, J.). Thus, under Illinois law – which expressly governs Knierim's contract and implicitly governs Zaccaria's – the implied "covenant of good faith and fair dealing is not an independent source of duties but instead 'guides the construction of explicit terms in an agreement.'" *Payne v. McDonald's Corp.*, 957 F. Supp. 749, 758 (D. Md. 1997) (quoting *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992)). Consequently, "[i]n the absence of an explicit term of the agreement, a plaintiff is not entitled to rely on the covenant of good faith and fair dealings to imply such a duty." *Id.*

Here, the Agreement into which Knierim entered provides expressly that "termination without cause" is an agreed upon term. Setting aside the performance issues, which were identified prior to his secret negotiations to obtain a position with Attwater's customer (TRT), once they came to light, the Amended Complaint alleges that Raue and Hooper warned him that termination was imminent if he continued to sneak around interviewing elsewhere, especially with a competitor. Am. Compl. ¶ 86. Even if the Agreement provided for termination "for cause," as Plaintiffs seek to modify by imposing new duties under the guise of the covenant of good faith and fair dealing, such cause existed with respect to both Knierim and Zaccaria. For these reasons, the claim for breach of the covenant of good faith and fair dealing must fail.

## VII. ANY REMAINING CLAIMS SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a)

The instant motion effective deals with and argues for dismissal of all claims. To the extent any might remain, however, such as Zarccaria's contract-based claims against Attwater (in the event the Court determines to not to dismiss for want of subject-matter jurisdiction), they should be transferred to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a) ("Section 1404(a)").

Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29 (1988). The purpose is to "avoid the waste of time, energy and money and in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." *Hoffer v. Infospace.com*, 102 F. Supp.2d 556, 570 (D.N.J. 2000).

After initially determining that venue could be proper in the proposed transferee court, a court will consider the following three factors in determining whether to grant the motion:

-23-

(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Id.*; *see also LG Electronics Inc,. v. First Intern. Computer, Inc.*, 138 F. Supp.2d 574, 586 (D.N.J. 2001). Moreover, the Third Circuit has directed that courts should also consider a number of so-called private and public interest factors. Consideration of these factors leads one to conclude that Defendants' motion to transfer should be granted.

### A.    Venue is Proper in the Northern District of Illinois

In a diversity context, venue is proper where (1) any defendant resides, if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant is subject to personal jurisdiction at the time the action was commenced. 28 U.S.C. § 1391. Here, both the second and third criteria are met, since Raue, Hooper and Attwater are all residents of within the Northern District of Illinois (*see* Am. Compl. ¶¶ 6-8), and a substantial part of the events or omissions occurred there – such as the purported origin of the defamatory statements, entrance of the contracts at issue and, purportedly, their breach.[12] As such, venue is proper in the Northern District of Illinois.

### B.    The Private Interest Factors Dictate that Transfer is Appropriate

The private interest factors expressed by the Third Circuit include: "(1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and

---

[12]    *See* 28 U.S.C. § 1391(c) ("A defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). The Court may take judicial notice that Chicago and Schaumberg are located within the jurisdiction of the Northern District of Illinois. *See also* Declarations of Raue and Hooper.

records (similarly limited to the extent that the files could not be produced in the alternative forum)." *LG Electronics Inc.,* 138 F. Supp.2d at 586 (citations and internal quotations marks omitted).

Here, while Zaccaria's apparent choice forum choice is the District of New Jersey, Defendants' preference is the Northern District of Illinois. The claims at issue did not arise in New Jersey, as Defendants are and have been located in Illinois, and the purported recipients of any defaming statements were all located in jurisdictions outside of New Jersey. The same holds true for the contract claims, having been entered into in Illinois and, purportedly, breached there. The convenience of the parties as indicated by their physical and financial condition tips in Defendants' favor, since neither Raue nor Hooper are personally subject to the jurisdiction of New Jersey, whereas both Knierim and Zaccaria are subject to jurisdiction in Illinois (both having entered into contracts with an Illinois entity and, in the case of Knierim, agreeing to such jurisdiction). The same holds true for other witnesses, since all will likely be available for trial in Illinois but not New Jersey, and, as evidenced by the allegations of the Amended Complaint, most are employees or independent contractors of Attwater or of SBT, each located in Illinois. Finally, books and records are more conveniently located in Illinois, where everything is located , although Defendants acknowledge that with today's technology such records could be produced elsewhere.

Moreover, given the forum selection clause contained in Knierim's contract, in the event he determines to pursue his cause, he will need to re-file in Illinois, presumably in federal court once again. With his portion of the case likely pending there, it makes sense to transfer any remaining portion there as well. One must not forget, of course, that SBT is also an Illinois resident, subject to jurisdiction and venue in the Northern District of Illinois. For all of these reasons, the private interest factors dictate transfer. *See Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,*

847 F. Supp. 1244, 1246 (D.N.J.1994) ("When the central facts of the lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference.").

  **C.**  **The Public Interest Factors Dictate that Transfer is Appropriate**

    The Third Circuit's public interest factors include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *LG Electronics*, 138 F. Supp.2d at 586-587.

    Once again, these factors point in favor of transfer. While Defendants make no concessions in this regard, should a judgment issue, it is more conveniently enforced against Illinois residents such as Raue, Hooper, Attwater and/or SBT if issued in Illinois than if issued in New Jersey. The practical consideration of trying the case in the Northern District of Illinois are considerable over the District of New Jersey, for aside from the two Plaintiffs, nothing is in New Jersey. Instead, the bulk of the parties, witnesses and documents (electronic and hard copy) are located conveniently within the Northern District of Illinois, and the same will be said of Knierim if he decides to re-file there. Moreover, the Northern District of Illinois is less congested than the District of New Jersey, and can afford Plaintiffs a quicker trial. *See* Federal District Court Management Statistics (2005) (indicating that median time to trial for civil matters in the Northern District of Illinois is 6.9 months and time from filing to trial is 27 months, whereas in the District of New Jersey, the time is 7.3 months and 36.7 months, respectively).[13] Finally, there is an obvious

---

[13] The federal district court statistics can be found online at http://www.uscourts.gov/cgi-bin/cmsd2005.pl.

local interest to have local, Illinois matters adjudicated in Illinois, and, while no one doubts the competence of any jurist in the District of New Jersey, an Illinois judge would have more familiarity with Illinois law, as would be applicable to the breach of contract claim and likely with respect to the defamation claim.

Moreover, Attwater intends on filing suit against Plaintiffs in the Northern District of Illinois in the immediate future, for claims arising, in part, out of a breach of their contractual and non-contractual duties owed to Attwater. As such, there will likely be a pending action in the Northern District of Illinois into which this Court may transfer the instant proceeding – another factor militating in favor of transfer.

*        *        *

For all of these reasons, this Court – as an alternative to the other relief sought herein – should transfer any remaining claims to the United States District Court for the Northern District of Illinois.

## <u>CONCLUSION</u>

For all of the above-discussed reasons, it is respectfully requested that this Court grant in full the instant motion and issue an Order providing for the following relief:

1.     dismissing with prejudice the entirety of the Amended Complaint against Raue and Hooper for want of personal jurisdiction, pursuant to Fed. R. Civ. Pro 12(b)(2);

2.     dismissing with prejudice for failure to state a claim the First and Fourth Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria against Attwater and, in the alternative to No. 1 above, against Raue and Hooper, pursuant to Fed. R. Civ. Pro. 12(b)(6);

3.     dismissing with prejudice the Second and Third Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria against Attwater and, in the alternative to No. 1 above, against Raue and Hooper for want of subject-matter jurisdiction, pursuant to Fed. R. Civ. Pro. 12(b)(1);

4.     dismissing with prejudice for failure to state a claim the Second and Third Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria against Raue and Hooper, in the alternative to Nos. 1 and 3 above, pursuant to Fed. R. Civ. Pro. 12(b)(6);

5.     dismissing the Second and Third Causes of Action of the Amended Complaint brought by Knierim against Attwater, Raue and Hooper, in the alternative to Nos. 1, 3 and 4, on the basis of improper venue pursuant to Fed. R. Civ. Pro. 12(b)(3);

6.     dismissing with prejudice the Third Cause of Action of the Amended Complaint brought both by Knierim and Zacarria against Attwater, Raue and Hooper, in the alternative to Nos. 1, 3 and 4, for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6);

7.     transferring any remaining claims of the Amended Complaint brought by Zaccaria against Attwater and, in the alternative to Nos. 1, 3 and 4, against Raue and Hooper to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1404(a); and/or

8.     providing such other and further relief as this Court may deem just and proper.

Dated:  January 25, 2007

McDANIEL CHUSID, LLP
Park 80 West, Plaza 1
Saddle Brook New Jersey 07663
(201) 845-3232


By:  /s Jay R. McDaniel
     Jay R. McDaniel

Kenneth J. Ashman
Daniel T. Novellano
ASHMAN LAW OFFICES, LLC
55 West Monroe Street, Suite 2650
Chicago, Illinois  60603
(312) 596-1700

*Attorneys for Defendants Attwater Blue Corporation, Ben Raue, and Jeff Hooper*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)**

```
---------------------------------------------------------- x
CHRISTOPHER H. KNIERIM and JACK P.    :
ZACCARIA,                             :
                                      :
                Plaintiffs,           :
                                      :    Docket No.:  06-4935 (JCL)
        v.                            :
                                      :    Honorable John C. Lifland
SIEMENS CORPORATION, SIEMENS          :
BUILDING TECHNOLOGIES, INC.,          :
ATTWATER BLUE CORPORATION, BEN        :
RAUE, JEFF HOOPER, GINA ALLADIN and   :
MICHAEL BOLINGER,                     :
                                      :
                Defendants.           :
---------------------------------------------------------- x
```

## DECLARATION OF JEFF HOOPER

STATE OF ILLINOIS     )
                  : ss.:
COUNTY OF COOK     )

**JEFF HOOPER,** being duly sworn, deposes and says under penalty of perjury:

1.      I am the Vice President of Attwater Blue Corporation ("Attwater") and a named defendant in the above-captioned matter. I submit this Declaration based upon my own personal knowledge, and I would testify to the facts stated herein if called upon at trial.

2.      Other than in my capacity as an officer of Attwater, I have no business or personal contacts with New Jersey. I do not currently own and I never have owned property there, and I have not even visited New Jersey for social reasons in many years – perhaps five or more. I know of no other contacts that I may have with the State of New Jersey, other than perhaps flying into Newark Airport for a trip to New York.

3.     I am a resident of the Village of Lincolnshire, Illinois, located within the jurisdictional limits of the United States District Court for the Northern District of Illinois.

4.     Attwater's principal place of business is located in the Village of Schaumburg, Illinois, in Cook County, which falls within the jurisdictional limits of the United States District Court for the Northern District of Illinois.

5.     Upon information and belief, most of the parties to the lawsuit, the likely witnesses and business records are located in Illinois.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 25, 2007

Jeff Hooper

-2-

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)**

----------------------------------------------------------x

CHRISTOPHER H. KNIERIM and JACK P. :
ZACCARIA, :
                              :
           Plaintiffs, :
                              :     Docket No.: 06-4935 (JCL)
        v. :
                              :     Honorable John C. Lifland
SIEMENS CORPORATION, SIEMENS :
BUILDING TECHNOLOGIES, INC., :
ATTWATER BLUE CORPORATION, BEN :
RAUE, JEFF HOOPER, GINA ALLADIN and :
MICHAEL BOLINGER, :
                              :
           Defendants. :

----------------------------------------------------------x

## DECLARATION OF BEN RAUE

STATE OF ILLINOIS     )
                           : ss.:
COUNTY OF COOK     )

        **BEN RAUE,** being duly sworn, deposes and says under penalty of perjury:

        1.      I am the President of Attwater Blue Corporation ("Attwater") and a named

defendant in the above-captioned matter. I submit this Declaration based upon my own personal

knowledge, and I would testify to the facts stated herein if called upon at trial.

        2.      Attached hereto as Exhibit A is a true, complete and accurate copy of an

Independent Contractor Agreement entered into by Plaintiff Christopher H. Knierim ("Knierim") and

Attwater, made effective as of October 1, 2005, but signed by Knierim on or about February 10,

2006.

3.      Other than in my capacity as an officer of Attwater, I have no business or personal contacts with New Jersey. I do not currently own and I never have owned property there, and I have not even visited New Jersey for social reasons in many years – perhaps five or more. I know of no other contacts that I may have with the State of New Jersey, other than perhaps flying into Newark Airport on a trip to New York.

4.      I am a resident of the City of Chicago, Illinois, located within the jurisdictional limits of the United States District Court for the Northern District of Illinois.

5.      Attwater's principal place of business is located in the Village of Schaumburg, Illinois, in Cook County, which falls within the jurisdictional limits of the United States District Court for the Northern District of Illinois.

6.      Upon information and belief, most of the parties to the lawsuit, the likely witnesses and business records are located in Illinois.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 25, 2007

_____
Ben Raue

-2-

# EXHIBIT A

# INDEPENDENT CONTRACTOR AGREEMENT

**THIS INDEPENDENT CONTRACTOR AGREEMENT** ("Agreement") is made and entered into this 1st day of October, 2005, by and between ATTWATER BLUE CORPORATION (hereinafter referred to as the "Company"), with offices at 2020 Algonquin Road, Schaumburg, Illinois 60173, and Chris Knierim (CHK Inc.), with offices located at 924 Valley Road, Wayne, NJ 07470, (hereinafter referred to as "Contractor") effective as of October 1, 2005 (hereinafter referred to as the "Effective Date").

## WITNESSETH:

**WHEREAS**, the Company is the owner and operator of an established business engaged in personnel recruitment and services; and

**WHEREAS**, the Contractor recognizes and acknowledge the proprietary interest of the Company in its practice; and

**WHEREAS**, the Company desires to retain the services of the Contractor to meet the needs of the clients of the Company and to aid the Company in the performance of its obligations; and

**WHEREAS**, the Contractor is willing to render services to the Company in such capacity.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements herein contained and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, it is mutually covenanted and agreed by and between the parties hereto as follows.

Section 1.    **Premises.**    The premises of this Agreement and all exhibits and schedules attached to this Agreement are incorporated herein by this reference.

Section 2.    **Establishment of Relationship.**    Company agrees to engage Contractor as an independent contractor specializing in the sourcing and recruitment of qualified candidates for the Company's clients in the Building Technologies markets ("Services"). Contractor accepts such engagement and agrees that he/she will devote such of his/her working time to the Company's business, including such administrative duties as he/she may be requested to perform for Company. The goal of the Services to be rendered is to provide the required number of qualified candidates for designated job requisitions that will lead to a high percentage of hires for the Company's clients.

Contractor should expect to independently manage specific job requisitions and provide sourcing and name generation for other requisitions.

Company and Contractor mutually recognize that the successful performance of recruiting services require the use of a special skill on the part of the Contractor. Moreover, such Services require the performance whenever and however needed, and frequently involve delivery of the same through methods and manners and at times and places that deviate from ordinary and customary business practices. The Company shall have the right to define the results and objectives to be obtained by the Contractor. Further, the Company has the right to review the progress of Contractor and to determine a proper workload and the expected outcomes.

The Contractor will invoice the Company for expenses related to travel and lodging. All other expenses must be approved by the Company prior to the cost being incurred. Contractor should expect to travel on an as-needed basis. Contractor will be paid on a Net-30 basis. All invoices must be submitted by Contractor to the Company on the last business day of each month.

Section 3.    **Independent Contractor Status.**    Contractor is to be treated for all purposes as an independent contractor and not as an employee of Company. Contractor will pay all taxes and other payments which may be required as a result of being an independent contractor and agrees to indemnify and hold Company, its members, managers, officers, employees, agents, successors and assigns harmless from any claim, demand, loss, interest, penalty, fine, deficiency, liability, expense (including, but not limited to, reasonable attorneys fees, court costs and expense) made against or incurred by such indemnified person or entity due to or arising from Contractor being treated for any purpose as an employee of Company with respect to Contractor's engagement hereunder. Contractor will not be entitled, by reason of Contractor's engagement hereunder, to participate in any of the employee benefits provided by Company to its employees.

Section 4.    **Term of Engagement.**    The term of the Contractor's engagement hereunder shall commence on the Effective Date and shall continue thereafter, subject to termination in accordance with the terms and conditions contained in this Agreement, including, but not limited to, termination without cause, upon not less than twenty (30) days prior written notice by the Company to Contractor or by the Contractor to the Company by a written notice with a termination date no earlier than two weeks from the date of the termination notice. Contractor is required to work forty (40) hours per week

Section 5.    **Compensation.**    For all of the services rendered by Contractor pursuant to this Agreement, the Company shall compensate the Contractor, in arrears, Sixty Five Hundred dollars ($6500.00) per month of service, subject to the terms of this Agreement.

Section 6.    **Indemnification.**    Contractor agrees that in the event of any allegation of improper activity or claim against the Company as a result of the

Contractor's actions, Contractor will save, defend, indemnify and otherwise hold Company harmless of, from and against all liability, claims, damages or costs, including reasonable attorneys' fees resulting therefrom.

Section 7.    **Conflicts.**    Contractor hereby represents and warrants that Contractor is not presently engaged in or under any contract to engage in any other contractual agreement, or otherwise, that would conflict with this Agreement, and will not, during the term of this Agreement, undertake any other contractual agreements or projects.

Section 8.    **Covenants of Engagement.** It is expressly recognized and acknowledged by the Contractor that the Contractor desires a relationship with the Company, and that as a result of such relationship with the Company, the Contractor has and will become familiar and possessed of the manner and method by which the Company renders its services and other valuable and proprietary information. The Contractor has and will further become acquainted with the clients doing business with the Company. The Company has long-term relationships with its clients and has a constant expectation of continuing to provide professional services to its clients. The Company will suffer great loss and damage if the Contractor violates the terms of this Section 8.

(a)    Contractor agrees and acknowledges that Contractor will receive or have access to proprietary and confidential information or procedures of Company or of Company's clients, including, but not limited to the names and addresses of the clients of Company, customer lists, customer leads, or other information related thereto, books, records or computer software disks ("Confidential Information"). Contractor agrees that during the term of this Agreement and for a period of one (1) year following the termination of this agreement, for any reason, that Contractor will not disclose any such Confidential Information to any current or future competitors of the Company or any and all other persons and entities except as required by law.

(b)    Contractor further agrees and acknowledges that the names and addresses of the Company's clients are the personal property of the Company and are not to be removed or utilized by Contractor for any purpose whatsoever without the express written consent of the Company. Further, all work created by Contractor for the Company's clients shall be and remain the exclusive property of the Company's client, unless otherwise agreed upon in writing.

(c)    The Contractor recognizes and acknowledges that it would be difficult, if not impossible, to compute the amount of such loss or damage to the Company, and hereby agree that in the event of a breach of the terms of this Section by the Contractor, the Contractor shall pay to the Company, as liquidated damages and not as a fine or penalty, a sum equal to two times the gross aggregate payments made to the Contractor as a result of business done with such customer during the twelve (12) month period immediately preceding the breach. Notwithstanding the foregoing, the Company shall not be prohibited from pursuing any other remedy available to the Company, including the

right to injunctive relief, without bond. The Contractor acknowledges that the covenants and conditions of this Agreement are reasonable and necessary for the protection of the Company's business.

(d)    If, for any reason, the covenants provided for above shall be deemed too extensive and, therefore, unreasonable, such covenants shall be reinterpreted to re-qualify the limitations provided therein so as to make said covenants enforceable, as long as the modifications to be made will not substantially defeat the original purpose of the parties hereto.

Section 9.    **Assignment.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns; provided, however, that the parties shall not have the right to assign any rights or obligations under this Agreement without the prior written consent of the other.

Section 10.    **Severability.** If any provision, paragraph or subparagraph of this Agreement shall be deemed invalid or unenforceable for any reason, in whole or in part, such determination shall not affect the validity of the remainder of the this Agreement, including any other provision, paragraph or subparagraph. Each provision, paragraph or subparagraph of this Agreement is separable from every other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

Section 11.    **Notices.**     All notices, demands, requests and other communications under this Agreement shall be in writing and shall be deemed properly served if delivered by hand to the party to whose attention is directed, or if sent by certified mail, return receipt requested, postage prepaid, to the addresses as shown on page one of this Agreement. Notices shall be deemed to have been given three (3) days after the date of mailing.

Section 13.    **Complete Understanding.** This Agreement constitutes the complete understanding between the parties, all prior representations or agreements having been merged into this Agreement.

Section 14.    **Attorneys' Fees.**     If any party to this Agreement breaches any of the terms of this Agreement, then that party shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorneys' fees, incurred by that party in enforcing the terms of this Agreement.

Section 15.    **Modification.**     No alteration or modification to any of the provisions of this Agreement shall be valid unless made in writing and signed by both parties.

Section 16.    **Headings.**    The headings have been inserted for convenience of reference only and are not to be considered when construing any provision of this Agreement.

Section 17.    **Governing Law.**    This Agreement shall be subject to and governed by the laws of the State of Illinois and any and all actions must be brought in the state or federal court sitting in Cook County, Illinois.

**Contractor:**

Contractor Signature:        Date: $\frac{2}{10}\frac{10}{6}$

Contractor Address:      9   JULIEY RD     Tax ID#

WAYNE NJ 07470

The check for contracting services is to be written to:

_____

**Company:**

**ATTWATER BLUE CORPORATION,**

an Illinois Corporation

By: _____

Its: _President_

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW JERSEY
### (VICINAGE OF NEWARK)

Kenneth J. Ashman
Daniel T. Novellano
ASHMAN LAW OFFICES, LLC
55 West Monroe Street, Suite 2650
Chicago, Illinois  60603
(312) 596-1700

Jay R. McDaniel
MCDANIEL CHUSID, LLP
Park 80 West, Plaza 1
Saddle Brook New Jersey 07663
(201) 845-3232

*Attorneys for Defendants Attwater Blue*
*Corporation, Ben Raue, and Jeff Hooper*

-------------------------------------------------------- x

| | |
|---|---|
| CHRISTOPHER H. KNIERIM and JACK P. ZACCARIA, : | |
| : | |
| Plaintiffs,                                  : | Docket No.:  06-4935 (JCL) |
| : | |
| v.                                           : | Honorable John C. Lifland |
| : | |
| SIEMENS CORPORATION, SIEMENS                 : | |
| BUILDING TECHNOLOGIES, INC.,                 : | **ORDER** |
| ATTWATER BLUE CORPORATION, BEN               : | |
| RAUE, JEFF HOOPER, GINA ALLADIN and          : | |
| MICHAEL BOLINGER,                            : | |
| : | |
| Defendants.                                  : | |

-------------------------------------------------------- x

**THIS MATTER** having been opened by ASHMAN LAW OFFICES, LLC (Kenneth J.

Ashman, Esq., appearing) and MCDANIEL CHUSID, LLP (Jay R. McDaniel, Esq., appearing), attorneys

for Defendants Attwater Blue Corporation ("Attwater"), Ben Raue ("Raue"), and Jeff Hooper

("Hooper") (collectively, "Defendants"), on the following motions:

(i)     Raue's and Hooper's motion to dismiss the Amended Complaint of Plaintiffs Christopher R. Knierim ("Knierim") and Jack P. Zaccaria ("Zaccaria") (collectively, "Plaintiffs") for want of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2);

(ii)    Attwater's motion and, in the alternative to (i) above, Raue's and Hooper's motion to dismiss the First and Fourth Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

(iii)   Attwater's motion and, in the alternative to (i) above, Raue's and Hooper's motion to dismiss the Second and Third Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria for want of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1);

(iv)    Raue's and Hooper's motion, in the alternative to (i) and (iii) above, to dismiss the Second and Third Causes of Action of the Amended Complaint brought both by Knierim and Zaccaria for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

(v)     Attwater's, Raue's and Hooper's motion, in the alternative to (i), (iii) and (iv) above, to dismiss the Second and Third Causes of Action of the Amended Complaint brought by Knierim on the basis of improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3);

(vi)    Attwater's, Raue's and Hooper's motion, in the alternative to (i), (iii) and (iv), to dismiss the Third Cause of Action of the Amended Complaint brought

both by Knierim and Zaccaria for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

(vii)   Attwater's, Raue's and Hooper's motion, in the alternative to (i), (iii) and (iv) above, to transfer any remaining claims of the Amended Complaint brought by Zaccaria to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1404(a);

and the Plaintiffs having appeared by and through their attorneys, HALLOCK & CAMMAROTA, LLP (Kenneth Rosellini, Esq., appearing), and the Court having considered the submissions of the parties and having heard arguments of counsel in open Court, and for good cause shown;

IT IS on this _____ day of _____, 2007

## A.     RAUE'S AND HOOPER'S MOTIONS

ORDERED that Raue's and Hooper's motion to dismiss the Amended Complaint for want of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is hereby GRANTED, and the Amended Complaint be and hereby is dismissed with prejudice as to Raue and Hooper.

IN THE ALTERNATIVE, it is

ORDERED that Raue's and Hooper's motion to dismiss the First and Fourth Causes of Action of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby GRANTED, and the First and Fourth Causes of Action of Amended Complaint be and hereby are dismissed with prejudice as to Raue and Hooper.

IN THE ALTERNATIVE, it is

ORDERED that Raue's and Hooper's motion to dismiss the Second and Third Causes of Action of the Amended Complaint for want of subject-matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1) is hereby GRANTED, and the Second and Third Causes of Action of Amended Complaint be and hereby are dismissed with prejudice as to Raue and Hooper.

IN THE ALTERNATIVE, it is

**ORDERED** that Raue's and Hooper's motion to dismiss the Second and Third Causes of Action of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby GRANTED, and the Second and Third Causes of Action of the Amended Complaint be and hereby are dismissed with prejudice as to Raue and Hooper.

IN THE ALTERNATIVE, it is

**ORDERED** that Raue's and Hooper's motion to dismiss the Second and Third Causes of Action of the Amended Complaint brought by Knierim on the basis of improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) is GRANTED, and the Second and Third Causes of Action of the Amended Complaint brought by Knierim be and hereby are dismissed with prejudice as to Raue and Hooper.

IN THE ALTERNATIVE, it is

**ORDERED** that Raue's and Hooper's motion to dismiss the Third Cause of Action of the Amended Complaint brought both by Knierim and Zaccaria for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED, and the Third Cause of Action of the Amended Complaint brought both by Knierim and Zaccaria be and hereby is dismissed with prejudice as to Raue and Hooper.

**AND** it is

**ORDERED** that Raue's and Hooper's motion to transfer any remaining claims of the Amended Complaint brought by Zaccaria to the United States District Court for the Northern District

of Illinois, pursuant to 28 U.S.C. §1404(a), is hereby GRANTED, and any remaining claims be and

hereby are transferred to the United States District Court for the Northern District of Illinois.

## B.    ATTWATER'S MOTIONS

  **ORDERED** that Attwater's motion to dismiss the First and Fourth Causes of Action

of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6) is hereby GRANTED, and the First and Fourth Causes of Action of the Amended

Complaint be and hereby are dismissed with prejudice as to Attwater.

  **AND** it is

  **ORDERED** that Attwater's motion to dismiss the Second and Third Causes of

Action of the Amended Complaint for want of subject-matter jurisdiction pursuant to Federal Rule

of Civil Procedure 12(b)(1) is hereby GRANTED, and the Second and Third Causes of Action of

the Amended Complaint be and hereby are dismissed with prejudice as to Attwater.

  IN THE ALTERNATIVE, it is

  **ORDERED** that Attwater's motion to dismiss the Second and Third Causes of

Action of the Amended Complaint brought by Knierim on the basis of improper venue pursuant to

Federal Rule of Civil Procedure 12(b)(3) is hereby GRANTED, and the Second and Third Causes

of Action  of the Amended Complaint brought by Knierim be and hereby are dismissed with

prejudice as to Attwater.

  IN THE ALTERNATIVE, it is

  **ORDERED** that Attwater's motion to dismiss the Third Cause of Action of the

Amended Complaint brought both by Knierim and Zaccaria for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6) is GRANTED, and the Third Cause of Action of the

Amended Complaint brought both by Knierim and Zaccaria be and hereby is dismissed with prejudice as to Attwater.

**AND** it is

**ORDERED** that Attwater's motion to transfer any remaining claims of the Amended Complaint brought by Zaccaria to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1404(a), is hereby GRANTED, and any remaining claims of the Amended Complaint brought by Zaccaria be and hereby are transferred to the United States District Court for the Northern District of Illinois.

_____
Honorable John C. Lifland
United States District Judge