UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)

KNIERIM, *et. al*

     Plaintiffs,

vs.

SIEMENS CORP., *et. al*

     Defendants.

Docket No. 06-4935 (JCL)

Honorable John C. Lifland

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
AND/OR TRANSFER VENUE**

Of Counsel and on the Brief:

Kenneth Rosellini, Esq.
Hallock & Cammarota, LLP
600 Valley Road, Suite 101
Wayne, New Jersey 07470
(973) 692-0001
*Attorneys for Plaintiffs, Christopher H. Knierim and
Jack P. Zaccaria*

March 2, 2007

## TABLE OF AUTHORITIES

I.    THE DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY ......................... 1
      HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
      COMPLAINT

II.   THE DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
      HAS PERSONAL JURISDICTION OVER PLAINTIFFS' COMPLAINT ...................3

III.  THE DISTRICT COURT OF NEW JERSEY IS THE PROPER VENUE ....................12
      FOR PLAINTIFFS' COMPLAINT

IV.   ATTWATER DEFENDANTS' DEFAMATORY STATEMENTS WERE NOT .............21
      PRIVILEGED COMMUNICATIONS OF OPINION AND THOSE
      STATEMENTS HAVE BEEN ALLEGED WITH SPECIFICITY

V.    PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE ARE SEPARATE ...........25
      AND DISTINCT FROM THE SLANDER CLAIMS AND STATE A CLAIM
      UPON WHICH RELIEF MAY BE GRANTED

VI.   PLAINTIFFS' CONTRACT CLAIMS AGAINST DEFENDANTS HOOPER ...............25
      AND RAUE SHOULD NOT BE DISMISSED UNLESS PROOF IS PROVIDED
      THAT ATTWATER IS IN FACT AN ACTIVE CORPORATION IN GOOD
      STANDING, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY

VII.  PLAINTIFFS STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF ...26
      GOOD FAITH AND FAIR DEALING

VIII. CONCLUSION ....................................................................................28

## TABLE OF AUTHORITIES

### Case Law

**Case**                                                                    **Page(s)**

*Avdel Corporation v. Mecure*, 58 N.J. 264, 268 (1971) ...................................................... 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..................................................... 4, 5

*Cameron v. Group Voyagers, Inc.*, 308 F.Supp.2d 1232, 1238 (D.Colo 2004) ...................................... 15

*Coastal Steel Corp. v. Tilghman Wheelarbrator Ltd.*, 709 F.2d 190, 203 (C.A.3 NJ 1983) ................... 16

*Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F.Supp. 2d 583, (N.D.Ohio 2004) .......................... 15

*Delloma v. Consolidated Coal Co.*, 996 F.2d 168 (7th Cir. 1993) ...................................................... 22

*Educational Testing Service v. Katzman*, 631 F.Supp. 550, 558 (D.N.J. 1986).................................... 8

*F.D.I.C. v. Bathgate*, 27 F.3d 850, 874 (3rd Cir. 1994). ............................................................. 24

*Golden ex. Rel Goldren v. Golden*, 382 F.3d 348 (C.A.3 Pa. 2004) ............................................. 2.

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) ............................................... 1

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ............................... 4

*Hopkins v. Clemson Agr. College of South Carolina*, 221 U.S. 636, 656-7 (1911)............................ 8

In *Calder v. Jones,* at ----, 104 S. Ct., at 1487 ...........................................................................7

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................................. 4

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (C.A.3 1995) ........................................................ 18

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ........................................................... 7

*Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 303 (2000). .................................................. 23

*LaRose v. Sponco Mfg. Inc.*, 712 F. Supp. 455, 548 (D.N.J. 1989) .................................................. 12

*LG Electronics, Inc v. First International Computer, Inc.*, 138 F.Supp.2d 574, 586 (D.N.J. 2001) ........... 18

*LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F.Supp.2d 574, 586 (D.N.J. 2001) ................... 18

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 113 Fn 23 (1984) .................... .......... 8

*Pennoyer vs. Neff*, 95 US 714 (1877) ................................................................................... 3

*Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303 (2002). ......................................................... 8

*Seventy-Three Land, Inc. v. Maxlar Partners*, 270 N.J.Super. 332 (A.D.1994). .................................. 26

*Snyder v. Harris*, 394 U.S. 332, 335 (1969). ......................................................................... 3

*Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 419 (1997). .................................................... 27

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)........................................  2

*Strawbridge v. Curtis*, 7 U.S. 267 (1806) ..............................................................................  1

*Subcarrier Communications, Inc. v. Day*, 299 N.J.Super. 634, 648 (A.D. 1997) ................................ 23

*Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (C.A.3 N.J. 1997) ...............................................  3

*Sunbelt Corp. v. Noble Denton & Assoc. Inc.*, 5 F.3d 28 (C.A.3 PA 1993) ........................................  6

*Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) ......................... 15, 16

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (C.A.3 NJ 2003) ......................................... 11

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). .......................................................... 26

*Zurbrugg Memorial Hosp. v. Conrad Brahin, P.A.*, 1988 WL 98536, 3 (D.N.J. 1988) ......................... 23

## Federal Statutes and Rules

Title 28, Section 1332 of the United States Code .....................................................................1

Article III, section II of the U.S. Const. ...............................................................................1

*Fed. R. Civil Pro. 4(e)* ......................................................................................................6

28 U.S.C. 1391 .............................................................................................................12, 13

28 U.S.C. 1404(a) ...................................................................................................12, 13, 17, 18

28 U.S.C. 1406 ............................................................................................................. 13

## I. THE DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' COMPLAINT

Title 28, Section 1332 of the United States Code, authorized under Article III, section II of the United States Constitution, gives the federal district courts original jurisdiction over all civil actions where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between, *inter alia*, citizens of different states. In order for a case to be maintained under such jurisdiction, no party on the plaintiff's side of the case can have the same residence as any party on the defendant's side of the case, and such diversity must exist at the time the complaint is filed. *Strawbridge v. Curtis*, 7 U.S. 267 (1806), *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). Since Plaintiffs in this case both resided in New Jersey and no defendant resided in New Jersey at the time of filing, it is clear that there is diversity of citizenship for these purposes.

The court has set forth the test for determining whether a plaintiff's complaint reaches the statutory amount:

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a*

*legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938).

There is no allegation in Defendants' motion that the Plaintiffs' claims were made in other than good faith and, absent law to the contrary, the Plaintiffs' alleged damages should be accepted by the court for purposes of determining diversity jurisdiction.

Each plaintiff must independently reach the statutory minimum to support diversity jurisdiction. *Golden ex. Rel Goldren v. Golden*, 382 F.3d 348 (C.A.3 Pa. 2004). Here, Plaintiff Knierim alleges actual damages in the amount of $796,740.86, $16,740.86, $796,740.86, and $796,740.86 in each of his respective claims for a total of 2,406,963.44 of which $1,593,481.72 is alleged as joint and several liability against all defendants. Plaintiff Zaccaria alleges actual damages in the amount of $971,740.86, $11,450, $971,740.86, and $971,740.86 in each of his respective counts for a total of $2,926,672.58 in damages, of which $1,943,481.72 is alleged as joint and several damages against all defendants. Very clearly, both Plaintiffs have overcome the statutory amount of $75,000.00 even before the $3,000,000 in punitive damages and additional costs and attorneys fees are counted.

2

Claims may, however, be aggregated between defendants and the courts do not separately evaluate each of the causes of action asserted by any one plaintiff against any one defendant. *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (C.A.3 N.J. 1997) citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969).  Where joint and several liability is alleged against the defendants, diversity jurisdiction has attached if that amount of liability is above the statutory threshold.  *Suber*, 104 at 587. Plaintiffs', therefore, have subject matter jurisdiction as to each defendant in this case since the joint and several liability alleged is over $1,500,000 in either Plaintiff's case. Somewhat confusingly, Defendants seem to allege that diversity jurisdiction must exist as to each claim, but it is uncertain by what authority they make such a claim.

## II.   THE DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY HAS PERSONAL JURISDICTION OVER PLAINTIFFS' COMPLAINT

Ever since *Pennoyer vs. Neff*, 95 US 714 (1877), the court has required that the court have personal jurisdiction over a defendant prior to enforcing a judgment against him.  Personal jurisdiction over a person may either be 1) general jurisdiction resulting from continuous and systematic contacts with the state

3

or 2) specific jurisdiction resulting from the court exercising its personal jurisdiction over a defendant arising out of or related to the defendant's contacts with the forum State. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Plaintiffs do not contend that general jurisdiction would apply to Defendant Raue or Defendant Hooper in this case.

Specific jurisdiction is generally governed through the progeny of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), which required that the court have "certain minimum contacts with [the forum state such]] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 at 316. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), the court set out the cases interpreting *Int'l Shoe Co.* and provided a number of factors to consider when deciding whether specific jurisdiction exits, but it still eschewed "talismanic jurisdictional formulas" in favor of weighing the facts of each case in order to determine whether personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp.*, 471 at 485-486.

The facts of *Burger King Corp.* are not remarkably different than the facts in this case. In *Burger King Corp.*, an out of state defendant engaged in an ongoing, long term contractual

4

relationship with a Florida corporation.  According to the record in *Burger King Corp.* the defendant never even so much as visited Florida.  Despite that, the court found that personal jurisdiction over the out of state defendant was appropriate because, *inter alia.*, the dispute arose out of a contract that had a substantial connection with the state and that "[Defendant] most certainly knew that he was affiliating himself with an enterprise based primarily in Florida." *Burger King Corp.*, 471 at 479-480.

The factors considered in *Burger King Corp.* by virtue of the factual scenario are no different than those in this case. The court must evaluate the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing when determining whether the defendant purposefully established minimum contacts within the forum.  *Burger King Corp.*, 471 at 479.

Given the fact that Defendants in this case are only affiliated with the Plaintiffs in this case by virtue of an interstate, ongoing, involved, and mutually beneficial relationship, it seems odd to suggest that the matter either did not arise out of the Defendants' purposeful involvement with plaintiffs who defendant knew resided in New Jersey or that such

a protracted business relationship has no relationship to the
State of New Jersey.

Defendants present their argument for lack of personal
jurisdiction in terms of *Fed. R. Civil Pro. 4(e)* because the
Third Circuit has interpreted the rule to govern the extent of
personal jurisdiction for the federal district courts even
though the rule on its face only governs service of a summons.
*Sunbelt Corp. v. Noble Denton & Assoc. Inc.*, 5 F.3d 28 (C.A.3 PA
1993). Rule 4(e) provides that service of a summons on a person
within any judicial district of the United States may be made
pursuant to the law of the state in which the district court is
located or the law of the state in which service is effected
according to the same rules as an action brought in the courts
of general jurisdiction in that state.   Defendants elected to
use New Jersey law for analysis under Rule 4(e), and we agree
with such election.

New Jersey law provides that its jurisdictional reach
permits "out-of-state service to the uttermost limits permitted
by the United States Constitution." *Avdel Corporation v. Mecure*,
58 N.J. 264, 268 (1971)  As discussed above, the United States
Constitution would permit this court to assert personal

jurisdiction over Defendants in a manner consistent with the due process clause of the 14th Amendment.

In many ways, the crux of Defendants' argument does not relate to whether the relationship between the parties is sufficient to assert personal jurisdiction over some party, but that Defendant Raue and Defendant Hooper are not proper parties for such assertion.  Defendants argue that Raue and Hooper acted merely as agents for Defendant Attwater and are therefore not able to be hailed before this Court based upon Defendant Attwater's contacts with the State of New Jersey.  Plaintiff does not argue that Attwater's relationship with the State of New Jersey dictates the jurisdictional reach of the court over Raue and Hooper, but rather that the agency of Raue and Hooper do not serve to immunize them from their own actions.

To the extent that Defendants' reference to *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), advances an argument that Raue and Hooper's agency for Attwater somehow immunizes them from jurisdiction, the footnote that Defendants quoted more fully states "In *Calder v. Jones,* at ----, 104 S. Ct., at 1487, we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. . . Each defendant's contacts with

7

the forum state must be assessed individually." *Keeton* at 781

fn 13.  The New Jersey District Court further stated "minimum

contacts analysis does not discount a defendant's contacts with

the forum simply because that defendant was acting at the time

as agent for another. *Educational Testing Service v. Katzman*,

631 F.Supp. 550, 558 (D.N.J. 1986).

> As a minor side note, the Supreme Court has stated,

>> "[A]n agent's liability for torts
>> committed by him cannot be avoided by
>> pleading the direction or authorization of
>> his principal. The agent is himself liable
>> whether or not he has been authorized or
>> even directed to commit the tort."
>> *Pennhurst State School & Hosp. v. Halderman*,
>> 465 U.S. 89, 113 Fn 23 (1984) citing *Hopkins*
>> *v. Clemson Agr. College of South Carolina*,
>> 221 U.S. 636, 656-7 (1911).

If Defendants argue that Raue and Hooper were corporate

officers rather than agents, the New Jersey Supreme Court has

stated "[o]ur caselaw has recognized the participating theory of

personal liability for the tortuous conduct of corporate

officers . . . An officer of a corporation who takes part in the

commission of a tort by the corporation is personally liable for

resulting injuries. . ." *Saltiel v. GSI Consultants, Inc.*, 170

N.J. 297, 303 (2002).

In response to Defendants' declarations, Plaintiffs' in

this case have provided an affidavit and a certification.

8

Though the facts within Plaintiffs' personal knowledge are very clearly set out in those documents, the following should be highlighted.  Both Defendants Raue and Hooper personally engaged in recruiting employees to work at jobs located within the State of New Jersey.  Despite their declarations to the contrary, both Raue and Hooper have long standing, systematic contacts with multiple parties in the State of New Jersey. It is precisely because of the potential candidates' relationship to New Jersey that Raue and Hooper contact these recruits in the State of New Jersey.  It is disingenuous to suggest that the location of the employees and the employers have no relationship to New Jersey. It is likely the case that upon full jurisdictional discovery, Plaintiffs may well establish not only specific personal jurisdiction over Defendants, but something that will come dangerously close to general personal jurisdiction over Defendants.  Just because Defendants allege that they have not set foot in New Jersey outside of passing through Newark Airport does not mean that they have not personally availed themselves of the benefits of conducting business in New Jersey.

    It is also the case that Defendants have regularly directed Plaintiffs to conduct business in New Jersey, to solicit information in New Jersey, and to take advantage of their New Jersey location.  The fact that Plaintiffs in this case were

acting as agents of Defendants within the State of New Jersey does not serve to diminish the fact that Defendants were acting in the state.

Not only have Defendants personally interacted with New Jersey in numerous and diverse ways and have had agents act for them in similarly broad ways within the state, but Defendants have also made use of the instrumentalities of interstate commerce located within the state such as the telephone systems, the mails, and the internet.

As discussed above in reference to *Burger King Corp*, the independent contractor relationship between Attwater and Plaintiffs required ongoing relationships and nearly daily interactions between Attwater and Plaintiffs.  The employees/agents of Attwater that carried on such daily activities were Raue and Hooper.  Just as a company cannot claim that a relationship arising out of a contract that is their exclusive contact with the forum state is not subject to personal jurisdiction, the employees/agents of that company cannot hide behind the company to say that for them.  Raue and Hooper are responsible for their own personal conduct as it relates to doing business in New Jersey and maintaining their relationship with Plaintiffs.  Corporate immunities protect

10

stock holders from many of the torts of the corporation, but it does not protect individual tortfeasors from liability for their own torts.

Raue and Hooper have not only previously availed themselves of the bounties of New Jersey's work force, but they continue to do so.  They are presently attempting to further expand their business dealings in the State of New Jersey and may even still be planning on creating a New Jersey office.  The situation here is not one of a mail order catalog finding its way into a state where someone happens to order a product and have it delivered, it is one of on going, systematic contacts with people located within the State of New Jersey for indefinite periods of time.

Should this Court find the mentioned facts to be insufficient on their face to establish personal jurisdiction over the Defendants, the proper course of action is not to dismiss Plaintiffs' claims, but rather to allow for jurisdictional discovery to make a final determination of whether facts sufficient to establish personal jurisdiction exist.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (C.A.3 NJ 2003).  Defendants did not argue that Plaintiffs' claims are clearly frivolous nor argue that jurisdictional discovery would fail to reveal facts sufficient to support a

finding of personal jurisdiction, but argued only that personal

jurisdiction was presently improperly pled or substantiated. The

Court should, therefore, should accept Plaintiffs' allegation

that jurisdictional discovery would be fruitful because of

Plaintiffs' pleadings, attached affidavits, and the favorable

inferences required to be drawn therefrom.  *Id.* and *LaRose v.*

*Sponco Mfg. Inc.*, 712 F. Supp. 455, 548 (D.N.J. 1989)(the court

must consider the facts as pleaded and provided for in

plaintiff's affidavits and the burden to show personal

jurisdiction has been met.)

### III. THE DISTRICT COURT OF NEW JERSEY IS THE PROPER VENUE FOR PLAINTIFFS' COMPLAINT

As Defendants pointed out, venue in a cased based solely

upon diversity jurisdiction is governed under 28 U.S.C. 1391(a)

and a party may make a motion to change venue under 28 U.S.C.

1404(a).  Defendants argue that venue is improper for Plaintiff

Knierim and for the transfer of all claims to the Northern

District of Illinois.  Defendants fail, however, to argue that

venue in the State of New Jersey is improper as to Plaintiff

Zarccaria's claims, and given the length of Defendants'

memorandum in support of the instant motion, one can only

imagine that such failure was both intentional and an admission

that venue is proper in Zarcarria's case.  In addition, the fact
that Defendants made the motion under 28 U.S.C. 1404(a) instead
of 28 U.S.C. 1406 gives further weight to the Defendants
admission that venue is appropriate in New Jersey.

As Defendants pointed out, 28 U.S.C. 1391 governs this case.
Specifically, 28 U.S.C. 1391 states:

"**(a)** A civil action wherein jurisdiction is founded only on
diversity of citizenship may, except as otherwise provided by
law, be brought only in

(1) a judicial district where any defendant resides, if all
defendants reside in the same State,

(2) a judicial district in which a substantial part of the
events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the action
is situated, or

(3) a judicial district in which any defendant is subject
to personal jurisdiction at the time the action is commenced, if
there is no district in which the action may otherwise be
brought."

Paragraph (1) is clearly inapplicable since all Defendants
do not reside in the same jurisdiction.  Paragraph (2) applies

in this case since Plaintiffs live in New Jersey and their
reputation has been harmed, their ability to engage in contracts
within the state has been hindered, and they have otherwise
suffered severe damage within the state.  The independent
contracts which were entered into by and between Attwater and
the Plaintiffs were made with the understanding that Plaintiffs
would be located in and operate out of New Jersey, and that
Plaintiffs would use their contacts in New Jersey to benefit
Attwater and provide recruitment services for Siemens Building
Technologies, Inc. projects which would be located in New Jersey,
and throughout the United States.  The tortious interference by
Attwater was with the Plaintiffs prospective economic advantage
with The Right Thing in Ohio, but was aimed at the Plaintiffs,
who had been conducting business as independent contractors in
New Jersey.

Plaintiffs do not argue that there is no other place where
venue is appropriate, but we do argue that it would be
inappropriate to change venues for a variety of reasons: 1) the
forum selection clause in Knierim's contract does not require
venue in Illinois for an action that sounds mainly in tort and
not in contract, 2) the private factors are no better served in
Illinois than in New Jersey, and 3) the public factors are no
better served in Illinois than in New Jersey.

To begin with, despite Defendants' argument that the forum selection clause in Knierim's contract is either fatal to having venue in New Jersey at all or simply indicates that venue is more appropriately venued in Illinois, the major claim that Knierim is advancing is one that sounds in tort, not in contract. "If there is ambiguity in a forum selection clause, it should be construed against the drafter." *See Cameron v. Group Voyagers, Inc.*, 308 F.Supp.2d 1232, 1238 (D.Colo 2004). Attwater's forum selection clause is silent as to whether tort claims are meant to be included and thus the provision should be interpreted against Attwater so as to allow those claims to proceed outside Cook County, Illinois. *See* Declaration of Ben Rause, Exhibit A, Page 2, Section 7. Where a claim is based on the tort of tortious interference with prospective economic advantage, as is the case in the within matter, that tort does not fall within the clause unless it is based on a provision of the agreement itself. Cf. *Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F.Supp. 2d 583, (N.D.Ohio 2004)(finding a choice of law clause inapplicable to tortious interference with prospective economic advantgage). "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." See *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) "The Third Circuit has

indicated that where tort claims 'ultimately depend on the existence of a contractual relationship' between the parties, such claims are covered by a contractually-based forum selection clause." *See Terra Intern.*, 119 F.3d at 694 [citing *Coastal Steel Corp. v. Tilghman Wheelarbrator Ltd.*, 709 F.2d 190, 203 (C.A.3 NJ 1983)] .

In the within matter, Attwater has tortiously interfered with the prospective economic advantage of Plaintiffs business relationships with The Right Thing and within the recruiter industry as a whole for the benefit of Attwater by their communications to The Right Thing and their slander, in order to prevent the Plaintiffs from competing in the open market with Attwater.  The fact that Attwater asserted Plaintiffs had a contractual duty not to seek employment with The Right Thing, where no such duty exists, should not require that Knierim pursue claims which arose due to Defendants tortious conduct outside the scope of their agreement in accordance with a forum selection clause set forth in that agreement.  Clearly there was no meeting of the minds between the Attwater and Knierim that the forum selection clause would apply to an action filed by Knierim pursuing claims which result, in their entirety, from the Defendants actions to tortiously interfere with Kneirim's ability to earn a living in the same industry as Attwater.

Attwater Defendants terminated Knierim and failed to honor the terms of the agreement in good faith after they had already begun to tortiously interfere with Knierim's prospective economic advantage.  Attwater Defendants actions did not, therefore, depend on the contractual relationship with Knierim, but rather the Attwater Defendants merely used knowledge of that relationship by The Right Thing against Knierim.   The Attwater Defendants should not now gain the benefit of the forum selection clause for claims which did not arise out of the agreement.

In the instant case, Plaintiffs are alleging four separate causes of action: 1) breach, 2) tortious interference, 3) defamation, and 4) breach of implied covenant of good faith. Since each of the claims aside from the breach of contract claim does not arise out of the contract, the law does not compel this Court to enforce the forum selection clause relating to the breach of contract claim to all of the remaining claims.

Given that the forum selection clause does not apply to either Plaintiff, the remaining factors under 28 U.S.C. 1404(a) may be considered.  The court should always be mindful, however, that "[a] plaintiff's choice of forum is generally accorded

great weight in the section 1404(a) analysis and should not be lightly disturbed." *LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F.Supp.2d 574, 586 (D.N.J. 2001)(Citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (C.A.3 1995))

To begin with, Defendants bear the burden of persuasion to demonstrate the propriety of the venue in the transferee district, that the alternative forum is more appropriate than the present, and that jurisdiction exists over all of the defendants. *Id.* at 586. Defendants' motion makes no mention of the status of personal or subject matter jurisdiction over each of the other non-moving defendants in Illinois and the court should deny their motion to transfer venue on that basis alone.

The factors that Defendants, as the moving parties, must show in order to obtain a change of venue are broken into the categories of 1) convenience to the parties, 2) convenience of the witnesses, and 3) the interests of justice. *Jumara* at 879. Though *Jumara* provides a seeming checklist of factors to consider in a change of venue motion, the list is a mere starting point and the "courts are to consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *LG Electronics, Inc*

18

*v. First International Computer, Inc.*, 138 F.Supp.2d 574, 586
(D.N.J. 2001)(internal citations omitted)(citing *Jumara*.)

The Defendants enumerated each of the factors listed in
*Jumara* in their motion and proceeded to gloss over each one.
For the party that bears the burden of persuasion, the sparsity
of details and the total lack of affidavits or other evidence to
support their claims is surprising.  Aside from saying that
Plaintiffs want venue in New Jersey and that Defendants want it
in Illinois, every other factor mentioned either works against
Defendant or is neutral.  The ironic thing about how Defendants
described the preferences of the parties relating to venue, the
Defendants failed to mention that the non-moving parties have
already answered and failed to object to venue.  It would seem,
then, that out of all the parties, the only ones who object are
the moving Defendants.

Despite having the burden of persuasion, Defendants
approach the factors with statements such as the witnesses are
"likely available for trial in Illinois but not New Jersey."
Nowhere do the Defendants indicate that they have contacted any
potential witnesses to inquire about where they are willing to
testify if so called or on what basis they make such a statement.
If Defendants are not in the financial condition to defend a
suit in New Jersey, let them certify to such.  Obliquely

19

referring to financial conditions "tipping" in Defendants' favor does not even come close to meeting a burden of persuasion especially since it was Defendants that were employing/independently contracting with the same Plaintiffs that they fired and prevented from gaining new employment!

When it comes to the public interests listed in *Jumara*, Defendants have faired no better at producing argument or evidence sufficient to meet the burden of persuasion. Defendants passingly remark that it would be more "convenient" to enforce an Illinois judgment in the State of Illinois, but make no mention whatsoever of the actually criteria of the enforceability of the judgment. Given the strength of the full faith and credit clause of the United States Constitution, so long as this Court properly finds personal and subject matter jurisdiction over Defendants, Illinois would happily naturalize and enforce any judgment that this court should issue.

Defendants remaining statements continue in the same vein of unsubstantiated generalizations aside from providing average times to trial in each of the forums at issue.  Given that the instant motion has not argued which laws would apply in this case, nor is it necessarily appropriate to do so at this time, it seems that the claim that this is a local Illinois issue is without foundation.  Given that each of the groups of parties in this case reside in different jurisdictions, this is much more

of an interstate case than a local one.  In addition, Plaintiff

reserves the right to argue that the contract claims, the

tortious interference claims, and the breach of covenant of good

faith claims would be governed under New Jersey law and that the

remaining claims of slander would be governed by the laws of

Ohio or New Jersey.  New Jersey certainly has as much an

interest in protecting the citizens of its state from

exploitation and slander by out-of-state residents as Illinois

does of protecting Defendants rights to fire Plaintiffs for

doing their jobs.

It would be unfair of this Court to require Plaintiffs to

invent arguments and potential forms of proof that Defendants

could use to satisfy their burden of persuasion to convince this

court that change of venue would be appropriate, and based on

the moving papers, the court should simply deny Defendants'

motion no matter what arguments Defendants come up with in

response to this opposition.

### IV.  ATTWATER DEFENDANTS' DEFAMATORY STATEMENTS WERE NOT PRIVILEGED COMMUNICATIONS OF OPINION AND THOSE STATEMENTS HAVE BEEN ALLEGED WITH SPECIFICITY

Attwater maintains that its communications to The Right

Thing are privileged because The Right Thing had "a common

interest with Attwater as part of its "master vendor/associate
vendor" relationship to know whether Zaccaria and/or Knierim
remained associated with Attwater"  and those communications
were initiated by The Right Thing in a potential employer
inquiry.  While Attwater has cited *Delloma v. Consolidated Coal
Co.*, 996 F.2d 168 (7th Cir. 1993) for the proposition that "an
employer may invoke conditional privilege to respond to direct
inquiries by prospective employers", they failed to note that
privilege does not include the making of "unjustified statements,
by excessive publication of statements, or by making statements
in conflict with the interest which gave rise to the privilege."
*See Delloma*, 996 F.2d at 172.  Hooper did not merely give his
honest opinion of Zaccaria but instead "advised Turhark not to
pursue him" . . .  See Am. Compl. ¶80.  Hooper and Raue then,
together, informed Knierim that "he has a legal obligation under
their contract to inform them when there is any contact with a
competitive company to Attwater's employees or independent
contractors—including any contact from the The Right Thing."
See Am. Compl ¶84.  This is a somewhat different
characterization of the common interest/ "master
vendor/associate vendor" relationship for which Attwater asserts
privilege.  See Attwater's Brief, Page 18.

Paragraphs 80 and 84 of the Amended Complaint, taken
together, show that Attwater was indicating to The Right Thing
that the Plaintiffs were breaching their contract with Attwater
by their communications concerning possible future employment.
There is not, however, and the Defendants have not asserted that
there is, any non-compete agreement by and between the
Plaintiffs and Attwater.  In fact, "[a]n employee who is not
bound by a covenant not to compete after the termination of
employment, and in the absence of any breach of trust, may
anticipate the future termination of his employment and, while
still employed, make arrangements for some new employment by a
competitor or the establishment of his own business in
competition with his employer."  *See Lamorte Burns & Co., Inc. v.
Walters*, 167 N.J. 285, 303 (2000).

Furthermore, Attwater defined their relationship with the
defendants as one of Company and Independent Contractor, not
Empoyer/Employee for which any duty of loyalty not to seek new
employment may be weaker.  *See Subcarrier Communications, Inc. v.
Day*, 299 N.J.Super. 634, 648 (A.D. 1997); *Zurbrugg Memorial Hosp.
v. Conrad Brahin, P.A.*, 1988 WL 98536, 3 (D.N.J.
1988)("defendants are independent contractors rather than
employees of Zurbrugg.   Therefore, no duty of loyalty and good
faith exists from which a covenant not to compete can be
implied"); Declaration of Ben Rause, Exhibit A, Page 2, Section

23

3.  It is Attwater's mischaracterization of the relationship between Attwater and the Plaintitffs to the The Right Thing that constitutes the tortious intereference and lends "legitimacy" to the fact that Hooper's statements to The Right Thing were false and made with malice. This in turn supports the specificity of Plaintiffs' allegations of slander.

Hooper's actual actions towards the Right Thing with regard to Plaintiffs' reputation, coupled with prior statements that Hooper made concerning their reputation (see Am. Compl. ¶¶s31,36, 80, 99 and 100) is circumstantial evidence that slander was committed in support of his own boasts "that his bashing of Plaintiffs' reputations" has left Knierim and Zaccaria "a couple of 'train wrecks'"  See Am. Compl ¶100.  While Plaintiffs may not assert allegations of slander which are simply conclusory, they "may be permitted to bolster a defamation cause of action through discovery."  *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 874 (3rd Cir. 1994).

### V. PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE ARE SEPARATE AND DISTINCT FROM THE SLANDER CLAIMS AND STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As set forth above, the Tortious Interference claim is based both on defamatory statements and the false assertions made to The Right Thing that Plaintiffs' were breaching their duties to Attwater by communicating with The Right Thing regarding the prospect of future employement.  In both cases, however, those communications were not privileged.  The cases cited by Attwater supporting the proposition that once claims of defamation are dismissed then the related tortious interference claims must be dismissed, therefore, are inapposite.

### VI. PLAINTIFFS' CONTRACT CLAIMS AGAINST DEFENDANTS HOOPER AND RAUE SHOULD NOT BE DISMISSED UNLESS PROOF IS PROVIDED THAT ATTWATER IS IN FACT AN ACTIVE CORPORATION IN GOOD STANDING, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY

Plaintiffs have asserted upon information and belief that Attwater is a corporation, but Plaintiffs have no actual knowledge that Attwater Blue Corporation is in actuality an active corporation in good standing and not simply a partnership doing business as Attwater Blue Corporation.  Hooper and/or Raue, through Attwater, are clearly entering into contracts with New Jersey residents and doing business in New Jersey, yet Attwater is not registered to do business in New Jersey and they have no

25

registered agent in New Jersey.  If Attwater Blue Corporation is

in fact, a partnership, then Defendants, Raue and Hooper would

be jointly and severally personally liable as partners.  Cf.

*Seventy-Three Land, Inc. v. Maxlar Partners*, 270 N.J.Super. 332

(A.D.1994).  Once it is established that Attwater is indeed a

corporation in good standing, Plaintiffs will dismiss the

contract claims against Hooper and Rae without prejudice,

reserving the right to reassert any and all claims against them

that discovery may reveal.

### VII. PLAINTIFFS STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"A covenant of good faith and fair dealing is implied in every

contract in New Jersey."  *Wilson v. Amerada Hess Corp.*, 168 N.J.

236, 244 (2001).  A "party's performance under a contract may

breach that implied covenant even though that performance does

not violate a pertinent term."  *Wilson*, 168 N.J. at 244.  The

alleged contract between Knierim and Attwater which appears as

an Exhibit to the Defendant Ben Raue's Declaration explicitly

sets forth the terms of employment and states that Attwater has

the right of "termination without cause, upon not less than

twenty (30) (Sic) days prior written notice by the Company to

the Contractor . . ."  *See* Declaration of Ben Rause, Exhibit A,

Page 2, Section 4.   "In every contract there is an implied

covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . ." *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 419 (1997). In fact, "a party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate." *Sons of Thunder*, 148 N.J. at 422.

Clearly, in Knierim's case, there was no twenty or thirty day written notice sent to Knierim prior to his termination, an express term in the contract that Attwater alleges to govern his employment relationship. By this same section, Knierim has the right to terminate the employment relationship upon two weeks written notice. *See id.* Finally, Defendants argue that even if the agreements provided for termination "for cause", such cause existed. The very position asserted by the Defendants in their brief, "that termination was imminent if "Knierim" continued to sneak around interviewing elsewhere" (Defendants' Brief at page 23), in fact demonstrates the bad faith which Attwater exhibited in its application of their contracts with Plaintiffs, since as independent contractors without a non-compete clause, such interviewing was not prohibited. The Attwater Defendants' termination of the Plaintiffs without notice, clearly deprived them of the fruits of their contracts with Attwater. As

27

Attwater and the Plaintiffs dispute the facts on this issue, it is not one which is ripe for a motion to dismiss for failure to state a claim.  For the aforementioned reasons, Defendants' motion to dismiss the Bad Faith Claims should be denied.


**VIII.    CONCLUSION**


For the aforementioned reasons, the Attwater Defendants' motions should be denied in their entirety.


DATED: March 2, 2007                    /s Kenneth Rosellini

                                        KENNETH ROSELLINI, ESQ.
                                        Hallock & Cammarota, LLP
                                        600 Valley Road, Suite 101
                                        Wayne, New Jersey 07470
                                        (973) 692-0001
                                        *Attorneys for the Plaintiffs, Christopher H. Knierim and Jack P. Zaccaria*