UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)

Kenneth Rosellini, Esq.
Hallock & Cammarota, LLP
600 Valley Road, Suite 101
Wayne, New Jersey 07470
(973) 692-0001
*Attorneys for Plaintiffs, Christopher H. Knierim and*
*Jack P. Zaccaria*

| | |
|---|---|
| KNIERIM, *et. al* | Docket No. 06-4935 (JCL) |
| Plaintiffs, | |
| vs. | **CERTIFICATION OF JACK P. ZACCARIA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL AND CHANGE OF VENUE** |
| SIEMENS CORP., *et. al* | |
| Defendants. | |

I, Jack P. Zaccaria, do hereby certify as follows:

1.  I am one of the Plaintiffs in the above captioned case;

2.  At all relevant times, I lived and worked within the State of New Jersey;

3.  Aside from the time from January 2006 until May 2006, I worked as an independent contractor for Defendant Attwater Blue Corporation (hereinafter "Attwater") from December 2004 until my termination in September of 2006;

4.  As a result of my work for Attwater, I dealt regularly with Defendants Ben Raue (hereinafter "Raue") and Jeff Hooper (hereinafter "Hooper");

5. Hooper represented himself to me as one of the founding shareholders of Attwater;

6. Hooper represented himself to me as the vice-president of Attwater;

7. Raue represented himself to me as one of the founding shareholders of Attwater;

8. Raue represented himself to me as the president of Attwater;

9. Though my formal relationship with Attwater began in December of 2004, I already had a relationship with Raue and Hooper;

10. My relationship with Raue and Hooper began when I was working directly for Defendant Siemen's Building Technologies (hereinafter "SBT") as an independent contractor for recruiting purposes;

11. When Raue and Hooper attempted to obtain the recruitment contract for SBT, Raue informed me that without recruiting me personally, they stood a very poor chance of obtaining SBT's business;

12. Raue also informed me that they needed to recruit other people to work for them that had prior experience with SBT as recruiters with particular emphasis on the New Jersey operations;

13.  In order to help Raue/Attwater obtain the SBT contract, I gave him the names of two other New Jersey residents/recruiters, Plaintiff Christopher Knierim and Mary Petnel;

14.  For the 5 months after Attwater obtained the SBT contract, I often discussed Attwater organizational issues with Raue including day to day operations and the duties of other employees;

15.  Raue contacted me multiple times per week to assist him in managing Attwater;

16.  Raue and Hooper contacted me multiple times per week via telephone, e-mail, and instant messaging, often times corresponding with me daily;

17.  At all such times aside from an occasional vacation, I was located in New Jersey;

18.  In order to service the SBT account, both Raue and Hooper, in my presence, discussed various topics with Diane Lancaster, a senior management person at SBT located in Florham Park, New Jersey;

19.  My job duties included recruiting properly qualified applicants to apply for jobs with companies that hired Attwater to assist them with their staffing needs;

20.  In order to perform my job, I often interacted with people via phone, e-mail, fax, or the mails;

21.  Virtually all of the tasks that I performed for Attwater
     were assigned to me by either Hooper or Raue;

22.  Many of the tasks that I performed for Attwater involved a
     collaborative effort between the staff of Attwater and me;

23.  As a matter of course, Raue and Hooper would organize a
     conference call with all employees/independent contractors
     doing recruiting work for Atwater;

24.  During those conference calls, Raue and Hooper would
     instruct the recruiters in how to conduct their recruiting
     efforts regarding their particular legal markets, including
     instructions to Mary Petnel, who was also located in New
     Jersey and often her recruiting efforts in New Jersey;

25.  Often times, I would work directly with either Hooper or
     Raue on a particular project;

26.  When assigning jobs to me, Raue would often direct me on
     where I should focus my recruitment efforts;

27.  When working on jobs that were located in New Jersey, Raue
     would often direct me to limit my recruiting efforts to
     individuals that either lived or worked in New Jersey;

28.  It would have been impossible for me to perform my job as
     directed without directly involving myself with individuals
     that lived or worked in New Jersey;

29.  Raue informed me that the reason for directing my efforts
     to people that had ties with New Jersey was because the

people had experience with and were familiar with the local marketplace and would, therefore, be more attractive candidates to Attwater's clients;

30. Raue also informed me that because Attwater's clients were generally unwilling to pay for relocation expenses, our efforts should focus exclusively on those people who would not have to be relocated to New Jersey;

31. On one such project, I recruited John Christi, who both lived and worked in New Jersey;

32. Hooper gave me similar direction to that of Raue including direction as to which companies' employees to contact and to focus only on people that either lived or worked in New Jersey;

33. Hooper also indicated to me that SBT had specifically told him to limit his efforts to New Jersey employees for staffing jobs that SBT provided to Attwater;

34. SBT often had staffing needs for their Pine Brook, New Jersey office;

35. SBT often had staffing needs for their Florham Park, New Jersey office;

36. SBT often had staffing needs for their Mt. Laurel, New Jersey office;

37. I was often assigned to assist SBT with such staffing;

38. Hooper informed me that another New Jersey staffing agency had filled a position for SBT's Pine Brook office and that he wanted me to increase my efforts in New Jersey to be as competitive as I could with the other New Jersey businesses;

39. In my presence, both Raue and Hooper discussed their intent on opening a New Jersey office;

40. Raue and Hooper explained that the office would need to be in New Jersey because that is where I resided and Plaintiff Christopher Knierim resided;

41. Raue and Hooper also explained that another Attwater independent/contractor named Petnel lived in New Jersey and that Petnel could also work at the New Jersey office;

42. In my presence, Raue and Hooper have also directly solicited business with other New Jersey companies such as Siemens Government Services, Siemens Maintenance Services, and Siemens Hearing Instruments;

43. No one besides Raue and Hooper was to speak to Vinny Gagliardotto, who was the regional director for Siemens Government Services and Siemens Maintenance Services;

44. Because I was located in New Jersey, Raue and Hooper ultimately requested that I take Gagliardotto to a local sports game so that I could ingratiate myself and get more business for Attwater;

45.   Raue would speak to me via phone several times weekly for
      the entire length of my service;

46.   Hooper would speak to me via phone several times weekly for
      the entire length of my service; and

47.   Raue, Hooper, and Attwater all used the mail to send me
      checks.


      I certify that the forgoing statements made by me are true.
I am aware that if any of the foregoing statements made by me
are willfully false, I am subject to punishment.

Jack P. Zaccaria