**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)**

---------------------------------------------------------- x

CHRISTOPHER H. KNIERIM and JACK P.   :
ZACCARIA,   :
  :
      Plaintiffs,   :
  :    Docket No.:  06-4935 (JCL)
      v.   :
  :    Honorable John C. Lifland
SIEMENS CORPORATION, SIEMENS   :
BUILDING TECHNOLOGIES, INC.,   :
ATTWATER BLUE CORPORATION, BEN   :    **ORAL ARGUMENT REQUESTED**
RAUE, JEFF HOOPER, GINA ALLADIN and :
MICHAEL BOLINGER,   :
  :
      Defendants.   :

---------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW OF DEFENDANTS
ATTWATER BLUE CORPORATION, BEN RAUE, AND JEFF HOOPER IN
FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND/OR TRANSFER**

Of Counsel and
on the Brief:

Kenneth J. Ashman        ASHMAN LAW OFFICES, LLC
Daniel T. Novellano        55 West Monroe Street, Suite 2650
                        Chicago, Illinois  60603
                        (312) 596-1700

Jay R. McDaniel           MCDANIEL CHUSID, LLP
                        Park 80 West, Plaza 1
                        Saddle Brook New Jersey 07663
                        (201) 845-3232

                        *Attorneys for Defendants Attwater Blue
                        Corporation, Ben Raue, and Jeff Hooper*

Dated:  March 20, 2007

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    THE AMENDED COMPLAINT MUST BE DISMISSED AS AGAINST
      RAUE AND HOOPER FOR WANT OF PERSONAL JURISDICTION. . . . . . . . . . . . 2

      A.    The First Prong:  Intentional Tort. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    The Second Prong:  Brunt of Harm Felt in Forum
            and Forum Focal Point of the Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    The Third Prong:  Express Aim of Tortious Conduct at New Jersey
            and New Jersey Focal Point of the Tortious Activity. . . . . . . . . . . . . . . . 8

II.   THE DEFAMATION-BASED COUNTS FAIL TO STATE A CLAIM. . . . . . . . . . . . 10

III.  PLAINTIFF'S CONTRACT-BASED CLAIMS FAIL TO SATISFY
      THE MINIMUM AMOUNT NECESSARY TO INVOKE THIS
      COURT'S SUBJECT-MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   PLAINTIFFS' CONTRACT-BASED CLAIMS SHOULD BE
      DISMISSED AS AGAINST RAUE AND HOOPER, SINCE
      THEY ARE NON-PARTIES TO THE CONTRACT. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.    PLAINTIFFS' FAILS TO STATE A CLAIM FOR BREACH OF THE
      IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. . . . . . . . . . . . . . . 16

VI.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR IMPROPER
      VENUE OR, IN THE  ALTERNATIVE, TRANSFERRED TO THE
      NORTHERN DISTRICT OF ILLINOIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# **TABLE OF AUTHORITIES**

## **Federal Cases**

**Case**                                                                                      **Page(s)**

*Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992)...................... 16

*Calder v. Jones*, 465 U.S. 783 (1984). ......................................... 3, 6, 9

*Druckers', Inc. v. Pioneer Elec. (USA), Inc.*, 1993 WL 431162 (D.N.J. Oct. 20, 1993)..... 18, 19

*Fanning v. Fox Meadow Farm, Inc.*, 164 F. Supp.2d 921 (E.D. Mich. 2001). ............. 15

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir. 1998). .................. 3, 4, 6-9

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3rd Cir. 1997). ................ 17

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). ................................... 7

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988). ............... 19

*Michod v. Walerk Magnetics Group, Inc.*, 115 F.R.D. 345 (N.D. Ill. 1987). ................ 15

*Pennoyer v. Neff*, 95 U.S.714 (1877)................................................... 2

*Payne v. McDonald's Corp.*, 957 F. Supp. 749 (D. Md. 1997)............................ 16

*State Farm Mut. Automobile Ins. Co. v. Powell*, 87 F.3d 93 (3rd Cir. 1996). ............... 14

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938). ................... 14

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3rd Cir. 1984). ........... 3

## **Federal Statutes and Rules**

Fed. R. Civ. Pro. 11................................................... 1, 5, 15

Fed. R. Civ. Pro. 12(b)(3). ................................................. 18

Fed. R. Civ. Pro. 12(b)(6). ................................................. 17

## **Miscellaneous Sources**

http://www.ilsos.gov/corporatellc/CorporateLlcController............................ 1, 15

Defendants Attwater Blue Corporation ("Attwater"), Ben Raue ("Raue") and Jeff Hooper ("Hooper") (collectively, "Defendants"), through their undersigned counsel, respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss and/or Transfer claims asserted in the Amended Complaint of Plaintiffs Christopher H. Knierim ("Knierim") and Jack P. Zaccaria ("Zaccaria") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

The law does not paint with a broad brush to sweep away individual liberties; rather, it strokes precisely when such rights are at stake. Plaintiffs' opposition brief seeks to do the former by lumping together all Defendants without discussion of the role of each and by meshing together each cause of action without segregation of their differences. The result is a brief that cannot withstand analytical rigor and, instead, constitutes nothing more than a surface response to arguments that Plaintiffs apparently find difficult to counter.

Perhaps more importantly than what Plaintiffs do say, however, is what they omit. For example, Plaintiffs do not contest – and therefore concede – that the five purportedly defamatory statements that Defendants identify in their moving papers are Plaintiffs' *best*. At no time do Plaintiffs suggest that their Amended Complaint contains anything more specific than these allegations, and they bury their response to arguments that these statements are non-actionable on page 24 of their 28-page brief. Plaintiffs top off their response with the acknowledgment that they failed to conduct a reasonable investigation – in violation of Rule 11 of the Federal Rules of Civil Procedure, no less – as to whether Attwater is properly incorporated and/or in good standing, even though a mere click of a mouse would reveal the answer on the website of the Illinois Secretary of State. *See* http://www.ilsos.gov/corporatellc/CorporateLlcController.

Properly viewed, Plaintiffs' opposition to Defendants' motion amounts to little more than wishful thinking that their Amended Complaint satisfies the standards for prosecuting this action at all, much less in this forum. As such, for the reasons set forth below and in Defendants' moving papers, this Court should grant in full Defendants' motion to dismiss and/or to transfer.

## ARGUMENT

For reasons one may only surmise, Plaintiffs chose not to address Defendants' arguments in the order presented, relegating those arguments on which they apparently feel weakest to the back of their brief. For the sake of consistency, however, and due to the logic of the order in the original presentation, Defendants maintain the original construction with the exception of the two venue arguments, which Defendants collapse for the sake of conciseness into the Reply's final point.

## I. THE AMENDED COMPLAINT MUST BE DISMISSED AS AGAINST RAUE AND HOOPER FOR WANT OF PERSONAL JURISDICTION

The lack of analytical precision in Plaintiffs' response to the personal jurisdiction challenge of Raue and Hooper makes it difficult to reply without a wholesale explanation of governing law – something not easily accomplished given the page limitations of a reply submission and the numerous other issues to be addressed herein. Suffice it to say that Plaintiffs employ four tactics to stretch their personal jurisdictional argument: (i) they fail to segregate the acts of Raue and Hooper from each other and from those of Attwater; (ii) they fail to analyze each claim separately; (iii) they fail to appreciate the difference between general personal jurisdiction and specific personal jurisdiction, although they give lip service to the legal distinction; and (iv) they fail to cite controlling, on-point legal precedent from the Third Circuit. Upon proper analysis, the answer is as clear as a pure glass of water: the Court lacks personal jurisdiction over Raue and Hooper.

Although Plaintiffs harken back to 1877 to cite to the Supreme Court's decision in *Pennoyer v. Neff*, 95 U.S.714 (1877), they omit citation to the seminal Third Circuit decision

governing the scope of personal jurisdiction where a nonresident actor commits an intentional tort

outside of the forum, with the "unique effects" thereof felt by the plaintiff inside the forum.  In *IMO*

*Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir. 1998), the court outlined a three part test –

based on its interpretation of the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)

– to measure whether personal jurisdiction exists in such a context.  The *IMO* test binds this Court

and is a must read in any event, and it is no wonder why Plaintiffs hid it from this tribunal, for its

application to this case results in dismissal of Raue and Hooper on personal jurisdictional grounds.

The test enunciated by the *IMO* court requires a "plaintiff [to] allege facts sufficient

to meet a three-prong test":

> First, the defendant must have committed an intentional tort.  Second,
> the plaintiff must have felt the brunt of the harm caused by that tort
> in the forum, such that the forum can be said to be the focal point of
> the harm suffered by the plaintiff as a result of the tort. Third, the
> defendant must have *expressly aimed* his tortious conduct at the
> *forum*, such that the *forum can be said to be the focal point of the
> tortious activity*.

*IMO*, 155 F.3 at 256 (emphasis added).  Application of this test to the facts presented in this case

reveals Plaintiffs have not and cannot meet their burden of establishing personal jurisdiction over

the individual defendants.  *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63

(3rd Cir. 1984) ("[T]he plaintiff bears the burden of demonstrating contacts with the forum state

sufficient to give the court *in personam* jurisdiction.").

## A.     The First Prong:  Intentional Tort

The first prong of the *IMO* test requires that Plaintiffs allege facts sufficient to

establish that Defendants committed an intentional tort.  Thus, it is critical that the Court undertake

a claim-by-claim analysis in adjudicating an *in personam* jurisdictional challenge.  In the absence

of the existence of an intentional tort, a plaintiff must establish more traditional bases for personal

jurisdiction over a defendant – by demonstrating "continuous and systematic" contacts with the forum state such that "general personal jurisdiction" exists or by demonstrating that "the plaintiff's cause of action is related to or arises out of the defendant's contact with the forum" such that "specific personal jurisdiction" exists. *IMO*, 155 F.3d at 259, 259 n.2.

Plaintiffs here state plainly that they "do not contend that general jurisdiction would apply to Defendant Raue or Defendant Hooper in this case." Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss and/or Transfer Venue ("Pls.' Br.") at 4. Yet, in their responsive brief and affidavit/certification, Plaintiffs recount purported contacts Raue and Hooper had with New Jersey, but no where do they tie these purported contacts – even assuming they are true – with any specific cause of action pled, the very essence of specific jurisdiction. In other words, although Plaintiffs pay lip service to the notion of the difference between general and specific jurisdiction, and state further that they do not seek assertion of general jurisdiction over Raue and Hooper, they assert and argue facts that could only go to the general jurisdiction issue. It is as if recounting general contacts with the forum that admittedly do not rise to the level of general jurisdiction should somehow influence this Court that specific jurisdiction exists – even in the absence of a relationship between these purported contacts and the claims Plaintiffs assert.

Looking at the specific claims pled, Plaintiffs assert four: (i) slander; (ii) breach of contract; (iii) breach of the implied covenant of good faith and fair dealing; and (iv) tortious interference with prospective economic advantage. Of these, claims (ii) and (iii) clearly arise out of a contractual relationship. Yet, according to the Amended Complaint and the affidavit/certification of Plaintiffs, they each contracted with Attwater and not with Raue and Hooper individually. *See*

Am. Compl. ¶¶ 27, 28, 42, 46; *see also* Kneirim Aff. ¶¶ 3, 11; Zaccaria Cert. ¶¶ 3, 4.[1]  Absent allegations of a legitimate grounds to pierce the corporate veil – notably missing from any allegation in the Amended Complaint or in any other of Plaintiffs' submissions – there exists no liability of Raue and Hooper on these claims.  This issue is discussed more fully in Point IV, *infra*, but suffice it to say that Plaintiffs' assertion that they do not know whether Attwater is properly incorporated evidences nothing more than their unwillingness to go to the website of the Illinois Secretary of State to find out – an obligation imposed upon them by Rule 11.  Even Plaintiffs acknowledge, however, that if Attwater is "in good standing, Plaintiffs will dismiss the contract claims against Hooper and Raue." Pls.' Br. at 26.  Since, in fact, Attwater *is* in good standing, even Plaintiffs acknowledge that no contractual claims exist against Hooper and Raue and, concomitantly, no personal jurisdiction over them for those claims.

That leaves claims (i) and (iv) above, for slander and tortious interference with prospective economic advantage, respectively.  While these claims can constitute intentional torts, Plaintiffs have not so pled here.  In the slander count of their Amended Complaint, Plaintiffs plead the state-of-mind element as follows:  "Said statements were either made and published intentionally or *with negligence* by the Defendants."  Am. Compl. ¶ 104 (emphasis added).  Likewise, this allegation is specifically incorporated by reference into Plaintiffs' claim for tortious interference. *See* Am. Compl. ¶ 122.  Thus, Plaintiffs assert their tort claims on the alternative basis of negligence.  As such, they must establish – under traditional specific jurisdiction jurisprudence – that the

---

[1]    The term "Am. Compl." shall have the meaning ascribed to it in Defendants' moving papers, as with all other terms defined therein.  The term "Knierim Aff." shall refer to the *Affidavit of Christopher H. Knierim in Support of Plaintiffs' Opposition to Defendants' Motion for Dismissal and Change of Venue*, and the term, "Zaccaria Cert." shall refer to *Certification of Jack P. Zaccaria in Support of Plaintiffs' Opposition to Defendants' Motion for Dismissal and Change of Venue*.

statements attributed to Defendants Raue and Hooper are specifically related to the contacts that they had with New Jersey.   This they cannot accomplish.

With respect to Raue, Plaintiffs do not allege that he said or did anything.   He is apparently thrown in there for fun.   He is not alleged to have made any statements to The Right Thing, Inc. ("TRT"), none to Turhark or Gruber (TRT's principals), none to Alladin or Bolinger (co-defendants and employees of SBT), none to any unnamed independent contractors or others, and none even to Zacarria or Knierim themselves – and, as noted above, he is not even contractually liable.   As suggested in Defendants' moving papers, Plaintiff never should have filed suit against him personally and, by now, should have voluntarily dismissed him for his wrongful inclusion in the first place.   Suffice it to say, however, that Plaintiffs cannot meet their burden of establishing any tort or other claim that is related to or arises out of Raue's contact with New Jersey.

With respect to Hooper, the same result follows.   Even assuming he made some defamatory statements – and that is a stretch here – Plaintiffs have not and cannot show that the statements were connected to New Jersey.   In other words, for all of the purported contacts that Plaintiffs allege Hooper had with New Jersey, and these are subject to challenge in any event, none relate to his purportedly defamatory statements or any other tortious behavior for that matter.   Thus, it is not enough for specific jurisdictional purposes to suggest that a defendant's mere contact with a forum constitutes a sufficient basis to hale him into a foreign court; rather, the plaintiff must tie that contact to the cause of action.   *See IMO*, 155 F.3d at 265 ("[T]he jurisdictional inquiry focuses on the relations among the defendant, the forum, and the litigation.") (quoting *Calder*; internal quotation marks omitted).   Here, not one of Hooper's purported contacts with New Jersey is connected, in any way, with his purported defamatory statements or any other purported tortious conduct – and, indeed, Plaintiffs have not argued as such.

Moreover, Plaintiffs are disingenuous with respect to attribution of Hooper's and Raue's contacts with New Jersey. While they mimic the rule that "[e]ach defendant's contact with the forum state must be assessed individually," Pls.' Br. at 7-8 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)), they fail to follow the rule by attributing to Hooper and Raue the acts of Attwater. Thus, when Plaintiffs say that Hooper and Raue "are presently attempting to further expand their business dealings in the State of New Jersey and may even still be planning on creating a New Jersey office," Pls. Br. at 11, they are, in fact, referring to the "business dealings" and office of Attwater – even assuming that Plaintiffs' assertions are correct in the first place. Likewise, when Plaintiffs assert that this Court must evaluate "the terms of the contract and the parties' actual course of dealing" in conducting a jurisdictional analysis, Pls. Br. at 5, they must be referring to Attwater's contract with Plaintiffs, for it is indisputable that neither Raue nor Hooper contracted with them. Plaintiffs cannot rely on the acts of Attwater, which does not contest personal jurisdiction, to obtain personal jurisdiction over Raue and Hooper; instead, their own contacts with the forum must be assessed in light of how such contacts are connected to the cause of action.

For these reasons, this Court lacks personal jurisdiction over Raue on all counts. As to Hooper, the Court also lacks personal jurisdiction over him on the contractual claims and, to the extent that the tort claims are premised on negligent conduct, on those claims as well. Even if the tort claims were considered "intentional," however, Plaintiffs would still not be able to satisfy the two additional prongs of the *IMO* test, as discussed below.

## B.    The Second Prong:  Brunt of Harm Felt in Forum and Forum Focal Point of the Harm

Plaintiffs will also have difficulty meeting the second prong of the *IMO* test, *i.e.*, that Plaintiffs felt the brunt of the harm in New Jersey and that New Jersey was the focal point of the harm. In analyzing this prong, it should be remembered that both Plaintiffs earned their income from

an Illinois corporation, through which they had independent contractor agreements, and were seeking employment from an Ohio corporation (TRT). Also, according to Knierim's affidavit, a whopping 91% of all of the work he performed for Attwater was performed *outside* of the State of New Jersey. Knierim Aff. ¶ 13. Zaccaria avoids this type of detail in his Certification; however, he fares no better than Knierim, with fully 89.23% of the work he performed for Attwater occurring *outside* the State of New Jersey. *See* Supplemental Declaration of Jeff Hooper ("Suppl. Hooper Dec.") ¶ 3.

With Plaintiffs' then-current independent contractor relationships existing with an out-of-state entity, with them seeking new independent contractor relationships with another out-of-state entity, with approximately 90% of each of Plaintiffs' work for Attwater occurring out-of-state, and with Plaintiffs failing to allege in their brief or affidavit/certification any facts that the brunt of harm they purportedly suffered would be felt more in New Jersey than anywhere else, Plaintiffs have failed to meet the second prong of the *IMO* test. As such, personal jurisdiction over Raue and Hooper cannot stand.

## C.    The Third Prong:  Express Aim of Tortious Conduct at New Jersey and New Jersey Focal Point of the Tortious Activity

Even assuming that Plaintiffs have properly pled an intentional tort and, assuming further, that they satisfactorily established that the brunt of the harm would be felt in New Jersey and that New Jersey was the focal point of the harm, they would still fail to meet the most germane of the three-prong *IMO* test. The trust of the *IMO* decision is on this last prong, holding that specific personal jurisdiction "requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum" but, instead, requires that such jurisdiction "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly*

*aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious

activity." *IMO*, 155 F.3d at 265 (emphasis in original).[2]

In its exhaustive analysis, the Third Circuit distinguished those cases where a

defendant "expressly aimed" its tortious activity at the forum from those where the effects in the

forum were a "mere fortuity." *Id.* at 262. In other words, a court cannot "automatically infer that

a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew

that the plaintiff resided in the forum." *Id.* Here, Plaintiffs have offered nary an allegation that

Hooper "expressly aimed" his purportedly defamatory statements or other purported tortious conduct

at New Jersey. The most Plaintiffs can allege is that Hooper deliberately tried to harm Zaccaria and

Knierim, but this intent – assuming for the sake of discussion only that it is true – is personal to

Plaintiffs themselves and unrelated to any particular forum. Stated differently, Plaintiffs have not

said and cannot say with any legitimacy that Hooper would not have committed the purported tort

if Plaintiffs lived, say, in Colorado, Alabama, Connecticut or any other state other than New Jersey.

Quite to the contrary, it is Plaintiffs' position that Hooper directed his wrongful actions to hurt

Plaintiffs no matter where they lived, and the fact that they just happen to reside in New Jersey, like

the numerous cases cited by the *IMO* court, is a "mere fortuity." This, *IMO* explains, is simply not

---

[2]    As noted, the *IMO* court interpreted the Supreme Court's decision in *Calder*. In that case, the Court held a reporter and editor for the National Inquirer subject to personal jurisdiction in California, even though they were nonresidents, where they participated in defaming entertainer Shirley Jones there. Unlike here, where none of the purportedly defamatory statements were published in the forum state of New Jersey (Plaintiffs allege that the statements were published either in Illinois or Ohio), the *Calder* court recounts that the publication of the defamatory statements took place in the California forum (indeed, California was, by far, the National Inquirer's largest circulation state). The *Calder* decision has become known as having created the "effects test" to determine specific personal jurisdiction, where "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." *IMO*, 155 F.3d at 261. The *IMO* court, in turn, interprets this "effects test" to require the three-pronged approached discussed above.

enough to hale a defendant into a foreign jurisdiction – absent a showing that the defendant "expressly aimed" his tortious conduct at that foreign jurisdiction (assuming, of course, that the other *IMO* factors are satisfied).[3]

## II.    THE DEFAMATION-BASED COUNTS FAIL TO STATE A CLAIM

As noted above, Plaintiffs do not contest that the five purportedly defamatory statements Defendants identified as being the best that the Amended Complaint had to offer are, in fact, the only ones asserted.  In their moving papers, Defendants extensively established why – through citation to numerous authority and application of common sense – these statements were simply too vague, non-specific and conclusory to be actionable.  As noted above, Plaintiffs bury their response to this point on page 24 of their 28-page brief, and offer only the nonsensical argument that Attwater's purported "mischaracterization of the relationship between Attwater and the Plaintiffs to The Right Thing . . . supports the specificity of Plaintiffs' allegations of slander."  Pls. Br. at 24.

Momentarily setting aside the question of whether any such mischaracterization is pled, it is simply difficult to understand Plaintiffs' logic here.  If the Amended Complaint alleges that Hooper made "several negative comments" about Knierim without saying what or to whom, or if Hooper "was going to speak to Tanya" but did not, or if some unnamed person at Attwater commented to some unnamed employees, unnamed independent contractors and unnamed person or persons at SBT about Zaccaria's "poor performance," without stating what was actually said, no

---

[3]    Plaintiffs' suggestion that this Court should hold an evidentiary hearing on the personal jurisdiction question is unfounded.  For purposes of this motion, Defendants have not contested the factual averments of Plaintiffs – they are simply insufficient, even if believed. Defendants have only supplemented their factual submission with evidence of the rarity that Zaccaria performed work for Attwater in New Jersey, which does not contest any allegation set forth by Plaintiffs.  Stated differently, even under Plaintiffs' best facts as they set forth in their Amended Complaint, in Knierim's affidavit and in Zaccaria's certification, and as argued in their brief, they fail to establish the existence of personal jurisdiction over Raue and Hooper.

amount of "support" can make these allegations any more "specific." They are vague and conclusory on their face, and Defendants' papers cited ample authority demonstrating that these very types of allegations are simply insufficient to state a defamation claim.

As to whether a mischaracterization occurred in the first place, while Plaintiffs argue as such in their brief, the Amended Complaint to which they cite is notably devoid of any such allegation. In fact, Plaintiffs cite to paragraphs 80 and 84 of their Amended Complaint for the proposition that Defendants mischaracterized to TRT the relationship between Attwater and Plaintiffs. Those paragraphs read in pertinent part as follows:

> 80.    On or about September 12, 2006, Terhark [of TRT] calls Hooper. It is later disclosed to Knierim by Terhark . . . that Hooper bashed Zaccaria's reputation and advised Terhark to not pursue him further.
>
> 84.    Hooper told Knierim that he has a legal obligation under their contract to inform them when there is any contact by a competitive company to Attwater's employees or independent contractors – including any contact from The Right Thing.

Am. Compl. ¶¶ 80, 84. From these two paragraphs, Plaintiffs argue that "Attwater was indicating to The Right Thing that the Plaintiffs were breaching their contract with Attwater by their communications concerning possible future employment," not-so-subtly suggesting further that Defendants communicated to TRT that Plaintiffs were subject to a non-compete provision. Pls.' Br. at 23.

Plaintiffs' argument fails on numerous levels. First, the allegations in paragraph 84 concern the provisions of Knierim's written contract whereas the allegations of paragraph 80 concern Zaccaria's employment status with TRT. In other words, on the face of Plaintiffs' allegations themselves, there is no connection between what was purportedly told to Knierim and what was said

concerning Zaccaria. This yet another instance where Plaintiffs seek to blur the lines between and among the plaintiffs, the defendants, and the causes of action.

Second, there exists no allegation whatsoever in the Amended Complaint that Defendants said anything about a non-compete provision. This is an entirely straw man argument that Plaintiffs create and then blow down with an apparent claim of victory. In fact, however, Knierim's written agreement – attached as Exhibit A to Raue's Declaration, as part of Defendants' moving papers – provides in Section 8 thereof in pertinent part as follows:

> It is expressly recognized and acknowledged by the Contractor [Knierim] that the Contractor desires a relationship with the Company [Attwater], and that as a result of such relationship with the Company, the Contractor has and will become familiar and possessed of the manner and method by which the Company renders its services and other valuable and propriety information. *The Contractor has and will further become acquainted with the clients doing business with the Company. The Company has long-term relationships with its clients and has a constant expectation of continuing to provide professional services to its clients.* The Company will suffer great loss and damage if the Contractor violates the terms of this Section 8.

> (a) Contractor agrees and acknowledges that Contractor will receive or have access to proprietary and confidential information or procedures of Company or of Company's clients, *including, but not limited to the names and addresses of the clients of Company*, customer lists, customer leads, or other information related thereto . . . ("Confidential Information"). *Contractor agrees that during the term of this Agreement and for a period of one (1) year following termination of this agreement, for any reason, that Contractor will not disclose any such Confidential Information to any current or future competitors of the Company or any and all other persons and entities except as required by law.*

> (b) Contractor further agrees and acknowledges that the *names and addresses of the Company's clients are the personal property of the Company and are not to be removed or utilized by Contractor for any purpose whatsoever without the express written consent of the Company.*

*See* Ex. A Raue Declaration (emphasis added).  As such, Plaintiffs' allegations in paragraph 84 of their Amended Complaint that Knierim had a "legal obligation" to inform Defendants of "any contact from The Right Thing" is nothing if not true, for the above provision prevents Knierim from utilizing this client of Attwater for his own purposes absent "the express written consent of the Company."  That Knierim failed to honor his contractual obligations – especially in the face of an express warning relating thereto – cannot constitute some sort of defamation claim against Defendants.[4]

      Finally, in paragraph 80, Plaintiffs assert that Hooper (i) "bashed Zaccaria's reputation" and (ii) "advised Terhark to not pursue him further."  As conclusively demonstrated in Defendants' moving papers, "bashing" one's reputation is simply too indefinite to constitute actionable slander and, in any event, the statement constitutes a non-actionable statement of opinion that further is covered by a qualified privilege.  Plaintiffs here, however, focus on the second portion of the allegation, that Hooper advised Terhark not to pursue Zaccaria.  What is defamatory about this statement?  Without saying why Hooper gave Terhark this advice, the allegation is meaningless.  Surely, Hooper was free from liability to tell Terhark not to pursue Zaccaria, if only for the reason that Attwater wanted to keep him.

      Critically, it is also paragraphs 80 and 84 that lead Plaintiffs to conclude that their tortious interference claim is based not only on the purportedly defamatory statements but also on something more – the notion that Defendants mischaracterized to TRT the relationship between Attwater and Plaintiffs.  As demonstrated, however, this allegation is without merit.

---

[4]    As noted in Point V below and in Hooper's Supplemental Declaration, Zaccaria is also subject to the terms of a written agreement containing the same provisions.

Paragraphs 80 and 84 do nothing to strengthen Plaintiffs claims and, surely, do nothing to "support the specificity" of otherwise vague and conclusory statements. If anything, paragraph 80 demonstrates that Terhark telephoned Hooper for an employment reference, strengthening the notion that the communication was privileged. These facts, coupled with a wholesale lack of challenge by Plaintiffs to the conclusion that Hooper's statements – even if specific enough to state a claim – constituted his own protected opinion, demonstrate that Plaintiffs' defamation and tortious interference causes of action fail to state claims.

## III. PLAINTIFF'S CONTRACT-BASED CLAIMS FAIL TO SATISFY THE MINIMUM AMOUNT NECESSARY TO INVOKE THIS COURT'S SUBJECT-MATTER JURISDICTION

According to the Supreme Court, a diversity jurisdiction case lacks subject matter jurisdiction when, *inter alia*, "the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount [sought in the complaint], and that his claim was therefore colorable for the purpose of conferring jurisdiction." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Here, one is hard pressed to imagine any circumstance – based on the allegations of the Amended Complaint – where Plaintiffs would be entitled to recover on the defamation, tortious interference, or breach of good faith and fair dealing claims. The only legitimate and viable controversy in this case is the breach of contract claim against Attwater, which, as noted in Defendants' moving papers, falls far short of the jurisdictional minimum. Thus, once the other claims are properly scrutinized for their inherent deficiencies, this Court should dismiss the remaining claim on subject matter jurisdictional grounds. *See State Farm Mut. Automobile Ins. Co. v. Powell*, 87 F.3d 93, 97 (3rd Cir. 1996) ("A distinction must be made between subsequent events that change the amount in controversy and subsequent *revelations* that, in fact, the required amount was or was not in controversy at the commencement of the action.") (citation and internal

quotation marks omitted; emphasis in original); *Fanning v. Fox Meadow Farm, Inc.*, 164 F. Supp.2d 921, 925 (E.D. Mich. 2001) ("[T]his Court can arrive at no other conclusion than that Plaintiffs' claims never could have amounted to the sum necessary to give this Court jurisdiction.").

## IV. PLAINTIFFS' CONTRACT-BASED CLAIMS SHOULD BE DISMISSED AS AGAINST RAUE AND HOOPER, SINCE THEY ARE NON-PARTIES TO THE CONTRACT

Defense counsel is always reluctant to move for sanctions and have not followed the predicate for a Rule 11 violation here. Yet, Plaintiffs contention that they filed contract-based claims against Raue and Hooper – and maintain them now – on the ground that they do not know whether Attwater is a legitimately incorporated entity and in good standing defies explanation. Literally, a simple mouse click to the Illinois Secretary of State's office would answer the question. *See* http://www.ilsos.gov/corporatellc/CorporateLlcController. Moreover, Plaintiffs' argument is inconsistent with their pleadings, where they allege upon information and belief that Attwater is incorporated in Illinois, and in each of their respective affidavits/certifications, where they each attest under oath that they went to work for Attwater Blue Corporation. Further, were not Plaintiffs the recipients of biweekly salary payments and annual 1099s from Attwater, having filed tax returns in reliance thereon?

Because Plaintiffs have not done so, Defendants have attached hereto as Exhibit A to Hooper's Supplemental Declaration, a copy of the printout from the website of the Illinois Secretary of State's office showing Attwater to be in good standing. Plaintiffs' conduct is not unlike that of the plaintiff in *Michod v. Walerk Magnetics Group, Inc.*, where the court recounted:

> The Walker defendants have no place of business in this district, and Electro-Matic's sole basis for alleging the contrary was a telephone number listing that actually belongs to an independent distributor. Had Electro-Matic . . . bothered to dial the telephone number, they would have discovered the . . . impropriety of their assertion of venue. *This casual approach to pleading is inconsistent with Rule 11. . . .*

-15-

> *Rule 11 requires litigants to think before they file.  Legally and factually vacuous pleadings impose costs on other litigants and the court, and those responsible must pay the bill.*

115 F.R.D. 345, 347 (N.D. Ill. 1987) (emphasis added).[5]  Suffice it to say that the breach of contract claim and that for breach of the implied covenant of good faith and fair dealing must be dismissed as to Raue and Hooper.

## V.     PLAINTIFFS' FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs do not contest that under Illinois law the claim for breach of the implied covenant of good faith and fair dealing would fail.  As noted in Defendants' moving papers, under Illinois law, the "covenant of good faith and fair dealing is not an independent source of duties but instead 'guides the construction of explicit terms in an agreement.'"  *Payne v. McDonald's Corp.*, 957 F. Supp. 749, 758 (D. Md. 1997) (quoting *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992)).   Consequently, "[i]n the absence of an explicit term of the agreement, a plaintiff is not entitled to rely on the covenant of good faith and fair dealings to imply such a duty." *Id.*  Here, as noted, the agreements at issue provide expressly for "termination without cause," and Plaintiffs cannot be heard to complain merely because Attwater exercised this negotiated and agreed upon right.

Instead, Plaintiffs cite only to New Jersey law.  Without a concession as to whether New Jersey law would provide a different result, Defendants note the incorrectness of this citation. Knierim's agreement unequivocally provides, under the heading, "Governing Law," that "[t]his

---

[5]     Plaintiffs conduct would be somewhat more forgivable if they had not insisted on keeping Raue as a defendant in the defamation and tortious interference counts, for it is without question that Plaintiffs make no substantive allegations against him and attribute to him no statements whatsoever – actionable or otherwise.

Agreement shall be subject to and governed by the laws of the State of Illinois." *See* Ex. A to Raue Declaration.

Zaccaria is likewise subject to a written agreement containing the identical provision. After Zaccaria's rehire in May/June 2006, he agreed to be bound by the terms of a written contract (in substantially similar form to the one by which he was originally bound absent a 30 day notice of termination provision and with increased compensation), sending a confirmation email on July 31, 2006 stating expressly, "I have decided to sign the agreement on your terms as per our discussion," and providing further in an email on August 8, 2006 that "[a]s per your request, let's leave the arrangement as is for right now.  I will continue to work hard as always." This latter email was in response to Attwater's objection to include a provision in the agreement that afforded Zaccaria with a 30 day notice provision prior to termination, and, as one can see, Zaccaria conceded to the point. Attached as Exhibit B to Hooper's Supplemental Declaration is the quoted email string and the written agreement it references.[6]

With both Kneirim's and Zaccaria's independent contractor agreements providing for Illinois law to govern, and with it left unchallenged – and thereby conceded – by Plaintiffs that Illinois law affords no cause of action for breach of the covenant of good faith and fair dealing on the facts alleged, the claim must be dismissed.

---

[6]  As noted in Defendants' moving papers, it is not only proper for the Court to consider this agreement in considering the venue issues, *see infra* Point VI, but also in adjudicating a Rule 12(b)(6) motion, since the terms of independent contractor agreement were expressly referred to in and are integral to contract-based claims of the Amended Complaint.  *See* Am. Compl. ¶¶ 106-110 (asserting a breach of contract claim by Zaccaria) and ¶¶ 117-121 (asserting a breach of the implied covenant of good faith and fair dealing by Zaccaria).  *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to a pleading.  An exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the  motion to dismiss into one for summary judgment.") (citations and internal marks omitted).

**VI.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS**

As noted in Defendants' moving papers, Knierim's independent contractor agreement contains a broad-based forum selection clause, stating that "any and all actions must be brought in the state or federal court sitting in Cook County, Illinois." *See* Exhibit A to Raue Declaration. Zaccaria agreed that he was bound by the terms of a written contract that contains the identical provision. *See* Hooper Suppl. Dec. ¶¶ 4, 5 and Exhibit B thereto. Defendants' original submission argued for dismissal of Knierim's contract-based claims under Rule 12(b)(3) on the grounds of improper venue, and Plaintiffs' response cites law and argues that the provision should not be read to include the tort-based claims. *See* Pls.' Br. at 15-17. While Plaintiffs are correct in raising and litigating the issue, they are incorrect in their conclusion.

In fact, only a few years back, Judge Alfred M. Wolin from this District had cause to and did, in fact, rule on a motion virtually identical to the one presently facing the Court. In *Druckers', Inc. v. Pioneer Elec. (USA), Inc.*, 1993 WL 431162 (D.N.J. Oct. 20, 1993), the defendant moved for dismissal of a lawsuit based on the existence of a forum selection clause or, in the alternative, for transfer to another federal district. In undergoing a thorough, "step by deliberate step" analysis, through the "maze of procedural and jurisdictional rules that govern the tangle of venue, choice-of-law and choice-of-forum questions," *id.* at *2, Judge Wolin concluded that dismissal not only of the contract claims was appropriate but also the claims for negligence and tortious interference with business relationships. *Id.* at *5-8. He reasoned that the forum selection clause at issue was broad enough to encompass the tort claims because it covered "litigation arising under the Agreement or from transactions contemplated therein," noting that the tort claims "were derivative of the contractual relationship." *Id.* at *7.

-18-

Here, the forum selection clause is broader than that at issue in *Druckers'* and the cases cited therein. Whereas the *Druckers'* forum selection clause limited itself to "litigation arising out of the Agreement" and to "transactions contemplated therein," here the clause incorporates "any and all actions" without any limitation that they must arise out of the agreement itself. In other words, Plaintiffs contractually bound themselves to litigation *all* actions – tort, contract or otherwise – in Illinois. For this reason alone and on the face of the contractual provisions, the entirety of the claims Plaintiffs assert must be dismissed on the basis of improper venue.

Yet, the Court need not hang its hat on this point alone. In fact, Plaintiffs themselves allege that the tort claims arise out of the independent contractor agreements. No one can explain the basis for their tort theory better than Plaintiffs themselves: "It is Attwater's mischaracterization of the relationship between Attwater and the Plaintiffs to The Right Thing that constitutes the tortious interference [claim] . . . and supports the specificity of Plaintiffs' allegations of slander." Pls. Br. at 24. In other words, according to Plaintiffs, their tort theory is based on a purported mischaracterization by Defendants to TRT as to the nature and scope of the contractual relationship between Attwater and Plaintiffs. As Judge Wolin explained, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract," and, here, according to Plaintiffs themselves, resolution of the tort claims are dependent on an interpretation of the parties' contractual relationship. *Druckers'*, 1993 WL 431162 at *7 (quoting *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)). For this reason also, the claims should be dismissed on improper venue grounds.[7]

---

[7]    Interestingly, Judge Wolin also held that the forum selection clause applied to a plaintiff who was a non-signatory to the contract, given his relationship to the signatories and the fact that he was a guarantor of the contract at issue. *Druckers'*, 1993 WL 431162 at *8.

As an alternative holding, Judge Wolin held that transfer would also be appropriate, noting that the forum selection clause should be considered as one of the factors in making the determination. He rejected the plaintiffs' argument that transfer to California – the jurisdiction in question – would be too expensive or inconvenient, stating: "Plaintiffs' simple averments regarding financial constraints and difficulties in finding California counsel are not sufficient to overcome the heavy burden imposed on a litigant seeking to set aside a forum selection clause." *Id.* at *4. Moreover, in explaining the burden, Judge Wolin explained that "absent a showing that litigation in the contractual forum will be so gravely difficult and inconvenient that for all practical purposes plaintiffs will be deprived of their day in Court, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold plaintiffs to their bargain." *Id.* (citation and internal quotation marks omitted). Here, Plaintiffs have made no showing that they should not be held to their bargain or that they did not receive adequate consideration for their agreement to litigate in Illinois. For these reasons, in the alternative, the claims should be transferred to the Northern District of Illinois.[8]

## **CONCLUSION**

For all of the above-discussed reasons and those contained in Defendants' moving papers, it is respectfully requested that this Court grant in full the instant motion, issue an Order as detailed in Defendants' moving papers, and providing such other and further relief as this Court deems just and proper.

---

[8]     Plaintiffs argue that Defendants should somehow be bound by the non-moving defendants' decision to answer the complaint and leave unchallenged jurisdictional or venue issues. Pls. Br. at 18. Yet, Plaintiffs offer no support for the notion that Defendants should somehow be bound by the decision of these non-moving defendants to waive *vel non* their jurisdictional or venue rights. Moreover, whether the District Court in the Northern District of Illinois has personal jurisdiction over these defendants is of no moment, for that issue cannot trump the contractual rights for which Defendants bargained, lest a plaintiff wriggle out of a forum selection clause by the mere inclusion of defendant contented with the forum.

Dated:  March 20, 2007

McDaniel Chusid, LLP
Park 80 West, Plaza 1
Saddle Brook New Jersey 07663
(201) 845-3232


By:  /s Jay R. McDaniel
      Jay R. McDaniel

Kenneth J. Ashman
Daniel T. Novellano
Ashman Law Offices, LLC
55 West Monroe Street, Suite 2650
Chicago, Illinois  60603
(312) 596-1700

*Attorneys for Defendants Attwater Blue*
*Corporation, Ben Raue, and Jeff Hooper*