UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)

------------------------------------------------------------ x
CHRISTOPHER H. KNIERIM and JACK P. :
ZACCARIA, :
　　　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　Plaintiffs, :
　　　　　　　　　　　　　　　　　　　　　　　　 : Docket No.: 06-4935 (JCL)
　　　　　v. :
　　　　　　　　　　　　　　　　　　　　　　　　 : Honorable John C. Lifland
SIEMENS CORPORATION, SIEMENS :
BUILDING TECHNOLOGIES, INC., :
ATTWATER BLUE CORPORATION, BEN :
RAUE, JEFF HOOPER, GINA ALLADIN and :
MICHAEL BOLINGER, :
　　　　　　　　　　　　　　　　　　　　　　　　 :
　　　　　　Defendants. :
------------------------------------------------------------ x

**SUPPLEMENTAL DECLARATION OF JEFF HOOPER**

STATE OF ILLINOIS　　　　)
　　　　　　　　　　　　　　　　 : ss.:
COUNTY OF COOK　　　　　)

　　　　**JEFF HOOPER,** being duly sworn, deposes and says under penalty of perjury:

　　　　1.　　I am the Vice President of Attwater Blue Corporation ("Attwater") and a named defendant in the above-captioned matter. I submit this Supplemental Declaration based upon my own personal knowledge, and I would testify to the facts stated herein if called upon at trial.

　　　　2.　　Attwater is a properly incorporated in the State of Illinois and is and always has been in good standing. Attached hereto as Exhibit A is a copy of the printout from the website of the Illinois Secretary of State's Office evidencing as much.

3.      According to Attwater's records, Plaintiff Jack P. Zaccaria ("Zaccaria") was assigned 65 jobs during his tenure with Attwater, of which seven were based out of New Jersey (and one was partially based out of New Jersey). Thus, approximately 89.23% of all of the jobs on which Zaccaria worked for Attwater occurred outside of New Jersey.

4.      After Zaccaria's rehire in May/June 2006, he agreed to be bound by the terms of a written contract, in substantially similar form to the one by which he was originally bound absent a 30 day notice of termination provision and with increased compensation. On July 31, 2006, he sent an email to me stating: "I have decided to sign the agreement on your terms as per our discussion." On August 8, 2006, Zaccaria wrote an email to me that said: "As per your request, let's leave the arrangement as is for right now. I will continue to work hard as always." This latter email was in response to Attwater's objection to include a provision in the agreement that afforded Zaccaria with a 30 day notice provision prior to termination, and, by his email, he conceded to the point, agreeing to work without the notice provision.

5.      Attached hereto as Exhibit B is a copy of the email string referenced in Paragraph 4 above, along with a copy of the written agreement to which we were referring.

"

"

"

"

"

"

"

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 20, 2007

_____
Jeff Hooper

# EXHIBIT A

ND: 4820-9517-7984, Ver 1

CORP/LLC - CERTIFICATE OF GOOD STANDING   http://www.ilsos.gov/corporatellc/t4rporateLlcController





### CORPORATION FILE DETAIL REPORT

| Entity Name | ATTWATER BLUE CORPORATION | File Number | 60903301 |
|---|---|---|---|
| Status | GOODSTANDING | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 02/18/2000 | State | ILLINOIS |
| Agent Name | STEVEN C DOLINS | Agent Change Date | 03/02/2006 |
| Agent Street Address | 425 HUEHL RD BLDG 21 | President Name & Address | BENJAMIN JAMES RAUE 541 PEREGINE PKWY BARTLETT 60103 |
| Agent City | NORTHBROOK | Secretary Name & Address | JEFFREY HOOPER 236 SURREY LANE LAKE FOREST IL 60045 |
| Agent Zip | 60062 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 01/29/2007 | For Year | 2007 |

Return to the Search Screen

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# EXHIBIT B

ND: 4821-6228-6848, Ver 1

## Jay McDaniel

**From:** Kenneth J. Ashman [KAshman@AshmanLawOffices.com]
**Sent:** Wednesday, March 21, 2007 12:18 AM
**To:** 'Jay McDaniel'
**Subject:** Attwater/Litig.: Hooper Supplemental Declaration -- Ex. B

Kenneth J. Ashman, Esq.
Ashman Law Offices, LLC
55 West Monroe Street, Suite 2650
Chicago, Illinois  60603
312.596.1700 (ph)
312.873.3800 (fax)
888.8.Ashman (toll free)
Email:  KAshman@AshmanLawOffices.com
www.AshmanLawOffices.com

NOTICE:  This email message, including attachments, is confidential, intended only for the named recipient(s) above and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law.  This email, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient, please delete this email, including attachments, and notify Ashman Law Offices, LLC by return mail, email or telephone at 312-596-1700.  The unauthorized use, dissemination, distribution or reproduction of this email, including attachments, is prohibited and may be unlawful.

---

**From:** Jeff Hooper [mailto:jeff.hooper@attwatercorp.com]
**Sent:** Monday, March 19, 2007 10:32 PM
**To:** 'Kenneth J. Ashman'
**Subject:** FW: Agreement

---

**From:** Jack Zaccaria [mailto:jpzac@optonline.net]
**Sent:** Tuesday, August 08, 2006 12:32 PM
**To:** 'Jeff Hooper'
**Cc:** mark.dillon@attwatercorp.com
**Subject:** RE: Agreement

Jeff – No problem……As per your request, let's leave the arrangement as is for right now.  I will continue to work hard as always.  Thanks…Jack

---

**From:** Jeff Hooper [mailto:jeff.hooper@attwatercorp.com]
**Sent:** Tuesday, August 08, 2006 1:12 PM
**To:** 'Jack Zaccaria'
**Cc:** 'Mark Dillon'; 'Ben Raue'
**Subject:** RE: Agreement

Jack - Spoke with Ben and Mark and we are not ready to make any commitments beyond what is now in place.

As stated, we want to be assured that this relationship can work before we move forward and further extend the relationship.

We certainly intend to evaluate your performance and will reward you when the time it right.

If you have any other concerns - please give me a call.

Jeff


*Jeff Hooper*
_____
*Attwater Corporation*
*2020 East Algonquin Road*
*Suite 309*
*Schaumburg, IL 60173*
*Office: 847-303-5294*
*Fax: 847-993-0600*

---

**From:** Jack Zaccaria [mailto:jpzac@optonline.net]
**Sent:** Monday, August 07, 2006 3:48 PM
**To:** 'Jeff Hooper'
**Subject:** RE: Agreement

Jeff, how many days do you think would be fair? Thanks Jack

---

**From:** Jeff Hooper [mailto:jeff.hooper@attwatercorp.com]
**Sent:** Monday, August 07, 2006 12:11 AM
**To:** 'Jack Zaccaria'
**Cc:** 'Mark Dillon'
**Subject:** RE: Agreement

Jack - I am still putting together new wording in our contracts and will get you a most updated version as soon as possible.

The clause you revised:

     Section 4.    **Term of Engagement.**    The term of the Contractor's engagement hereunder shall commence on the Effective Date and shall continue thereafter, subject to termination in accordance with the terms and conditions contained in this Agreement, including, but not limited to, termination without cause, at will.

We no longer give 30 days notice on any agreement with anyone.  I will discuss with Ben and Mark and see if we can go beyond "at will".

Jeff

---

**From:** Jack Zaccaria [mailto:jpzac@optonline.net]
**Sent:** Monday, July 31, 2006 9:17 AM

**To:** 'Jeff Hooper'
**Cc:** 'Mark Dillon'
**Subject:** Agreement

Jeff,

In a show of good faith and to get the contract issue out of the way for both of us, I have decided to sign the agreement on your terms as per our discussion.

* As you mentioned, we can revisit this agreement as we move along. I would suggest a review in 90 days if that is ok with you. Of course if the need arises, we can due it prior to this as the model may continue to change.

Note the only adjustments in order to keep the agreement current are:

A) Starting Date: (8/1/06)

B) Compensation: ($50 hr, 40 hours week and $250 per offer)

C) Terms of Engagement: (Revision due to being dedicated to Attwater 100%)  (I captured this from my original agreement)


The term of the Contractor's engagement hereunder shall commence on the Effective Date and shall continue thereafter, subject to termination in accordance with the terms and conditions contained in this Agreement, including, but not limited to, termination without cause, upon not less than thirty (30) days prior written notice by the Company to Contractor or by the Contractor to the Company by a written notice with a termination date no earlier than two weeks from the date of the termination notice. Contractor is required to work a minimum of forty (40) hours per week, unless otherwise approved by the Company. All hours worked by Contractor in excess of forty (40) hours per week must be approved by the Company prior to the performance of services by Contractor.


Thank you for your consideration. I am very happy that you do see the "fire in my belly".

If you approve of these items, please fax the revised agreement to me at: 732-919-3751 and I will sign it forthwith. Upon receipt, please sign and fax it back to me. Also please mail me a hard copy for my files.

Got to go, working EE's in NJ and Mass!!!


Best Regards…Jack

3/21/2007

# INDEPENDENT CONTRACTOR AGREEMENT

**THIS INDEPENDENT CONTRACTOR AGREEMENT** ("Agreement") is made and entered into this 29th of June, 2006, by and between ATTWATER BLUE CORPORATION (hereinafter referred to as the "Company"), with offices at 2020 East Algonquin Road, Suite 309, Schaumburg, Illinois 60173, and Jack Zaccaria, doing business as J P Zaccaria, LLC, with offices at 102 Cascades Avenue, Howell, NJ 07731, (hereinafter referred to as "Contractor") effective as of June 29, 2006 (hereinafter referred to as the "Effective Date").

**WITNESSETH:**

**WHEREAS**, the Company is the owner and operator of an established business engaged in personnel recruitment and services; and

**WHEREAS**, the Contractor recognizes and acknowledge the proprietary interest of the Company in its practice; and

**WHEREAS**, the Company desires to retain the services of the Contractor to meet the needs of the clients of the Company and to aid the Company in the performance of its obligations; and

**WHEREAS**, the Contractor is willing to render services to the Company in such capacity.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements herein contained and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, it is mutually covenanted and agreed by and between the parties hereto as follows.

Section 1.    **Premises.**    The premises of this Agreement and all exhibits and schedules attached to this Agreement are incorporated herein by this reference.

Section 2.    **Establishment of Relationship.**    Company agrees to engage Contractor as an independent contractor specializing in the sourcing and recruitment of qualified candidates for the Company's clients in the Building Technologies markets ("Services"). Contractor accepts such engagement and agrees that he/she will devote such of his/her working time to the Company's business, including such administrative duties as he/she may be requested to perform for Company. The goal of the Services to be rendered is to provide the required number of qualified candidates for designated job requisitions that will lead to a high percentage of hires for the Company's clients.

Contractor should expect to independently manage specific job requisitions and provide sourcing and name generation for other requisitions.

Company and Contractor mutually recognize that the successful performance of recruiting services require the use of a special skill on the part of the Contractor. Moreover, such Services require the performance whenever and however needed, and frequently involve delivery of the same through methods and manners and at times and places that deviate from ordinary and customary business practices. The Company shall have the right to define the results and objectives to be obtained by the Contractor. Further, the Company has the right to review the progress of Contractor and to determine a proper workload and the expected outcomes.

The Contractor will invoice the Company for expenses related to travel and lodging. All other expenses must be approved by the Company prior to the cost being incurred. Contractor should expect to travel on an as-needed basis. Contractor will be paid on a Net-30 basis. All invoices must be submitted by Contractor to the Company on the last business day of each month.

Section 3.    **Independent Contractor Status.**    Contractor is to be treated for all purposes as an independent contractor and not as an employee of Company. Contractor will pay all taxes and other payments which may be required as a result of being an independent contractor and agrees to indemnify and hold Company, its members, managers, officers, employees, agents, successors and assigns harmless from any claim, demand, loss, interest, penalty, fine, deficiency, liability, expense (including, but not limited to, reasonable attorneys fees, court costs and expense) made against or incurred by such indemnified person or entity due to or arising from Contractor being treated for any purpose as an employee of Company with respect to Contractor's engagement hereunder. Contractor will not be entitled, by reason of Contractor's engagement hereunder, to participate in any of the employee benefits provided by Company to its employees.

Section 4.    **Term of Engagement.**    The term of the Contractor's engagement hereunder shall commence on the Effective Date and shall continue thereafter, subject to termination in accordance with the terms and conditions contained in this Agreement, including, but not limited to, termination without cause, at will.

Section 5.    **Compensation.**    For all of the services rendered by Contractor pursuant to this Agreement, the Company shall compensate the Contractor, in arrears, one thousand dollars ($1000.00) per week of service, subject to the terms of this Agreement.

Section 6.    **Indemnification.**    Contractor agrees that in the event of any allegation of improper activity or claim against the Company as a result of the Contractor's actions, Contractor will save, defend, indemnify and otherwise hold Company harmless of, from and against all liability, claims, damages or costs, including reasonable attorneys' fees resulting therefrom.

Section 7. **Conflicts.** Contractor hereby represents and warrants that Contractor is not presently engaged in or under any contract to engage in any other contractual agreement, or otherwise, that would conflict with this Agreement, and will not, during the term of this Agreement, undertake any other contractual agreement, projects, or otherwise which will conflict with this Agreement.

Section 8. **Covenants of Engagement.** It is expressly recognized and acknowledged by the Contractor that the Contractor desires a relationship with the Company, and that as a result of such relationship with the Company, the Contractor has and will become familiar and possessed of the manner and method by which the Company renders its services and other valuable and proprietary information. The Contractor has and will further become acquainted with the clients doing business with the Company. The Company has long-term relationships with its clients and has a constant expectation of continuing to provide professional services to its clients. The Company will suffer great loss and damage if the Contractor violates the terms of this Section 8.

(a) Contractor agrees and acknowledges that Contractor will receive or have access to proprietary and confidential information or procedures of Company or of Company's clients, including, but not limited to the names and addresses of the clients of Company, customer lists, customer leads, or other information related thereto, books, records or computer software disks ("Confidential Information"). Contractor agrees that during the term of this Agreement that Contractor will not disclose any such Confidential Information to any current or future competitors of the Company or any and all other persons and entities except as required by law.

(b) Contractor further agrees and acknowledges that the names and addresses of the Company's clients are the personal property of the Company and are not to be removed or utilized by Contractor for any purpose whatsoever without the express written consent of the Company. Further, all work created by Contractor for the Company's clients shall be and remain the exclusive property of the Company's client, unless otherwise agreed upon in writing.

(c) The Contractor recognizes and acknowledges that it would be difficult, if not impossible, to compute the amount of such loss or damage to the Company, and hereby agree that in the event of a breach of the terms of this Section by the Contractor, the Contractor shall pay to the Company, as liquidated damages and not as a fine or penalty, a sum equal to two times the gross aggregate payments made to the Contractor as a result of business done with such customer during the twelve (12) month period immediately preceding the breach. Notwithstanding the foregoing, the Company shall not be prohibited from pursuing any other remedy available to the Company, including the right to injunctive relief, without bond. The Contractor acknowledges that the covenants and conditions of this Agreement are reasonable and necessary for the protection of the Company's business.

(d) If, for any reason, the covenants provided for above shall be deemed too extensive and, therefore, unreasonable, such covenants shall be reinterpreted to re-qualify the limitations provided therein so as to make said covenants enforceable, as long as the modifications to be made will not substantially defeat the original purpose of the parties hereto.

Section 9. **Assignment.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns; provided, however, that the parties shall not have the right to assign any rights or obligations under this Agreement without the prior written consent of the other.

Section 10. **Severability.** If any provision, paragraph or subparagraph of this Agreement shall be deemed invalid or unenforceable for any reason, in whole or in part, such determination shall not affect the validity of the remainder of the this Agreement, including any other provision, paragraph or subparagraph. Each provision, paragraph or subparagraph of this Agreement is separable from every other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

Section 11. **Notices.** All notices, demands, requests and other communications under this Agreement shall be in writing and shall be deemed properly served if delivered by hand to the party to whose attention is directed, or if sent by certified mail, return receipt requested, postage prepaid, to the addresses as shown on page one of this Agreement. Notices shall be deemed to have been given three (3) days after the date of mailing.

Section 12. **Complete Understanding.** This Agreement constitutes the complete understanding between the parties, all prior representations or agreements having been merged into this Agreement.

Section 13. **Attorneys' Fees.** If any party to this Agreement breaches any of the terms of this Agreement, then that party shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorneys' fees, incurred by that party in enforcing the terms of this Agreement.

Section 14. **Modification.** No alteration or modification to any of the provisions of this Agreement shall be valid unless made in writing and signed by both parties.

Section 15. **Headings.** The headings have been inserted for convenience of reference only and are not to be considered when construing any provision of this Agreement.

Section 16.  **Governing Law.**  This Agreement shall be subject to and governed by the laws of the State of Illinois and any and all actions must be brought in the state or federal court sitting in Cook County, Illinois.

**Contractor:**

Contractor Signature: _____  Date: _____

Contractor Address: _____  Tax ID# _____

_____

The check for contracting services is to be written to:

_____

**Company:**

**ATTWATER BLUE CORPORATION**,

an Illinois Corporation

By: _____

Its: _____