UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(VICINAGE OF NEWARK)

Kenneth Rosellini, Esq.
Hallock & Cammarota, LLP
600 Valley Road, Suite 101
Wayne, New Jersey 07470
(973) 692-0001
*Attorneys for Plaintiffs, Christopher H. Knierim and Jack P. Zaccaria*

| | |
|---|---|
| KNIERIM, et. al<br><br>  Plaintiffs,<br><br>vs.<br><br>SIEMENS CORP., et. al<br><br>  Defendants. | Docket No. 06-4935 (JCL)<br><br>**CERTIFICATION OF JACK P. ZACCARIA IN SUR-REPLY TO REPLY FILED BY DEFENDANTS' IN SUPPORT OF MOTION FOR DISMISSAL AND CHANGE OF VENUE** |

I, Jack P. Zaccaria, do hereby certify as follows:

1. I am one of the Plaintiffs in the above captioned case;

2. I did not agree to a forum selection clause with Attwater Blue Corporation during the relevant time period.

3. When I referred to leaving "the arrangement as is for right now" via e-mail on or about August 8, 2006 I was referring to the "at will" employment relationship and the agreement for compensation then existing, and not to any agreement including a forum selection clause.

4. Furthermore, the written notice provision was a material provision to me signing any written agreement with

Attwater, and I certainly would not have agreed to a forum selection clause if the agreement did not contain a notice provision.

5. In addition, Attwater and I had contemplated written agreements prior to the negotiations for a written agreement in the summer of 2006, including agreements which did not contain a forum selection clause.  See attached **Exhibit A**, which is a true and accurate copy of a Letter of Intent proposed agreement between Attwater and myself to govern our business relationship.

6. In fact, there were other e-mails in the line of correspondence set forth in Hooper's Declaration, including the e-mail dated July 3, 2006 (a true and accurate copy of which is attached hereto as **Exhibit B**), and the written agreement attached to Hooper's Declaration was not attached to any of the e-mails referred to in Hooper's Declaration.

7. Finally, in the subject e-mail dated July 31, 2006, I state "Got to go, working EE's in NJ and Mass."

8. "EE" Energy Engineers, which is the title of a position that I was recruiting for Attwater in New Jersey, and which is one of the hardest positions to recruit for in the industry for Siemens, due to the low supply and technical expertise required.

9.  The EE positions are $80,000 to $100,000 a year positions and were being recruited for New Jersey and Massachusetts projects.

I certify that the forgoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:   March 26, 2007

_____
Jack P. Zaccaria

# EXHIBIT A

## Letter of Intent

Beginning January 1st 2006, the first day of the fiscal year, Jack Zaccaria (Jack) will enter a new agreement with Attwater Blue Corporation. Jack will continue working under his existing agreement until the new contract begins.

Jack will assume the title of Director of Recruiting effective November 7, 2005, and will provide overall leadership in managing the SBT Sourcing Center. A full job description will be provided but will be closely based on previous discussions. The roles and responsibilities may be subject to change as we grow and expand the company.

Jack will have support managing the Sourcing Center (SC) from Mark Dillon and Jeff Hooper. Mark will continuously work with the SC, while it may be necessary for Jeff Hooper to support Ben Raue on other projects.

Ben Raue will continue to transition duties to Jack but will always play a role with managing the customer relationship. But the direction of the Sourcing Center will be chartered by Jack Zaccaria.

For managing the SC and supporting the overall goals of the company, Attwater will pay a monthly disbursement to Jack in the amount of $15,000. Jack will be eligible for a base increase at the end of each year of our agreement.

Jack will earn a quarterly bonus based on NET earnings from all non SBT Sourcing Center (SC) business development activities. This bonus includes any SBT activity not directly related to the SC. Therefore, Jack would be eligible for payment for the Contract Personnel Attwater has provided to SBT.

NET earning will be fully defined before the start of each new contract and will be based on prior discussions as all earnings minus overhead. Overhead is only anticipated to be the additional cost of recruiting resources as necessary – most likely researches. Almost all fixed costs will fall under the Sourcing Center budget as discussed. Any time directly billed by Jeff Hooper and/or Ben Raue outside of the SC will be part of overall NET earnings.

You will be eligible for payment for any existing Attwater activities beginning January 1, 2006.

The Profit Sharing plan for non SBT SC activities will have the following terms:

10% of NET profits for fiscal year 2006
15% of NET profits for fiscal year 2007
20% of NET profits for fiscal year 2008
25% of NET profits for fiscal year 2009

Again, the profit from these activities will be paid quarterly.

You will receive a detailed quarterly financial report (Quickbooks) outlining all billings and profits. Our Accountant will provide information as requested and will be made accessible to the Management Team. All Accounting information is confidential and only shared amongst the Management Team. Any confidential information shared amongst any entity outside of the Management Team would be considered a breach of contract.

After January 1, 2009, you will be made a Full Equity Partner and have full ownership privileges as defined in our shareholders agreement.

Should Attwater be sold to a third party, you will assume the same percentage of ownership of the company as listed in the profit sharing plan (or less should a fifth or more partners be added).

You will have a voice in any decision that would relate to the addition of future profit sharing or equity partners.

Should it be necessary to end the relationship between Attwater and Jack during the course of the first year of this agreement for poor performance, failure to meet contract obligations or any other reason, Attwater will provide thirty (30) days notice. Should Jack decide to leave Attwater prior to the end of this agreement, he will be obligated to give Attwater thirty (30) days notice.

Should Jack be terminated for any reason between the dates of January 1, 2007 and December 31, 2008, a severance payment in the amount of $25,000 will be made as long as there has not been a breach of contract. You will receive all other payments due on a prorated basis from the Sourcing Center and non SBT SC activities at that time.

Jack will be on-site in Attwater offices for no less than 12 business days per month to manage the SBT Sourcing Center for the first 6 months beginning November 7, 2005. Jack will be expected to work no fewer than forty-five (45) hours per week. Should Jack fail to meet this obligation, he will forfeit all NET bonus earnings for that quarter.

For the remaining 5 months of the SBT SC contract for 2006, it will be expected that Jack be on-site in Attwater offices for no less than 8 business days per month to manage the SBT Sourcing Center. Attwater will need flexibility with Jack's schedule as it relates to training and meeting special client requests.

Jack will manage travel time with Mark Dillon who will also be obligated to be on-site in Attwater offices.

Jack will be eligible for vacation and holiday pay.

For 2006, the following days are paid:

January 2 – The day after New Years
May 29 – Memorial Day
July 4 – Independence Day
September 4 – Labor Day
November 23 – Thanksgiving
November 24 – Thanksgiving
December 25 – Christmas
December 26 – Christmas

2 Personal Days

2 Weeks Vacation

Any additional time off would be deducted from your monthly payment.


Jack Zaccaria                             Date


Ben Raue                                  Date

EXHIBIT B

**From:** Jeff Hooper [mailto:jeff.hooper@attwatercorp.com]
**Sent:** Monday, July 03, 2006 5:12 PM
**To:** jpzac@optonline.net
**Cc:** 'Mark Dillon'; 'Ben Raue'
**Subject:** Contract


Jack - Nice talking with you again.   I really do hope this works.  No question in my mind that you know what we are looking for in your efforts and you know our overall goal with this project.

New contract attached.  We can move forward and expand our agreement if we all stay on the same page.

I did not make any changes to your prior non-compete but that issue has been what has kept me from forwarding this document.  We are currently reviewing how we manage our own data security etc.. And may soon adapt new rules.  We can discuss this issue directly - hope to have answers soon...

With you starting on a Thurs and Attwater shutting down on Monday and Tuesday - we can just combine the days for the first full week.

Would want to hear from Dillon on best approach to issues like PCR, email, etc...

Talk with you on Wednesday.  Hope you are enjoying a few days off.



Jeff

<<...>>



*Jeff Hooper*

*Attwater Corporation*
*2020 East Algonquin Road*
*Suite 309*
*Schaumburg, IL 60173*
*Office: 847-303-5294*
*Fax: 847-993-0600*