IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher H. Knierim and Jack P. Zaccaria, | ) ) ) | |
| *Plaintiffs*, | ) ) | Case No. 08 CV 01909 |
| v. | ) ) | Judge Charles R. Norgle |
| Siemens Corporation, Siemens Building Technologies, Inc., Attwater Blue Corporation, Ben Raue, Jeff Hooper, Gina Alladin and Michael Bolinger, | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**DEFENDANTS SIEMENS BUILDING TECHNOLOGIES, INC., GINA ALLADIN, AND MICHAEL BOLINGER'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Siemens Building Technologies, Inc. ("SBT"), Gina Alladin, and Michael Bolinger, by their attorneys, respectfully move this Court pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings as follows:

1. Plaintiffs Christopher H. Knierim and Jack P. Zaccaria filed an Amended Complaint in the United States District Court for the District of New Jersey. In the Amended Complaint, Plaintiffs sought to recover money damages against SBT, Alladin, and Bolinger for slander (first cause of action) and tortious interference (fourth cause of action). Zaccaria also sought to recover damages from Alladin and Bolinger for breach of contract (second cause of action). None of these theories, however, state a claim upon which relief may be granted.

2. The first cause of action, slander, fails to state a claim upon which relief may be granted as to SBT, Alladin, and Bolinger.

3. The second cause of action, breach of contract, fails to state a claim upon which relief may be granted as to Alladin and Bolinger.

4. The third cause of action is not directed against SBT, Alladin, or Bolinger.

5. The fourth cause of action, tortious interference with prospective economic advantage, fails to state a claim upon which relief may be granted as to SBT, Alladin, and Bolinger.

6. Judgment should be granted in favor of SBT, Alladin, and Bolinger on each of these claims under Rule 12(c) of the Federal Rules of Civil Procedure.

7. SBT, Alladin, and Bolinger are filing a supporting Memorandum of Law together with this motion.

WHEREFORE, for the reasons set forth above and in the supporting Memorandum of Law, SBT, Alladin, and Bolinger respectfully request that the Court grant them judgment on the pleadings on the first, second, and fourth causes of action asserted in Plaintiff's Amended Complaint, and grant them such other and further relief as this Court deems just and appropriate.

Dated: August 25, 2008

Respectfully submitted,

SIEMENS BUILDING TECHNOLOGIES, INC.
GINA ALLADIN and MICHAEL BOLINGER,

*Defendants*

By:   /s/ Leonard E. Hudson
      One of Their Attorneys

Matthew J. O'Hara
Leonard E. Hudson
Reed Smith LLP
10 S. Wacker Drive
Chicago, Illinois  60606
(312) 207-1000
mohara@reedsmith.com
lhudson@reedsmith.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christopher H. Knierim and<br>Jack P. Zaccaria,<br><br>               *Plaintiffs*,<br><br> v.<br><br>Siemens Corporation, Siemens Building<br>Technologies, Inc., Attwater Blue<br>Corporation, Ben Raue, Jeff Hooper, Gina<br>Alladin and Michael Bolinger,<br><br>               *Defendants*. | )<br>)<br>)<br>)   Case No. 08 CV 01909<br>)<br>)   Judge Charles R. Norgle<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SIEMENS BUILDING
TECHNOLOGIES, INC., GINA ALLADIN, AND MICHAEL BOLINGER'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

    Defendants Siemens Building Technologies, Inc. ("SBT"), Gina Alladin, and Michael Bolinger (collectively, the "SBT Defendants"), by their attorneys, respectfully submit this Memorandum of Law in support of their Motion for Judgment on the Pleadings.

**PRELIMINARY STATEMENT**

    Plaintiffs' Amended Complaint fails to state any claim against the SBT Defendants. Plaintiffs fail to meet the bare pleading requirements of identifying any slanderous statements, a fault that also dooms Plaintiffs' claim for tortious interference with prospective economic advantage. Plaintiffs also plead themselves out of court on their tortious interference claim, because their allegations show that the SBT Defendants were party to the underlying economic relationship. Finally, Plaintiffs cannot recover from the SBT Defendants for breach of contract, because Plaintiffs have not alleged a contract with any of the SBT Defendants.

Before transferring this case to this district, Judge Wigenton of the District Court for the District of New Jersey dismissed all claims against Defendants Ben Raue and Jeff Hooper as well as the slander and tortious interference claims against Defendant Attwater Blue Corporation ("Attwater") (collectively, the "Attwater Defendants"). (Order, Mar. 31, 2008, attached as Exhibit A.) Because Plaintiffs' claims against the SBT Defendants fail as a matter of law, the SBT Defendants seek judgment on the pleadings under Fed. R. Civ. P. 12(c).

### FACTS ALLEGED IN THE AMENDED COMPLAINT

In December 2004, SBT awarded Attwater a one-year staffing services contract. (Compl. ¶¶ 6, 15.)[1] SBT's personnel Alladin and Bolinger managed Attwater's contract. (*Id.* ¶¶ 16-17, 29.) Around the same time, Attwater hired Zaccaria and Knierim as independent contractors to work on the SBT account. (*Id.* ¶¶ 24-28, 11, 18-19.) Both Zaccaria and Knierim live in New Jersey. (*Id.* ¶¶ 2-3.)

In June 2006, Attwater lost the SBT account to an Ohio company called The Right Thing, Inc. (*Id.* ¶ 49.) Under SBT's new deal with The Right Thing, however, the latter company had discretion to engage Attwater as an associate vendor. (*Id.* ¶¶ 51-54.) Plaintiffs allege that Bolinger subsequently appeared at Attwater's Illinois office and said "he and Gina will take care of Attwater in going forward so don't worry." (*Id.* ¶ 55.)

In August 2006, Zaccaria, while still working for Attwater, approached The Right Thing's president, Terry Terhark, seeking a recruiting position. (*Id.* ¶ 63.) Terhark referred Zaccaria to The Right Thing's vice-president, Michael Gruber, who oversaw the SBT account.

---

[1] Because a motion for judgment on the pleadings invokes the same standards as a motion to dismiss, the facts set forth here are derived solely from the Amended Complaint, and taken as true for purposes of this motion. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

2

(*Id.* ¶ 64.)  Around August 21, 2006, Gruber interviewed Zaccaria.  (*Id.* ¶ 66.)  During the interview, Gruber said that he was impressed with Zaccaria's qualifications, and referred Zaccaria back to Terhark for a second interview.  (*Id.*)  On or about August 25, 2006, Terhark interviewed Zaccaria by phone.  (*Id.* ¶ 67.)  Terhark told Zaccaria that the interview went well, that Terhark was impressed with Zaccaria's qualifications, and that Terhark wanted to arrange an in-person interview.  (*Id.*)

About September 7, 2006, Gruber called Alladin and told her that The Right Thing was interviewing Zaccaria and was very interested in him.  (*Id.* ¶ 68.)  Alladin or Bolinger then "alerted Attwater that Zaccaria was interviewing with The Right Thing and that they were very interested in him."  (*Id.* ¶ 69.)  Attwater terminated Zaccaria that day.  (*Id.* ¶ 70.)

On September 11, 2006, "Gruber contacted Gina Alladin for a reference, and Alladin gave Zaccaria a positive one."  (*Id.* ¶ 79.)  The next day, Terhark called Attwater's vice-president, Hooper, who "bashed Zaccaria's reputation and advised Turhark [sic] to not pursue him further."  (*Id.* ¶¶ 8, 80.)

Meanwhile, Knierim also tried to secure a job at The Right Thing, and scheduled an interview with Terhark for September 14, 2006.  (*Id.* ¶¶ 65, 77.)  The day before the interview, Hooper and Raue (Attwater's president) called Knierim and said "that they knew he was going on an interview with Terhark and that they knew all the details of the time and location from Bolinger and Alladin."  (*Id.* ¶ 83.)  Later that evening, Terhark left Knierim a voice message "saying that Hooper was alerted by SBT and knows about the scheduled interview, and in turn, called Terhark to try to find out more detail."  (*Id.* ¶ 87.)

During the interview, Terhark told Knierim "that Alladin and Bollinger [sic] gave negative information about Zaccaria to The Right Thing after the initial good reference, and

3

on the day prior to the interview, gave The Right Thing a bad reference on Knierim for the purpose of squashing any potential possibility that he had to work for The Right Thing." (*Id.* ¶¶ 88-89.)  Terhark also said that "Gina really bashed Zaccaria." (*Id.* ¶ 90.)  Terhark told Knierim "that The Right Thing was still considering hiring him and would give an answer by Friday, September 15, 2006." (*Id.* ¶ 91.)  Knierim never heard back from The Right Thing. (*Id.* ¶¶ 92-94.)  A few days later, Attwater terminated Knierim. (*Id.* ¶ 96.)

## PROCEDURAL BACKGROUND

Plaintiffs filed suit in the District of New Jersey.  In their first cause of action, slander, they alleged that "Statements set forth above which were made by the Defendants, Gina Alladin and Michael Bolinger, both individually and in their capacity as agents for Siemens Building Technologies, Inc. and by the Defendants, Ben Raue and Jeff Hooper, both individually and in their capacity as agents for The Attwater Blue Corporation, were false and defamatory concerning the Plaintiffs." (*Id.* ¶ 102.)  The second cause of action, breach of contract, refers to the SBT Defendants only in Zaccaria's request for relief, where he demands judgment against Alladin and Bolinger. (*Id.* at 17.)  The third cause of action is not aimed at the SBT Defendants. (*See id.* ¶ 117–121.)  In the fourth cause of action, tortious interference with prospective economic advantage, Plaintiffs claim that The Right Thing would have employed them but for the alleged wrongdoing of the defendants. (*Id.* ¶ 124.)  According to Plaintiffs, the SBT Defendants maliciously divulged confidential information and defamed Zaccaria and Knierim, damaging their prospective employment and careers. (*Id.* ¶¶ 125-126.)

The Attwater Defendants moved to dismiss Plaintiffs' claims and transfer venue to the Northern District of Illinois. (Docket Entry No. 12.)  Judge Wigenton dismissed the claims against Raue and Hooper for lack of personal jurisdiction. (Order, Ex. A at 1-2)  Judge

4

Wigenton also dismissed Plaintiffs' slander and tortious interference claims against Attwater, for failure to state a claim upon which relief could be granted. (*Id.* at 2.) Judge Wigenton declined to dismiss Plaintiffs' claims against Attwater for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.*) Finally, Judge Wigenton transferred the remaining claims to this district. (*Id.*)

## ARGUMENT

The SBT Defendants are entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) because none of Plaintiffs' causes of action state a claim upon which relief may be granted. The standard for a Rule 12(c) motion for judgment on the pleadings is the same as for a motion to dismiss. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). While the Court must accept Plaintiffs' well-pleaded allegations as true, drawing all reasonable inferences in favor of Plaintiffs, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007)).

A threshold question left unresolved is what state's law governs Plaintiffs' claims. Federal courts sitting in Illinois apply the "most significant contacts" test, looking to "the location where the tortious act took place, the place of the injury, and the domicile and place of business of the parties." *Abbott Labs. v. NutraMax Products, Inc.*, 844 F. Supp. 443, 446 (N.D. Ill. 1994). But, where "all interested jurisdictions (including the forum state) apply the same legal rule to any issue, the court should apply to that issue the law with which it is most familiar—that of the forum." *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 703 (N.D. Ill. 1990). Regardless of which state's law applies, Plaintiffs fail to state a claim under the laws of New Jersey, Ohio, or Illinois. And, because these states largely apply the same rules of

law to the issues presented here, this Court may apply the law of the forum—Illinois. *Vantassell-Matin*, 741 F. Supp. at 703.

I. **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION AGAINST SBT, ALLADIN, AND BOLINGER.**

A defamatory statement is one that is false and injures the plaintiff's reputation. *Brennan v. Kadner*, 814 N.E.2d 951, 956-57 (Ill. App. Ct. 2004), *app. denied*, 823 N.E.2d 963 (Ill. 2004); *Singer v. Beach Trading Co.*, 876 A. 2d 885, 894 (N.J. Super. Ct. App. Div. 2005); *McPeek v. Leetonia Italian-Am. Club*, 882 N.E.2d 450, 452-53 (Ohio Ct. App. 2007). The elements are essentially the same in Illinois, New Jersey, and Ohio: (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; (3) the defendant was at least negligent in publishing the statement; and (4) damages. *See Brennan*, 814 N.E.2d at 956-57; *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004); *McPeek*, 882 N.E.2d at 452-53. Regardless of the controlling state law, however, the sufficiency of the Amended Complaint is a procedural question governed by federal pleading rules. *Vantassell-Matin*, 741 F. Supp. at 707. Plaintiffs failed to comply with the federal pleadings standards in two distinct ways. First, Plaintiffs failed to sufficiently identify any alleged defamatory statements. Second, Plaintiffs failed to plead special damages with any degree of specificity. In addition, any purported defamatory statement attributable to the SBT Defendants is non-actionable opinion.

A. **Plaintiffs' Defamation Claim Fails Because The Amended Complaint Fails To Identify Any Defamatory Statements Attributable To The SBT Defendants.**

Federal courts "require plaintiffs alleging libel or slander to recite the precise language alleged to be defamatory." *Id.* "In the absence of such specific allegations, dismissal of a complaint is appropriate." *Id.*; *see also Derson Group Ltd. v. Right Management Consultants,*

6

*Inc.*, 683 F. Supp. 1224, 1229-30 (N.D. Ill. 1988) (dismissing slander claim where plaintiff failed to specifically allege the words on which claim was based); *Dry Enters. v. Sunjut*, No. 07 C 1657, 2008 U.S. Dist. LEXIS 25908, *10-11 (N.D. Ill. Mar. 31, 2008) ("general allegations of defamation cannot survive a Motion to Dismiss"); *F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994) (explaining that plaintiffs must identify alleged defamatory words with specificity and particularity under New Jersey law). Here, Plaintiffs fail to allege any defamatory statements attributable to any of the SBT Defendants, and instead make only vague and generalized allegations of defamation.

Under their first cause of action, styled "slander," Plaintiffs make no effort to identify the statements they believe are defamatory, but make the following non-specific allegation:

> Statements set forth above which were made by the Defendants, Gina Alladin and Michael Bolinger, both individually and in their capacity as agents for Siemens Building Technologies, Inc. and by the Defendants, Ben Raue and Jeff Hooper, both individually and in their capacity as agents for The Attwater Blue Corporation, were false and defamatory concerning the Plaintiffs.

(Compl. ¶ 102.) There is no indication which "[s]tatements set forth above" this allegation refers to. For this reason alone, Plaintiffs' defamation claim fails.

The Amended Complaint refers to six statements allegedly made by the SBT Defendants, none of which are adequately described in the Amended Complaint, and none of which amount as a matter of law to slander:

    **1.   *Bolinger's alleged statement at Attwater's offices does not support a defamation claim.***

Plaintiffs alleged that Bolinger appeared at Attwater's Illinois office and said that "he and Gina will take care of Attwater in going forward so don't worry." (*Id.* ¶ 55.) This statement is totally innocuous. It does not pose any harm to the Plaintiffs' reputation.

### 2. *Plaintiffs' allegation that Alladin or Bolinger alerted Attwater about Zaccaria's interviewing does not support a defamation claim.*

Plaintiffs alleged that "Alladin and/or Bolinger alerted Attwater that Zaccaria was interviewing with The Right Thing and that they were interested in him." (*Id.* ¶ 69.) This allegation contains no particulars of what Alladin or Bolinger actually said. Nor does this statement harm Zaccaria's reputation. In addition, the Amended Complaint admits the truth of this statement. (*Id.* ¶¶ 66-68.)

### 3. *Plaintiffs' allegation that Alladin gave Zaccaria a positive reference does not support a defamation claim.*

Plaintiffs alleged that "Gruber contacted Gina Alladin for a reference, and Alladin gave Zaccaria a positive one." (*Id.* ¶ 79.) This statement did not harm Zaccaria's reputation.

### 4. *Plaintiffs' allegation that Alladin and Bolinger told Attwater about Knierim's interview does not support a defamation claim.*

Plaintiffs alleged that Hooper and Raue told Knierim "that they knew he was going on an interview with Terhark and that they knew all the details of the time and location from Bolinger and Alladin." (*Id.* ¶ 83.) This allegation contains no particulars of what Alladin and Bolinger said. Based on the content of the allegation, the statement does not tend to harm Knierim's reputation, but simply refers to true facts, as Plaintiffs admit that Knierim had an interview with Terhark. (*Id.* ¶¶ 76-78, 87-88.)

### 5. *Plaintiffs' allegation that Alladin and Bolinger gave negative references does not support a defamation claim.*

Plaintiffs alleged that Terhark told Knierim that: "Alladin and Bollinger [sic] gave negative information about Zaccaria to The Right Thing after the initial good reference, and on the day prior to the interview, gave The Right Thing a bad reference on Knierim for the purpose of squashing any potential possibility that he had to work for The Right Thing." (*Id.* ¶ 89.) Again, this vague allegation fails to reference any words purportedly spoken by Alladin

8

and Bolinger. Indeed, the allegation does not even include any statements of fact, but instead sets forth Terhark's opinions and conclusions.

      ***6.    Plaintiffs' allegation that Alladin "bashed" Zaccaria does not support a defamation claim.***

Finally, Plaintiffs' allegation that "Terhark said that 'Gina really bashed Zaccaria'" (*Id*. ¶ 90) is insufficient for the same reasons. It fails to recite with any degree of particularity what Alladin purportedly said, and fails to include anything other than Terhark's cursory summary of what Alladin said. There is no way to determine from this allegation whether Alladin said anything defamatory or false about Zaccaria. Crucially, Judge Wigenton already dismissed Plaintiffs' defamation claim against the Attwater Defendants, which was based on a similar allegation that Hooper "bashed Zaccaria's reputation." (*Id*. ¶ 80.)

Plaintiffs failed to allege any statements attributable to the SBT Defendants "with sufficient particularity to enable the court to determine whether or not such statement or statements are in fact defamatory." *National Bowl-O-Mat Corp. v. Brunswick Corp.*, 264 F. Supp. 221, 226 (D.N.J. 1967). This means that the Court's initial duty to consider whether the statements are even capable of a defamatory meaning "cannot be fulfilled in this case because the alleged defamatory words have not been set forth with sufficient particularity." *Id*. "Without any specific allegations as to what was allegedly said about any specific plaintiff and by whom at what time, plaintiffs have failed to meet the requirements for setting forth a cause of action for defamation." *Doug Grant, Inc. v. Great Bay Casino Corp.*, 3 F. Supp. 2d 518, 538 (D.N.J. 1998). Accordingly, this Court should grant the SBT Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' first cause of action.

### B. Alternatively, Plaintiffs' First Cause Of Action Fails Because Plaintiffs Failed To Specifically Plead Special Damages.

Even if Plaintiffs had adequately identified any defamatory statements attributable to the SBT Defendants, Plaintiffs nevertheless failed to specifically plead special damages as required by Fed. R. Civ. P. 9(g). *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924, 927 (7th Cir. 2003). Specificity requires Plaintiffs to allege the basis for the damages sought, the connection between the defamatory statement and the damage, and the specific nature of the damage. *Anglin v. Sears Roebuck & Co.*, No. 93 C 3438, 1998 U.S. Dist. LEXIS 12635, *20 (N.D. Ill. Aug. 10, 1998).[2]

Here, Plaintiffs allege only that "[s]aid statements have caused the Plaintiffs damage in that, *inter alia*, their professional reputation and ability to make a living in their chosen fields has been irreparably harmed." (Compl. ¶ 105.) But general allegations of damage to reputation and economic loss are insufficient to state a cause of action for defamation. *Anglin*, 1998 U.S. Dist. LEXIS 12635, at *24. Thus, Plaintiffs have failed to allege a cause of action

---

[2] Special damages may be presumed where the alleged statements are defamatory *per se*. *Seith v. Chicago Sun-Times, Inc.*, 861 N.E.2d 1117, 1126-27 (Ill. App. Ct. 2007); *Ricciardi v. Weber*, 795 A.2d 914, 927 (N.J. Super. Ct. 2002); *Becker v. Toulmin*, 138 N.E.2d 391, 395 (Ohio 1956). A statement is defamatory per se if it is so obviously and naturally harmful to the person to whom it refers that injury to his reputation may be presumed. *Buckley v. County of DuPage*, No. 88 C 1939, 1996 WL 238908, at *4 (N.D. Ill. May 2, 1996). Here, Plaintiffs' failure to identify or allege any purported defamatory statements prevents them from pursuing a defamation *per se* theory. *See Ricciardi*, 795 A.2d at 927 (explaining that courts should not find statements to be defamatory *per se* unless the doctrine "clearly" applies). Thus, Plaintiffs must plead special damages with specificity. Fed R. Civ. P. 9(g). Additionally, both Illinois and Ohio follow the "innocent construction" rule: if a statement may be reasonably given a non-defamatory interpretation, then the statement will not qualify as defamatory *per se*. *Seith*, 861 N.E.2d at 1126-27; *Gupta*, 744 N.E.2d at 1213. Plaintiffs' failure to plead the particulars of any statements attributable to the SBT Defendants prevents any determination that the statements are anything but innocent.

for defamation. The Court should, therefore, grant the SBT Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' first cause of action for this reason as well.

### C. Plaintiffs' First Cause Of Action Claim Fails Because Any Purported Statements By The SBT Defendants Are Non-Actionable Opinion.

Finally, even if Plaintiffs had sufficiently identified some defamatory statements, only two of the six statements attributable to the SBT Defendants have any arguable negative meaning, and both of these are non-actionable opinion. *See Gertz v. Robert Welch*, 418 U.S. 323, 339 (1974). The courts of New Jersey, Illinois, and Ohio have cast the test for non-actionable opinion in slightly different terms, but the factors are virtually the same in each jurisdiction: (1) the precise meaning or content of the language used; (2) whether the statement is capable of objective verification; and (3) whether the literary or broader social context of the statement signals its usage as fact or opinion. *Farber v. City of Paterson*, 2006 U.S. Dist. LEXIS 86548, *12-13 (D.N.J. Nov. 29, 2006); *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1230 (Ill. App. Ct. 1995); *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 980 (N.D. Ohio 2003). Applying these factors to the two allegedly negative statements shows that both are non-actionable opinion.

Plaintiffs alleged that "Alladin and Bollinger [sic] gave negative information about Zaccaria to The Right Thing after the initial good reference, and on the day prior to the interview, gave The Right Thing a bad reference on Knierim for the purpose of squashing any potential possibility that he had to work for The Right Thing." (Compl. ¶ 89.) Plaintiffs also alleged that "Terhark said that 'Gina really bashed Zaccaria.'" (*Id.* ¶ 90.) These allegations are impossible to decipher due to their vagueness. The precise meaning is obscure, because Plaintiffs have not bothered to provide the words Alladin and Bolinger purportedly used. For the same reason, it is impossible to determine whether the statements are verifiable as facts.

11

Finally, the context of the statements, a job reference, suggests that whatever negative information was offered was evaluative: Terhark asked for and received Alladin's and Bolinger's opinions regarding Plaintiffs' work. *See Hopewell v. Vitullo*, 701 N.E.2d 99, 102, 104 (Ill. App. Ct. 1998) (concluding that the statement "fired because of incompetence" was non-actionable opinion); *Sullivan v. Conway*, 959 F. Supp. 877, 880 (N.D. Ill. 1997) (description of attorney as "a very poor lawyer" is mere opinion); *Quinn*, 658 N.E.2d at 1231 (statement that plaintiff was a "con artist" is non-actionable opinion). The Court should, therefore, grant the SBT Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' first cause of action for this third reason as well.

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST SBT, ALLADIN, AND BOLINGER.

The elements of tortious interference with prospective economic advantage are: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference." *Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004) (applying Illinois law). New Jersey law requires a plaintiff to also show that the defendant's interference was malicious, *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001), as does Illinois law if the defendants' conduct was subject to a privilege, as is the case here. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 171-72 (7th Cir. 1993) (recognizing that "an employer may invoke a conditional privilege to respond to direct inquiries by prospective employers"). Here, Plaintiffs' tortious interference claim fails for two reasons. First, the faults of the defamation claim also doom the tortious interference

claim. Second, the SBT Defendants are party to the relationship giving rise to Plaintiffs' alleged economic advantage.

### A.  Failure Of The Defamation Claim Dooms The Tortious Interference Claim.

Where a tortious interference claim rests on the same alleged conduct as a defamation claim, a deficient defamation claim dooms the tortious interference claim. *Nanavatti v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 110-11 (3rd. Cir. 1988) (applying New Jersey law, "We conclude that [plaintiff] thereby limited his tortious interference claim to the same statements he set out in his defamation claim. . . . Our rejection of liability for those statements also applies to the tortious interference claims."); *Bainhauer v. Manoukian*, 520 A.2d 1154, 1175 (N.J. Super. Ct. App. Div. 1987) (explaining that where a tortious interference claim is based on the same facts as a defamation claim, failure of the defamation claim entails the failure of the tortious interference claim); *Delloma*, 996 F.2d at 172 (explaining that defamation and tortious interference claims are "analytically intertwined" under Illinois law); *see also Muthuswamy v. Burke*, 646 N.E.2d 616, 618 (Ill. App. Ct. 1993) (holding that dismissal of tortious interference claim was proper after defamation claim failed).

Here, Plaintiffs' tortious interference claim is based on their allegation that the SBT Defendants divulged confidential information and defamed Plaintiffs, allegedly damaging their prospective employment. (Compl. ¶¶ 125-126.) These allegations, however, encompass nothing more than the defamation claim. Plaintiffs allege no other improper conduct by the SBT Defendants. If Plaintiffs wished to include in the tortious interference claim acts beyond those in the slander claim, Plaintiffs had to set those forth with particularity. *Nanavatti*, 857 F.2d at 110-11. Accordingly, this Court should grant the SBT Defendants' Motion for Judgment on the Pleadings as to the fourth cause of action.

> **B.  Alternatively, Plaintiffs' Tortious Interference Claim Fails Because The SBT Defendants Were Party To The Underlying Economic Relationship.**

Alternatively, there is no cause of action for tortious interference where the defendants are a party to the relationship that gave rise to the economic interest. *Swift v. United Food Comm. Workers Union Local 56*, No. A-2612-06T1, 2008 WL 2696174, at *4 (N.J. Super. Ct. App. Div. July 11, 2008); *Silvestre v. Bell Atlantic Corp.* 973 F. Supp. 475, 486 (D.N.J. 1997); *National Service Ass'n, Inc. v. Capitol Bankers Life Ins. Co., Inc.*, 832 F.Supp. 227, 233 (N.D.Ill. 1993) ("This situation 'does not present an instance of outsiders intermeddling maliciously in the contracts or affairs of other parties.'").  If the defendants are employees of a party to the economic relationship, a plaintiff must allege that a defendant employee acted outside the scope of his or her employment. *Silvestre*, 973 F. Supp. at 486.

Plaintiffs allege that they expected The Right Thing to employ them. (*Id.* ¶ 124.) The Right Thing, however, was under contract with SBT to provide SBT's recruiting needs. (Compl. ¶¶ 49-54.)  The SBT Defendants therefore, were not strangers to the economic relationship between The Right Thing and Plaintiffs, and cannot be liable for tortious interference under these circumstances because it was not meddling in the affairs of others. *National Service Ass'n,* 832 F.Supp. at 233; *Silvestre v. Bell Atlantic Corp*. 973 F. Supp. at 486.  Nor have Plaintiffs alleged that Alladin or Bolinger acted outside the scope of their employment.  Therefore, Plaintiffs have failed to state a claim for tortious interference with prospective economic advantage, and this Court should grant the SBT Defendants' Motion for Judgment on the Pleadings as to the fourth cause of action for this reason as well.

14

### III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST ALLADIN AND BOLINGER.

In his request for relief on the second cause of action, breach of contract, Zaccaria "demands judgment against the Defendants, Attwater Blue Corporation, Ben Raue, Jeff Hooper, Gina Alladin and Michael Bolinger." (Compl. at 17.) A claim for breach of contract requires the plaintiff to plead the existence of a contract. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 210 F. Supp. 2d 552, 561 (D.N.J. 2002); *Catania v. Local 4250/5050 of Comms. Workers Am.,* 834 N.E.2d 966, 971 (Ill. App. Ct. 2005). The Amended Complaint, however, contains no allegations that a contract existed between Zaccaria and Alladin or Bolinger. Accordingly, the Court should grant the SBT Defendants' Motion for Judgment on the Pleadings as to the second cause of action.

### CONCLUSION

For the foregoing reasons, this Court should grant the SBT Defendants' Motion for Judgment on the Pleadings as to the first, second and fourth causes of action of Plaintiffs' Amended Complaint.

Dated: August 25, 2008

Respectfully submitted,

SIEMENS BUILDING TECHNOLOGIES, INC., GINA ALLADIN, and MICHAEL BOLINGER,
*Defendants*

By: /s/ Leonard E. Hudson
One of Their Attorneys

Matthew J. O'Hara
Leonard E. Hudson
Reed Smith LLP
10 S. Wacker Drive
Chicago, Illinois 60606
(312) 207-1000
mohara@reedsmith.com
lhudson@reedsmith.com

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTOPHER H. KNIERIM, ET AL., | : | |
| | : | Civil Action No. 06-4935 (SDW) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **ORDER** |
| | : | |
| SIEMENS CORPORATION, ET AL., | : | |
| | : | March 31, 2008 |
| Defendants. | : | |

**WIGENTON,** District Judge.

It is hereby **ORDERED**, in accordance with the Court's Opinion dated, March 31, 2008, that the motion of defendants Attwater Blue Corporation ("Attwater"), Ben Raue ("Raue"), and Jeff Hooper ("Hooper") (collectively "defendants") to dismiss the Amended Complaint of plaintiffs Christopher Knierim ("Knierim") and Jack Zaccaria ("Zaccaria") (together "plaintiffs")[1] is **GRANTED IN PART AND DENIED IN PART**.

It is **ORDERED** that defendants' motion to dismiss plaintiffs' breach of contract and implied covenant of good faith and fair dealing claims against Raue and Hooper for lack of personal jurisdiction under Fed. R.Civ. P. 12(b)(2) is **GRANTED**.

It is **ORDERED** that defendants' motion to dismiss plaintiffs' slander (defamation) and tortious interference with prospective economic advantage claims against Raue and Hooper for lack

---

[1] This motion is Docket Entry No. 12.

1

of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is **GRANTED**.

It is **ORDERED** that defendants' motion to dismiss plaintiffs' defamation claims and tortious interference with prospective economic advantage claims against Attwater pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

It is **ORDERED** that defendants' motion to dismiss plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) against Attwater is **DENIED**.

It is **ORDERED** that defendants' motion to dismiss plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Attwater is **DENIED**.

The Court transfers venue of these remaining claims to the United States District Court, Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

**SO ORDERED.**

s/ SUSAN D. WIGENTON<br>
United States District Judge

cc: Hon. Madeline Cox Arleo, U.S.M.J.
     Clerk of the Court
     Parties